UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DAVID JOHN CAMPBELL,

                Plaintiff,

v.

NEW YORK STATE POLICE; STEVEN A.
NEGRELLI, Superintendent of New York State
Police; BROOME COUNTY; BROOME
COUNTY SHERIFF'S OFFICE; DAVID
HARDER, Broome County Sheriff; MARK
HAMILTON, Deputy Sheriff for Broome
County; BRIAN CURTIS, CO for Broome
County; BROOME COUNTY DISTRICT
ATTORNEY'S OFFICE; LUCAS FINLEY,
Assistant District Attorney for Broome
County in official and individual capacities;
CITY OF BINGHAMTON; JARED M.
KRAHAM, Mayor of City of Binghamton,
New York in official and individual
capacities; BINGHAMTON POLICE
DEPARTMENT; CHIEF JOSEPH ZIKUSKI,
Binghamton Police Department; NICHOLAS
MUSHALLA, Officer for Binghamton Police
Department; BRYAN SOSTOWSKI, Detective
for Binghamton Police Department; UHS
BINGHAMTON GENERAL HOSPITAL,
City owned hospital/Department of City of
Binghamton; JESSICA R. RAYMOND,
Nurse Practitioner for UHS Binghamton
General Hospital; UNKNOWN 1, in official
and individual capacities; UNKOWN 2, in
official and individual capacities; and
UNKNOWN 3, in official and individual
capacities,

                Defendants.

3:23-CV-1337
(AMN/ML)

---

APPEARANCES:                                              OF COUNSEL:

DAVID JOHN CAMPBELL
  Plaintiff, *Pro Se*
5 Bradley Street
Binghamton, New York 13904

MIROSLAV LOVRIC, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent a complaint in the above captioned action together with an amended

application to proceed *in forma pauperis* and letter motion, filed by David John Campbell

("Plaintiff") to the Court for review.  (Dkt. Nos. 1, 5, 6.)  For the reasons discussed below, I (1)

grant Plaintiff's amended *in forma pauperis* application (Dkt. No. 5), (2) recommend that

Plaintiff's Complaint (Dkt. No. 1) be dismissed (a) in part with leave to amend, and (b) in part

without leave to amend, and (3) recommend that Plaintiff's Letter Request/Motion (Dkt. No. 6)

be denied as moot.

## I.      INTRODUCTION

Construed as liberally[1] as possible, Plaintiff's Complaint alleges that his rights were

violated by Defendants New York State Police ("Defendant NYSP"), Steven A. Negrelli,

Broome County, Broome County Sheriff's Office ("Defendant BCS"), David Harder, Mark

Hamilton, Brian Curtis, Broome County District Attorney's Office ("Defendant BCDA"), Lucas

Finley, City of Binghamton, Jared M. Kraham, Binghamton Police Department ("Defendant

BPD"), Chief Jospeh Zikuski, Nicholas Mushalla, Bryan Sostowski, UHS Binghamton General

Hospital ("Defendant UHS"), Jessica R. Raymond, Unknown 1, Unknown 2, and Unknown 3

---

[1]      The court must interpret *pro se* complaints to raise the strongest arguments they suggest.
*Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790
(2d Cir. 1994)).

(collectively "Defendants").  (*See generally* Dkt. No. 1.)  The Complaint is difficult to follow and includes terse sentences that make little sense.

As best as the undersigned can decipher, the Complaint alleges that on May 4, 2022, Plaintiff called Defendant BCS to inquire about "local gun policies." (Dkt. No. 1 at 8.)  The Complaint alleges that Plaintiff was directed to surrender "what he had" so, on May 5, 2022, he "show[ed] up to [Defendant] BCS . . . to surrender property." (*Id.*)  The Complaint alleges that Plaintiff was detained, "unreasonably searched and property seized by [Defendant] Hamilton." (*Id.*)

The Complaint alleges that at some point in time, Plaintiff attempted to "redress again" (presumably the issue with the property that he surrendered) but that his attempt "triggered a *blue alert*" wherein, Plaintiff was falsely accused of threatening law enforcement officers.  (Dkt. No. 1 at 8.)  Plaintiff alleges that, as a result, he "had to leave his job out of safety concerns." (*Id.*)

The Complaint alleges that at, at some point in time, Defendant BPD attempted to enter Plaintiff's apartment and claimed that someone inside the apartment called 911.  (Dkt. No. 1 at 8.)

The Complaint alleges that on November 23, 2023, Plaintiff was pulled over by Defendant NYSP "just after updating his professional credentials." (*Id.*)  Plaintiff alleges that the stop was never documented by Defendant NYSP.  (*Id.*)

The Complaint alleges that on January 13, 2023, Plaintiff found his vehicle vandalized "and completely disabled." (Dkt. No. 1 at 8.)  Notwithstanding the damage, Plaintiff alleges that he was able to "rig" the car to make it operable.  (*Id.*)  The Complaint alleges that Plaintiff's wife called Defendant BPD to report the crime and Defendant Mushalla responded.  (*Id.*)  Plaintiff

3

alleges that Defendant Mushalla and another officer confiscated "an undocumented amount of property exceeding $3,000 in value." (Dkt. No. 1 at 8-9.)

The Complaint alleges that on January 14, 2023, approximately five officers employed by Defendant BPD went to Plaintiff's house and claimed that they had a warrant to enter. (Dkt. No. 1 at 9.) The Complaint alleges that Plaintiff was in only boxer-style underwear at the time officers arrived and was inappropriately touched and taunted during the search. (*Id*.) The Complaint alleges that Defendant Sostowski tried to trick Plaintiff into signing a consent form by telling Plaintiff that it was a confiscation form. (*Id*.)

The Complaint alleges that as a result of the stress from the searches, "[k]nowing the police were harassing [him,] his wife [was] turning people against [him]," and "knowing someone[ was] out to get Plaintiff but no[ ]one believing [him,] Plaintiff checked into the local hospital for [an] evaluation." (Dkt. No. 1 at 9.) The Complaint alleges that on January 16, 2023, Defendant BPD lied to Defendant Raymond about having warrants to search his home, which led to misdiagnosis and mistreatment. (*Id*.)

The Complaint alleges that Plaintiff was involuntarily committed to Defendant UHS for six days without due process or Plaintiff's consent. (Dkt. No. 1 at 9.) The Complaint alleges that on January 17, 2023, while Plaintiff was involuntarily committed, Defendant Sostowski—with assistance from Defendants BCDA and Finley—filed false documents with the Court pursuant to the New York State red flag laws. (Dkt. No. 1 at 9-10.)

The Complaint alleges that Defendants BPD, BCS, and UHS included false records of encounters with Plaintiff, which resulted in Plaintiff permanently losing his gun rights. (Dkt. No. 1 at 10.) The Complaint alleges that neither Plaintiff nor his wife were ever charged with a crime. (*Id*.)

The Complaint alleges that All Star Pawn informed Plaintiff that "gun pieces were sabotaged/switched by [Defendant BCS]."  (Dkt. No. 1 at 10.)

Based on these factual allegations, the Complaint appears to allege the following nine causes of action: (1) a claim that on May 5, 2022, Defendant Hamilton conducted an unreasonable search and seizure of Plaintiff's personal items in violation of the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983; (2) a claim that Defendant BCS retaliated against Plaintiff by creating false information to conceal its unreasonable searches in violation of the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983; (3) a claim that on January 16, 2023, Defendant BPD's actions intentionally influenced Defendant UHS's involuntary commitment of Plaintiff in violation of the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983; (4) a claim that on January 13, 2023, Defendant Mushalla unreasonably seized property valued at over $3,000 and created false business records in violation of the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983; (5) a claim that on January 14, 2023, Defendant BPD officers unreasonably searched Plaintiff's home causing $1,000 in damages in violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments and 42 U.S.C. § 1983; (6) a claim that Defendant Sostowski filed a false petition in violation of the Fourth, Seventh, and Fourteenth Amendments and 42 U.S.C. § 1983; (7) a claim that Defendants NYSP, City of Binghamton, BPD, Broome County, BCS, and UHS failed to provide services in violation of the First, Fifth, Seventh, and Fourteenth Amendments and 42 U.S.C. § 1983; (8) a claim that on November 23, 2022 at 10:30 p.m., an unknown officer employed by Defendant NYSP conducted a traffic stop of Plaintiff without calling in the stop and was verbally aggressive during the encounter in violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments and 42 U.S.C. § 1983; and (9) a claim that between January 15,

2023, and January 23, 2023, Defendant UHS falsified records in the scheme devised by Defendant BPD in violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments and 42 U.S.C. § 1983.  (Dkt. No. 1 at 12-15.)  As relief, Plaintiff seeks, *inter alia*, (1) "$10,000 from each [D]efendant per each seized item per day every single day kept from Plaintiff," (2) "Supervised Policy improvement(s) to [Defendants NYSP, Broome County, City of Binghamton, and UHS] preventing similar acts," (3) "immediate deactivation of ERPO and TERPO," (4) destruction of all inaccurate documents with corrected records created to accurately reflect Plaintiff's encounters with Defendants and "$10,000 per day for every day record releases and corrections not completed," (5) the return of Plaintiff's property and "$3,000,000 for items not returned to Plaintiff after release," (6) $2,000,000 in punitive damages, (7) contempt of court proceedings against Defendants, and (8) an order that in the future, Plaintiff be handcuffed in the front and/or that Defendants use two pars of handcuffs in the back.  (*Id*. at 16-18.)

## II.    PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[2]  After reviewing Plaintiff's

---

[2]    The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

amended *in forma pauperis* application (Dkt. No. 5), the Court finds that Plaintiff meets this standard.  Therefore, Plaintiff's amended application to proceed *in forma pauperis* is granted.[3]

## III.   LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources.  *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief

---

[3]      Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim).  "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.   ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be dismissed for the following six reasons.

First, the undersigned finds Plaintiff's Complaint factually frivolous.[4]  To the extent allegations are discernible from the pleading, they are "wholly incredible, irrational, and/or appear to be the product of delusion or fantasy."  *Curmen v. U.S. Gov't*, 18-CV-1546, 2018 WL 2324060, at *3 (E.D.N.Y. May 22, 2018).  The Complaint alleges a wide-ranging conspiracy among various law enforcement agencies and a hospital to seize Plaintiff's firearms and personal property.  (*See generally* Dkt. No. 1.)

Courts routinely dismiss this kind of *pro se* complaint.  *See Gallop v. Cheney*, 08-CV-10881, 2010 WL 909203, at *5 (S.D.N.Y. Mar. 15, 2010) ("Courts have not hesitated to dismiss complaints asserting delusional claims of conspiracy."), *aff'd*, 642 F.3d 364 (2d Cir. 2011); *Ceparano v. Suffolk Cnty.*, 10-CV-2030, 2010 WL 5437212, at *3 (E.D.N.Y. Dec. 15, 2010) "[P]rolix, unintelligible, speculative complaints that are argumentative, disjointed and needlessly ramble have routinely been dismissed in this Circuit.").

For example, in *Harvey v. Kirk*, 19-CV-0411, 2019 WL 5150035, at *4 (N.D.N.Y. May 9, 2019) (Baxter, M.J.), the trial court *sua sponte* dismissed as frivolous a *pro se* litigant's claim without leave to amend where the plaintiff alleged that government agents were surveilling and harassing him using telepathic methods.  *Harvey*, 2019 WL 5150035, at *4, *report and recommendation adopted by*, 2019 WL 3491264 (N.D.N.Y. Aug. 1, 2019) (D'Agostino, J.); *see also Ciltas v. Wang*, 20-CV-2520, 2020 WL 6146865, at *1 (E.D.N.Y. Oct. 20, 2020) (dismissing as frivolous the plaintiff's claims that a defendant had been trying to murder her for

---

[4]      While the undersigned has no basis to doubt the sincerity of Plaintiff's beliefs, the allegations exhibit a level of delusional paranoia that makes the continuation of this vexatious litigation an unjustified expenditure of public resources.

years, had made false statements and hidden cameras in her home and vehicle and hacked her

electronic devices); *Raoul v. City of N.Y. Police Dep't*, 14-CV-1787, 2015 WL 1014204, at \*1-2

(E.D.N.Y. Mar. 6, 2015) (dismissing as factually frivolous a complaint alleging a "wide-ranging

conspiracy" between state and federal agencies that involved a campaign to harass, torture, and

harm the plaintiff).  As a result, I recommend that Plaintiff's Complaint be dismissed in its

entirety because it is factually frivolous.

Second, to the extent that the Complaint seeks monetary damages, it asserts claims

against several Defendants who are immune.  More specifically, Plaintiff's claims against

Defendant NYSP "are barred by both the Eleventh Amendment and the language of § 1983."

*Kilcher v. New York State Police*, 19-CV-0157, 2019 WL 2511154, at \*2-3 (N.D.N.Y. June 18,

2019) (D'Agostino, J.) (citing *Pierce v. New York State Police (Troop D Lowville)*, 05-CV-1477,

2011 WL 1315485, at \*13 (N.D.N.Y. Apr. 4, 2011)).  To the extent that the Complaint alleges

any claims against Defendant Negrelli in his official capacity as Superintendent of Defendant

NYSP, those claims are also barred pursuant to the Eleventh Amendment immunity applicable to

Defendant NYSP.  *See Swanhart v. New York*, 20-CV-6819, 2022 WL 875846, at \*4-5

(S.D.N.Y. Mar. 24, 2022) (citing *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *Ying Jing

Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993); *Farid v. Smith*, 850 F.2d 917, 921)

(2d Cir. 1988)) ("The immunity provided by the Eleventh Amendment extends to actions seeking

damages against state officials sued in their official capacities if the state is the real party in

interest.").  Moreover, Plaintiff's claims against Defendant BCDA and Defendant Finley in his

official capacity are barred by the Eleventh Amendment.  *Roark v. New York*, 23-CV-1237, 2023

WL 8827185, at \*3 (N.D.N.Y. Dec. 21, 2023) (Lovric, M.J.) (citations omitted) (recommending

that the plaintiff's claims against the Watertown District Attorney's Office be dismissed as

10

barred by the Eleventh Amendment), *report and recommendation adopted by*, 2024 WL 125512, at *1 (N.D.N.Y. Jan. 11, 2024) (Hurd, J.).  As a result, I recommend that, in the alternative, Plaintiff's claims seeking monetary damages against Defendants NYSP, Negrelli in his official capacity, BCDA, and Finely in his official capacity, be dismissed because they are immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B).

Third, the Complaint failed to allege the personal involvement of Defendants Negrelli, Harder, Curtis, Kraham, Zikuski, Unknown 1, Unknown 2, and Unknown 3 in any alleged constitutional deprivation, which is a prerequisite to an award of damages under 42 U.S.C. § 1983.  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *see Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986) (holding that in order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered."); *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted) ("[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal.").  The Second Circuit has made clear that "there is no special rule for supervisory liability," and a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  Here, although Plaintiff names Defendants Negrelli, Harder, Curtis, Kraham, and Zikuski as defendants, the body of the Complaint lacks any allegations of wrongdoing by them.  (*See generally* Dkt. No. 1.)  As a result, I recommend that, in the alternative, Plaintiff's claims against Defendants Negrelli,

Harder, Curtis, Kraham, and Zikuski be dismissed for failure to state a claim upon which relief

may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

Fourth, Defendants BPD and BCS, which are merely departments of a municipality, are

not amenable to suit.[5]  *See White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3

(N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d

223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-

1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of*

*Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a

municipal entity is merely a subdivision of the municipality and has no separate legal existence.

Therefore, municipal departments like the Department of Social Services are not amenable to

suit and no claims lie directly against the Department.")) ("Although a municipality is subject to

---

[5]     The Complaint alleges that Defendant UHS is a "City owned hospital/Department of City of Binghamton."  (Dkt. No. 1 at 6.)  Thus, Defendant UHS, as a department of Defendant City of Binghamton, would also not be amenable to suit.  Notwithstanding Plaintiff's allegation that Defendant UNS is a municipal-run hospital, it appears that Defendant UHS is a private medical institution.  *See* New York United Health Services, https://www.nyuhs.org/why-choose-us/leadership-performance (last visited Apr. 4, 2024) ("UHS is a not-for-profit, community-benefit organization governed by a board of directors whose members are selected from the communities we serve.").  The Complaint fails to allege facts plausibly suggesting that Defendant UHS's actions are "fairly attributable to the state" and thus, fails to state any claims for relief pursuant to 42 U.S.C. § 1983.  *See Roark*, 2023 WL 8827185, at *5 (citing *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals . . . named as defendants in [plaintiff's] complaint, are generally not proper § 1983 defendants because they do not act under color of state law."); *Guillory v. Benedict*, 21-CV-0073, 2021 WL 707076, at *2 (N.D.N.Y. Feb. 4, 2021) (Baxter, M.J.) (recommending dismissal of the plaintiff's § 1983 claims against private medical institution St. Joseph's Hospital), *report and recommendation adopted by*, 2021 WL 706644 (N.D.N.Y. Feb. 23, 2021) (Sharpe, J.); *Guillory v. Crouse Hosp.*, 21-CV-1177, 2021 WL 5605260, at *2 (N.D.N.Y. Nov. 2, 2021) (Baxter, M.J.) ("it remains well settled in this Circuit that a private hospital, and its employees, are not deemed state actors solely because the state has granted them authority to practice medicine within its borders."), *report and recommendation adopted by*, 2021 WL 5585926 (N.D.N.Y. Nov. 30, 2021) (Hurd, J.)) (recommending dismissal of the § 1983 claims against Samaritan Hospital, a private medical institution, because the complaint failed to allege facts plausibly suggesting how its actions are "fairly attributable to the state.").

suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal . . . department does not have the capacity to be sued as an entity separate from the municipality in which it is located."), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.).  As a result, I recommend that, in the alternative, Plaintiff's claims against Defendants BPD and BCS be dismissed because they are not entities amenable to suit.

Fifth, the Complaint fails to allege facts plausibly suggesting that municipal Defendants Broome County and the City of Binghamton violated Plaintiff's constitutional rights through the execution of their policies.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (outlining the limited circumstances under which a municipality may be liable under Section 1983 and holding that only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) (holding that official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law.").  A municipality may not be held liable solely because it employs a tortfeasor.  *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010).

Here, there is no basis for municipal liability alleged in the Complaint.  Plaintiff essentially complains of a series of discrete incidents, during which an officer or officers employed by Defendants City of Binghamton and Broome County did not act properly.  There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts.  In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Defendants City of Binghamton and Broome County.

As a result, I recommend that, in the alternative, Plaintiff's claims against Defendants City of Binghamton and Broome County be dismissed for failure to state a claim upon which relief may be granted.  *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at *5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

Sixth, to the extent that the Complaint seeks the return of property confiscated by the police, such a claim "is not cognizable in federal court if the state courts provide a remedy for the deprivation of that property" and "New York provides such an adequate post-deprivation remedy."  *Winters v. New York*, 20-CV-8128, 2020 WL 6586364, at *4 (S.D.N.Y. Nov. 9, 2020) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988); *Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983)).  "Because Plaintiff does not allege facts suggesting that his remedy under state law is in any way inadequate or inappropriate, his claim with respect to the seized property must be dismissed."  *Winters*, 2020 WL 6586364, at *4 (citing *Butler v. Castro*, 896 F.2d 698, 700-04 (2d Cir. 1990)).  As a result, I recommend that, in the alternative, Plaintiff's claims seeking the return of his seized property be dismissed.

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem

with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[6]

Here, an amended pleading cannot cure the defects outlined above with respect to Plaintiff's claims against Defendants (1) NYSP, BCDA, Negrelli in his official capacity, and Finley in his official capacity because they are immune from suit, and (2) BPD and BCS because they are not entities amenable to suit.  As a result, I recommend that the claims against those defendants be dismissed without prejudice but without leave to amend.

Although I have serious doubts about whether Plaintiff can replead to assert actionable claims against Defendants (1) Negrelli in his individual capacity, (2) Broome County, (3) Harder, (4) Hamilton, (5) Curtis, (6) Finley in his individual capacity, (7) City of Binghamton, (8) Kraham, (9) Zikuski, (10) Mushalla, (11) Sostowski, (12) UHS, (13) Raymond, (14) Unknown 1, (15) Unknown 2, and (16) Unknown 3, given that this is the Court's first review of

---

[6]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

Plaintiff's pleading, out of an abundance of caution and in light of Plaintiff's status as a *pro se* litigant, I recommend that he be permitted leave to amend.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.).  Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act.  In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Finally, Plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

## VI.    PLAINTIFF'S LETTER REQUEST/MOTION

On March 26, 2024, Plaintiff filed a Letter Request/Motion.  (Dkt. No. 6.)  To the extent that the Court adopts the recommendations contained herein which recommend dismissal of the Complaint, I recommend that Plaintiff's Letter Request/Motion be dismissed as moot.

In the alternative, as best as the undersigned can glean from Plaintiff's Letter

Request/Motion, Plaintiff is merely requesting that the Court rule on his motion for IFP.  (Dkt.

No. 6.)  This Order and Report-Recommendation rules on Plaintiff's amended IFP application

and thus, Plaintiff's Letter/Motion is moot.

     **ACCORDINGLY**, it is

     **ORDERED** that Plaintiff's amended application to proceed *in forma pauperis* (Dkt. No.

5) is **GRANTED**; and it is further respectfully

     **RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD**

Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims against Defendants (1)

Negrelli in his individual capacity, (2) Broome County, (3) Harder, (4) Hamilton, (5) Curtis, (6)

Finley in his individual capacity, (7) City of Binghamton, (8) Kraham, (9) Zikuski, (10)

Mushalla, (11) Sostowski, (12) UHS, (13) Raymond, (14) Unknown 1, (15) Unknown 2, and

(16) Unknown 3, because it is factually frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is

further respectfully

     **RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE BUT**

**WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it

asserts claims against Defendants (1) NYSP, BCDA, Negrelli in his official capacity, and Finley

in his official capacity because they are immune from suit, and (2) BPD and BCS because they

are not entities amenable to suit pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

respectfully

     **RECOMMENDED** that the Court **DENY** Plaintiff's Letter Request/Motion (Dkt. No. 6)

as moot; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[7]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: April 19, 2024
      Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[7]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[8]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 3:23-cv-01337-AMN-ML    Document 7    Filed 04/19/24    Page 19 of 166

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

William PFLAUM, Individually and as a Citizen,
Resident and Taxpayer of Town of Stuyvesant, Plaintiff,

v.

TOWN OF STUYVESANT, COLUMBIA CTY.,
N.Y.; and Valerie Bertram, Individually and as
Supervisor of Town of Stuyvesant, Defendants.

1:11-CV-0335 (GTS/DJS)

|

Signed 03/02/2016

**Attorneys and Law Firms**

WILLIAM PFLAUM, Plaintiff, Pro Se [1], 3 Rybka Road, Box
40, Stuyvesant Falls, NY 12174.

BRYAN D. RICHMOND, ESQ., THOMAS J. MORTATI,
ESQ., BURKE, SCOLAMIERO, MORTATI & HURD, LLP,
Attorneys for Defendants, 9 Washington Square, Suite 201,
P.O. Box 15085, Albany, NY 12212-5085.

## DECISION and ORDER

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this civil rights action
filed by William Pflaum ("Plaintiff") against the Town of
Stuyvesant ("Town") and Valerie Bertram, Town Supervisor
("Bertram") (collectively, "Defendants"), is Defendants'
motion for summary judgment pursuant to Fed. R. Civ. P. 56.
(Dkt. No. 59.) For the reasons set forth below, Defendants'
motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

As a result of the Court's prior decisions (Dkt. Nos. 17,
26), Plaintiff's sole remaining claim in this action is his
First Amendment retaliation claim. More specifically, as
articulated in his Complaint (which was drafted by Plaintiff,
*pro se*, and therefore must be construed with special
solicitude), that claim alleges three separate ways he was
retaliated against for publicly criticizing Town officials. [2]

First, Plaintiff alleges that, in retaliation for filing charges
of ethical violations against Defendant Bertram, she (a)
"collaborated with and supported" the Town's Fire Chief
to deny and/or threaten to deny fire protection to Plaintiff,
(b) "supported and encouraged" various Town employees
to "illegal[ly] revo[ke] ... Plaintiff's permit to operate his
business," and (c) "supported and encouraged" the Town
Assessor's "campaign to intimidate Plaintiff by linking [his]
political speech [with his] real estate assessment." (Dkt. No.
1, ¶¶ 20-23, 116 [Pl.'s Compl.].)

Second, Plaintiff alleges that, in retaliation for writing
columns on his Internet blog regarding corruption among the
Town's public officials, the Town filed false criminal charges
against him. (*Id.*, ¶ 116.)

Third, and finally, Plaintiff alleges that, in retaliation for
criticizing Bertram, the Town Assessor, and the Town, the
Town Assessor used his authority to raise taxes in order to
intimidate Plaintiff into silence. (*Id.*, ¶¶ 23, 39, 47, 116.)

### B. Defendants' Motion for Summary Judgment

**\*2** In their motion for summary judgment, Defendants
request the dismissal of Plaintiff's Complaint in its entirety.
(Dkt. No. 59.) In support of their motion, Defendants make
the following four arguments. First, Defendants argue that
there was no adverse action against Plaintiff in that there
was no actual chilling of Plaintiff's First Amendment speech
or any other damages. (Dkt. No. 61, at 3-8 [Defs.' Mem. of
Law].)

Second, Defendants argue that, in any event, any such adverse
action was not motivated or substantially caused by Plaintiff's
First Amendment speech. (*Id.* at 5-6.)

Third, in the alternative, Defendants argue that Bertram was
not personally involved in any deprivation of fire protection
services to Plaintiff. (*Id.* at 5, 8-10.)

Fourth, and finally, Defendants argue that Bertram is entitled
to qualified immunity. (*Id.*)

### C. Plaintiff's Opposition Memorandum of Law

Generally construed, Plaintiff makes five arguments in
opposition to Defendants' motion. First, Plaintiff argues that
he engaged in protected speech by creating an Internet blog
on which he publicly criticized Town officials and exposed

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 20 of 166

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

their illegal activities. (Dkt. No. 65, at 3 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that Town officials took adverse action against him by issuing noise violations against him with respect to loud dog barking on his property, retaining special prosecutors to pursue civil suits and criminal charges against him, encouraging harassment and extra-judicial threats against him, and treating him differently from other residents. (*Id.* at 4-5.) As a result, Plaintiff argues that he suffered a chilling effect on his blogging as well as monetary damages due to the expense required to oppose the Town's retaliatory activities. (*Id.* at 6-8.)

Third, Plaintiff argues that the timing of these adverse actions, i.e., that they began after he created his blog, establishes the causal connection between his protected speech and the adverse actions. (*Id.* at 5.)

Fourth, Plaintiff argues that Bertram is not entitled to qualified immunity because it was not objectively reasonable to believe that her actions did not violate Plaintiff's First Amendment rights. (*Id.* at 5-6.) According to Plaintiff, these actions consisted of (1) threatening to fire the Town's Dog Control Officer if he did not serve Plaintiff with a criminal charge related to dog barking, and (2) retaining special prosecutors to pursue this charge against Plaintiff without first obtaining the Town's approval. (*Id.* at 9.)

Fifth, Plaintiff argues that municipal liability extends to the Town because of the actions of Bertram, the Town's supervisor, and her position as a policymaker. (*Id.* at 8-9.)

Finally, the Court notes that Plaintiff spends considerable time in his opposition papers arguing the merits of issues not raised by Defendants in their motion. For example, Plaintiff discusses the Town's denial of his FOIL requests, the Town's failure to respond appropriately to alleged vandalism of his property, and the sufficiency of the evidence that led to the issuance of noise violations related to dog barking. (*See generally id.*, at 3-4, 6-9; Dkt. No. 67, ¶¶ 4, 14, 25, 27, 36, 56-107 [Pl.'s Decl.].)

### D. Defendants' Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendants make two arguments. First, Defendants argue that, because Plaintiff has not complied with Local Rule 7.1(a)(3) in his response to their statement of material facts, their

statement of material facts should be deemed admitted. (Dkt. No. 74, at 2-6 [Defs.' Reply Mem. of Law].)

**\*3** Second, Defendants argue that the record is devoid of any admissible evidence that Bertram was personally involved in an alleged deprivation of fire protection services with regard to Plaintiff's residence. (*Id.* at 6-7.) Furthermore, Defendants argue that Plaintiff cannot demonstrate that any adverse action was taken because he was never actually deprived of fire protection services and his subjective belief that the fire department may not respond to a fire at his residence is insufficient to create a genuine dispute of fact. (*Id.* at 7-8.)

### E. Statement of Material Facts

#### 1. Plaintiff's Failure to Comply with N.D.N.Y. Local Rule 7.1

Before reciting the material facts of this case, the Court must address Plaintiff's response to Defendant's Rule 7.1 Statement of Material Facts. Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires a party moving for summary judgment to submit a statement of material facts supported by specific citations to the record where those facts are established. N.D.N.Y. L.R. 7.1(a)(3). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs and (2) supporting any denials with specific citations to the record where the factual issues arise. *Id.* Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*

This Court's "Local Rule requirements are not empty formalities." *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (Munson, J.) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1[a][3]'s requirement on summary judgment motions"); *accord*, *Cross v. Potter*, 09-CV-1293, 2013 WL 1149525, at *3 (N.D.N.Y. Mar. 19, 2013) (McAvoy, J.). Indeed, the underlying purpose of this rule "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment." *Youngblood v. Glasser*, 10-CV-1430, 2012 WL 4051846, at *4 (N.D.N.Y. Aug. 22, 2012) (Peebles, M.J.); *see also N.Y. Teamsters Conference Pension*

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 21 of 166

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

*& Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (noting that "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'") (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 [2d Cir. 2001]).

In the present case, Plaintiff has failed to respond appropriately to Defendants' Rule 7.1 Statement of Material Facts. Specifically, Plaintiff has failed to admit and/or deny each of Defendants' factual assertions in matching numbered paragraphs. Indeed, Defendants' Rule 7.1 Statement contains 71 paragraphs of factual assertions, while Plaintiff's 7.1 Response contains only 11 paragraphs. (*Compare* Dkt. No. 62 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 66 [Pl.'s Rule 7.1 Response].) Moreover, many of Plaintiff's responses are conclusory in nature and/or contain legal arguments. The Court notes that, when he responded to Defendants' motion, Plaintiff was represented by counsel. Accordingly, the Court will accept the factual assertions in Defendants' 7.1 Statement as true to the extent that the evidence in the record supports these facts. *See Davis v. Cumberland Farms, Inc.*, 10-CV-0480, 2013 WL 375477, at *4 (N.D.N.Y. Jan. 29, 2013) (Scullin, J.) (accepting the defendant's statement of material facts as true where plaintiff neither admitted nor denied defendants' factual assertions); *Aktas v. JMC Dev. Co., Inc.*, 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (D'Agostino, J.) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1[a][3] ).

### 2. Undisputed Material Facts

 **\*4** For purposes of this motion, the undisputed material facts are as follows. Gerald Ennis has served as the Zoning Enforcement Officer for the Town of Stuyvesant continuously since 2003. (Dkt. No. 62, ¶ 43 [Defs.' Rule 7.1 Statement].) In this capacity, Mr. Ennis issued Plaintiff a Class 2 Home Occupation Permit in August, 2009. (*Id.*, ¶ 44.) Under this permit, "[n]o unusual appearances, noise, vibration, smoke, dust, odors, heat, glare or electrical disturbances that exceed those normally produced by a resident shall be permitted." (*Id.*, ¶ 45.) Following the issuance of this permit, Mr. Ennis received numerous noise complaints from Plaintiff's neighbors in regard to increasingly loud barking from dogs on Plaintiff's property. (*Id.*, ¶¶ 46-47.) Following an investigation into these complaints, Mr. Ennis concluded that

Plaintiff's "home dog kennel which housed up to 50 dogs at a time was producing noise levels that exceeded those normally produced by a resident and, accordingly, [Plaintiff] was in violation of his Permit." (*Id.*, ¶ 48.)

On December 7, 2009, Mr. Ennis issued Plaintiff a notice of violation, which informed Plaintiff that the Town had received several complaints about the noise coming from his property and directed Plaintiff to remedy the violation by December 23, 2009. (*Id.*, ¶ 49.) Subsequently, Plaintiff contacted Mr. Ennis and requested that his phone number be given to those who had complained with instructions that they contact Plaintiff directly when there are noise issues so he can rectify any problems. (*Id.*, ¶ 50.) However, after a few months had passed, Plaintiff stopped answering his neighbors' phone calls; and, as a result, his neighbors made new complaints to Mr. Ennis. (*Id.*, ¶ 51.) After receiving these complaints and personally observing the loud noise emanating from Plaintiff's property, Mr. Ennis issued a second notice of violation to Plaintiff on April 26, 2010. (*Id.*, ¶¶ 52-53.) In response, Plaintiff advised Mr. Ennis that he would erect a sound barrier to remedy the issue. (*Id.*, ¶ 54.)

According to Mr. Ennis, he waited "some time" for Plaintiff to erect, or apply for a permit to construct, a sound barrier but neither action was taken. (*Id.*, ¶¶ 55-56.) After continuing to receive noise complaints, Mr. Ennis issued a third notice of violation to Plaintiff on August 9, 2010. (*Id.*, ¶ 56.) On the same day, Mr. Ennis met with Bertram and the Town Attorney to discuss the noise issue on Plaintiff's property. (*Id.*, ¶ 57.) The Town Attorney advised Bertram that Mr. Ennis had the authority to revoke Plaintiff's home occupation permit if he determined that Plaintiff was in violation of the permit's conditions. (*Id.*, ¶ 37.) As a result, Bertram advised Mr. Ennis that he may revoke Plaintiff's permit if he determined that the permit's conditions had been violated. (*Id.*, ¶ 38.) Later that same day (August 9, 2010), Mr. Ennis made the decision to revoke Plaintiff's permit and notified Plaintiff of that fact. (*Id.*, ¶¶ 39, 59.) Neither Plaintiff's statements concerning various issues in the Town nor his postings on various Internet sites had any bearing on the decision to revoke Plaintiff's permit. (*Id.*, ¶¶ 40, 61.)

Plaintiff testified at his deposition that the basis for his claim that he was deprived of fire protection services is that, "in 2011, or perhaps late 2010," a local fire department chief, Steve Montie, posted an online statement that Plaintiff should move out of town. (*Id.*, ¶ 14.) Plaintiff testified that the post was made in response to one of his earlier posts on a local

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 22 of 166

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

town Internet forum; in Plaintiff's post, he had complained of alleged ethical violations committed by Bertram. (*Id.*, ¶¶ 15-16.) The alleged post by Mr. Montie states in its entirety as follows:

> William,
>
> How much more of this are you going to do ? ? ? ? You are wasting more tax payer dollars than its worth. Man up correct your problems and move on, or better yet move out.
>
> S

(*Id.*, ¶ 19.) The author of this post is not identified by name but only by the email address stuyvesantchief@fairpoint.net; and, as indicated above, the post is signed only as "S." (*Id.*, ¶ 18.)

 **\*5** Plaintiff testified that the statements in the alleged post amounted to a threatened denial of fire department services because "the fire chief told me I should move out of town, which makes me wonder if there was a fire at my house would he come." (*Id.*, ¶ 20.) However, Plaintiff testified that no one has ever told him that the fire department would not respond if there was a fire at his house. (*Id.*, ¶ 22.) In addition, Plaintiff testified that there are two distinct fire departments in the Town, Stuyvesant Company 1 and Stuyvesant Company 2, which divide their responses to emergency calls in the Town geographically. (*Id.*, ¶ 23.) Steve Montie is the Chief of Stuyvesant Company 1 and a different chief controls Company 2. (*Id.*, ¶ 25.) Plaintiff's property is located in the geographic area covered by Company 2. (*Id.*, ¶ 24.) According to Bertram, she did not "in any way direct any fire department to deprive or threaten to deprive [Plaintiff] of fire services." (*Id.*, ¶ 33.)

Finally, Plaintiff testified that there was "never" a time that he did not publicize or speak out against some issues based upon any actions by the Town and the alleged efforts to silence him did not work. (*Id.*, ¶ 26.) In fact, following the alleged actions by the Town, Plaintiff did more blogging and increased his "political activities against the Town." (*Id.*, ¶ 27.) With respect to his business, Plaintiff testified that, despite losing his business permit in August, 2010, he continued to operate his business uninterrupted without a permit as he had before it was issued in 2009. (*Id.*, ¶ 29.) Accordingly, there was no interruption to Plaintiff's business as a result of his home business permit being revoked. (*Id.*, ¶¶ 28, 30.)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movign party. *Anderson*, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143, n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 23 of 166

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

## III. ANALYSIS

### A. Whether Plaintiff Suffered an Adverse Action

**\*6** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law]; Dkt. No. 74, at 6-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following two points.

As this Court noted in its prior decisions, in order to state a claim for retaliation under the First Amendment, "a plaintiff must prove (1) his conduct was protected by the First Amendment, (2) the defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively 'chilled' the exercise of plaintiff's First Amendment right." *Pflaum*, 937 F. Supp. 2d at 303 (citing *Dillon v. Morano*, 497 F.3d 247, 251 [2d Cir. 2007]). "In cases 'involving criticism of public officials by private citizens,' the Second Circuit has generally 'impose[d] an actual chill requirement for First Amendment retaliation claims[,]' i.e., a requirement that the plaintiff allege and ultimately prove an 'actual chill' of his First Amendment rights." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012) (D'Agostino, J.) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 [2d Cir. 2004]). "To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment." *Hafez*, 894 F. Supp. 2d at 221. "However, 'where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim.'" *Id.* (quoting *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 [E.D.N.Y. 2009]); *see also Brink v. Muscente*, 11-CV-4306, 2013 WL 5366371, at \*7 (S.D.N.Y. Sept. 25, 2013) (noting that, in private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement").

First, it is clear from Plaintiff's deposition testimony that there was no actual chilling of his protected speech as a result of Defendants' actions. As discussed above, Plaintiff admitted that he increased his political activities and continued to publicize his opinions against the Town in the face of its alleged efforts to silence him. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Singer v.*

*Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Second, to the extent that Plaintiff argues that he perceived the online post regarding the loss of fire protection as a real threat, he is still required to show that his perception was objectively reasonable, i.e., "that the defendant[s'] actions had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Plaintiff's subjective belief that the online post constituted a real threat, without more, is insufficient to demonstrate an actual chilling effect on his First Amendment rights. Indeed, as discussed above in Point I.E.2. of this Decision and Order, Plaintiff admitted that no one had told him that the fire department would not respond if there was a fire at his house. Moreover, a different fire chief than the one who allegedly authored the online post is responsible for responding to fire calls in the location of Plaintiff's residence.

### B. Whether There Was a Causal Connection Between Plaintiff's Speech and Any Adverse Action

**\*7** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

To establish the second element of his First Amendment retaliation claim, "plaintiff must provide specific proof of defendants' improper motivation with either circumstantial or direct evidence." *Media All., Inc. v. Mirch*, 09-CV-0659, 2011 WL 3328532, at \*5 (N.D.N.Y. Aug. 2, 2011) (D'Agostino, J.) (citing *Curley*, 285 F.3d at 73). "Circumstantial evidence includes close temporal proximity between plaintiff's speech and the alleged retaliatory act." *Mirch*, 2011 WL 3328532, at \*5.

"Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 [1977]). "Plaintiff has the initial burden

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 24 of 166

of showing that an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." *Scott*, 344 F.3d at 288.

### 1. Revocation of Plaintiff's Business Permit

In denying Defendants' underlying motion to dismiss Plaintiff's First Amendment claim, this Court held that Plaintiff had sufficiently alleged a concrete harm through the loss of his business permit, and consequently, the loss of business income, as a result of Defendants' alleged retaliatory actions. *Pflaum*, 937 F. Supp. 2d at 308. Having carefully reviewed the record, the Court finds that Plaintiff has failed to create a genuine dispute of material fact regarding Defendants' alleged improper motive. Specifically, with respect to the revocation of his business permit, the undisputed facts establish that the Town received complaints regarding the noise emanating from Plaintiff's property. Plaintiff was given two [3] noise violations over the course of approximately one year and ample opportunity to rectify the problem. (Dkt. No. 67, Attach. 5.) Because the noise problem and complaints continued, Mr. Ennis revoked Plaintiff's permit. [4] Even if Plaintiff were able to establish that an improper motive played a part in this decision, it is clear to the Court that, under these circumstances, the revocation would have still occurred. Indeed, Plaintiff challenged the decision to revoke his permit in appeals made to the Town's Zoning Board of Appeals and in two actions filed in New York State Supreme Court. (Dkt. No. 67, Attachs. 1 & 2.) Although Plaintiff was successful in his state court actions, those decisions were based, in part, upon the Town's failure to follow proper procedure, rather than the merits of the Town's decision. (*Id.*)

### 2. Criminal Charges

**\*8** Plaintiff has also failed to demonstrate an improper motive with respect to his claim that he received false criminal charges in retaliation for comments on his website about corruption among public officials. Plaintiff relies on the temporal proximity of these charges with a meeting he had with Bertram and his filing of an Article 78 petition in New York State Supreme Court. More specifically, Plaintiff argues that he began an Internet blog on or about January 1, 2011,

and in that blog reported on what he perceived to be the illegal activities of Town officials. (Dkt. No. 67, ¶ 15 [Pl.'s Decl.].)

For example, on January 1, 2011, Plaintiff wrote about the alleged inflation of billable time by the Town Attorney that was spent on work paid for by the Town. (*Id.* at 65:8-11.) Around the same time, Plaintiff met with Bertram to discuss his discovery of specific instances of corruption by public officials, including the alleged inflation of billable work by the Town Attorney. (Dkt. No. 59, Attach. 7, at 62:13-15; 64:9-15 [Pl.'s Dep. Tr.].) On January 15, 2011, a few days after this meeting occurred, Plaintiff was issued a criminal summons for the offense of "habitual loud barking," in violation of N.Y. Local Law § 1. (*Id.* at 61:19-22; Dkt. No. 68, Attach. 7 [Criminal Summons]; Dkt. No. 67, ¶ 15 [Pl.'s Decl.].) Plaintiff testified at his deposition that the Town Attorney went to great lengths to research the Local Law that he was charged under and assisted one of Plaintiff's neighbors in drafting an affidavit upon which the criminal summons was based. (Dkt. No. 59, Attach. 7, at 65:17-21 [Pl.'s Dep. Tr.]; Dkt. No. 67, ¶ 107 [Pl.'s Decl.].) Plaintiff argues that he is the first Town resident to be charged under this section of the Local Law. (Dkt. No. 67, ¶¶ 100, 106 [Pl.'s Decl.].) Finally, Plaintiff argues that Bertram retained outside counsel to pursue this charge against him, which was later dismissed. (Dkt. No. 67, ¶¶ 5, 19, 21 [Pl.'s Decl.]; Dkt. No. 59, Attach. 7, at 57:16-18 [Pl.'s Dep. Tr.].)

Thereafter, in October 2011, Plaintiff filed an Article 78 petition in New York State Supreme Court challenging the Town's denial of Plaintiff's FOIL requests. (Dkt. No. 59, Attach. 7, at 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff sought disclosure of the information in the FOIL requests to substantiate his belief that Town officials were engaging in illegal activities. (Dkt. No. 67, ¶¶ 43-44 [Pl.'s Decl.].) One week after commencing that action, Plaintiff received a second criminal summons for the same offense related to loud dog barking. (Dkt. No. 68, Attach. 7 [Appearance Ticket]; Dkt. No. 59, Attach. 7, at 56:16-19; 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff testified that he had "almost no dogs" on his property in October 2011. (Dkt. No. 59, Attach. 7, at 67:8-10 [Pl.'s Dep. Tr.].) According to Plaintiff, that charge was neither dismissed nor withdrawn, but "vanished." (*Id.*, at 57:19-58:9.)

While Plaintiff's allegations may plausibly suggest that an improper motive played a role in the charges brought against him, Defendants have submitted admissible record evidence that establishes otherwise. (Dkt. No. 59, Attach. 17.) Specifically, the criminal information in question is signed

Case 3:23-cv-01337-AMN-ML    Document 7    Filed 04/19/24    Page 25 of 166

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

by one of Plaintiff's neighbors, Frederick Platt, and states, in part, that "my complaint is that the dogs at Glencadia Dog Camp exhibit ongoing habitual barking/howling at any given time of day or night. This has been an issue since the Fall of 2009." (*Id.*) Furthermore, an affidavit filed by Wes Powell, the Town's Dog Control Officer, states that he received repeated complaints from Mr. Platt throughout 2010, culminating in the noise complaint that served as the basis for the criminal charge. (Dkt. No. 59, Attach. 16, ¶¶ 3-5 [Powell Aff.].) Mr. Powell states that the complaint was written by Mr. Platt in his presence and that no Town official directed Mr. Powell to serve Plaintiff with the criminal summons. (*Id.*, ¶¶ 7-10.)

**\*9** Conversely, Plaintiff has not submitted any admissible record evidence supporting his claim that the Town Attorney (who is not a party) played any role in the charge being filed against him or that he is the only resident to have ever been charged under this section of the Local Law. Similarly, Plaintiff's contention that the Town pressured Mr. Platt to file a complaint against him (Dkt. No. 67, ¶ 7[Pl.'s Decl.] ) is unsubstantiated. While the timing of the charge may appear suspicious, the Town cannot control when its residents decide to file a complaint and, in light of the record evidence demonstrating that there was a preexisting noise problem on Plaintiff's property, the complaint is unsurprising. Moreover, the fact that Plaintiff *believes* the Town shored up its criminal charge against him is of little, if any, materiality. Finally, because the second charge seemingly "vanished," no documentation or evidence (other than the appearance ticket itself) has been submitted with respect to that charge. In any event, because the charge was never prosecuted, Plaintiff has failed to support his claim that he suffered any harm. Accordingly, the Court finds that Plaintiff has failed to meet his burden in demonstrating an improper motive with respect to this charge.

### 3. Town Assessor Gleason

Plaintiff claims that Town Assessor Howard Gleason (also not a party) threatened to raise his property taxes for engaging in political activities when Mr. Gleason hand delivered a letter to Plaintiff before a public meeting. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason]; Dkt. No. 67, ¶ 29 [Pl.'s Decl.].) The only evidence submitted with respect to this claim is not the original letter from Mr. Gleason to Plaintiff but letter correspondence from Plaintiff to Mr. Gleason. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason].) Plaintiff's letter to Mr. Gleason, dated October 5, 2010, states that Plaintiff

interpreted Mr. Gleason's attempt to speak with him about tax filings before a town hall meeting as threatening in nature due to the "timing and manner of the interaction." (*Id.*) This is because Plaintiff "had announced [his] intention to call for a referendum frequently and in many forums prior to appearing for the meeting." (*Id.*) Furthermore, Plaintiff requested that, in order to "avoid the impression that you coordinate your tax-related activities with other people in government in order to intimidate free speech, please do not present important information to me in such an information [sic] and unverifiable way." (*Id.*)

However, Mr. Gleason's response to Plaintiff's letter suggests that their interaction was not meant as a threat to raise Plaintiff's taxes or "was in any way politically motivated." (Dkt. No. 69, Attach. 18, at 4 [Letter from Pl. to Gleason].) More specifically, Mr. Gleason explains that he needed to re-assess Plaintiff's property in light of the fact that Plaintiff was now running a kennel (business) on his property and decided to hand deliver his letter knowing that Plaintiff would be present for the town hall meeting. (*Id.*) Moreover, Mr. Gleason reassured Plaintiff that politics do not dictate how he performs his job and promised that all future communication will be transmitted through mail rather than in-person. (*Id.*)

Plaintiff has failed to submit any additional evidence with respect to his tax assessment, that his taxes were improperly raised or that Mr. Gleason acted with a retaliatory animus. [5] Similarly, no evidence has been submitted to substantiate Plaintiff's claim that Bertram encouraged Mr. Gleason to use his authority as Town Assessor to intimidate Plaintiff. In sum, Plaintiff has wholly failed to satisfy his burden demonstrating that he suffered harm as a result of any action taken by Mr. Gleason and that Mr. Gleason acted with an improper motive.

**\*10** For all of these reasons, the Court finds that Plaintiff has failed to create a genuine dispute of material fact with respect to his First Amendment claim. Because the Court has reached this conclusion, it need not, and does not, consider the merits of Defendant Bertram's alternative qualified immunity argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

Case 3:23-cv-01337-AMN-ML Document 7 Filed 04/19/24 Page 26 of 166

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

**All Citations**

Not Reported in Fed. Supp., 2016 WL 865296

## Footnotes

1   Although Plaintiff is currently proceeding *pro se*, the Court notes that he had counsel when preparing his response to Defendant's motion for summary judgment. Accordingly, no need exists to construe Plaintiff's response with the special solicitude ordinarily afforded to *pro se* litigants.

2   The Court notes that, while it did not previously (i.e., in its prior decisions) liberally construe Plaintiff's retaliation claim as arising under three separate theories, it does so now. The Court further notes that it has the power to address these two additional theories for each of two alternative reasons: (1) because Defendants moved for dismissal of Plaintiff's retaliation claim in its entirety, Plaintiff has had sufficient notice and an opportunity to be heard with respect to the two theories in question; and (2) in any event, even if Plaintiff cannot be said to have had such notice and an opportunity to be heard, he filed his Complaint *pro se* and the Court finds the two theories to be so lacking in arguable merit as to be frivolous, *see Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

3   As discussed above, Plaintiff was actually given three noise violations. However, because his permit was revoked on the same day that he received the third violation, the Court will disregard the third violation for purposes of this analysis.

4   The Court notes that Plaintiff spends considerable time in his opposition papers disputing the sufficiency of the evidence and procedures that were followed that led to the issuance of noise violations. (*See generally* Dkt. No. 67, ¶¶ 56-95 [Pl.'s Decl.].) However, this Court is not the proper forum for that dispute. Furthermore, to the extent that the New York Supreme Court observed that there appeared "to have been a disproportionate amount of time and money spent on [the noise violation] notice," and that the records did not "reveal a real issue with dog-barking," those observations are not binding upon this Court. (Dkt. No. 67, Attach. 2, at 6.) Setting aside the fact that the observations constitute dicta, Defendants have submitted admissible record evidence demonstrating that Mr. Ennis acted upon complaints made to him by residents of the Town, which Plaintiff has failed to properly dispute.

5   For example, with regard to this lack of additional evidence regarding retaliatory animus, Plaintiff has failed to adduce admissible record evidence establishing that, even assuming Mr. Gleason knew of Plaintiff's intent to engage in protected speech, the so-called "manner of the interaction" by Mr. Gleason (i.e., the hand delivery of the letter) was in fact unusual for Mr. Gleason given the date of the letter and the date of the public meeting. Moreover, Plaintiff has failed to adduce admissible record evidence that the so-called "timing ... of the interaction" is significant, given his rather constant exercise of his First Amendment rights during the time in question.

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01337-AMN-ML    Document 7    Filed 04/19/24    Page 27 of 166

Curmen v. United States Government, Not Reported in Fed. Supp. (2018)

2018 WL 2324060

Only the Westlaw citation is currently available.

**Not for Publication**

United States District Court, E.D. New York.

Luis David CURMEN, Plaintiff,

v.

UNITED STATES GOVERNMENT; Mexican

Federal Government (NAFTA); Colombian

Government; United Nations, Defendants.

18-CV-1546(KAM)

|

Signed 05/22/2018

**Attorneys and Law Firms**

Luis David Curmen, New York, NY, pro se.

**MEMORANDUM & ORDER**

Kiyo A. Matsumoto, United States District Judge

**\*1** Plaintiff Luis David Curmen ("plaintiff"), proceeding *pro se,* commenced the instant action on March 13, 2018 by filing a complaint ("Compl." or the "complaint," ECF No. 1) in this court. Plaintiff has paid the statutory filing fee to commence this action. For the reasons discussed below, the complaint is dismissed as frivolous.

**BACKGROUND**

In the section of the form complaint that prompts plaintiff to "[w]rite a short and plain statement of the claim[,]" plaintiff states the following:

> Political Corruption and Fraud, abuse of Identity in between governments, Discrimination, and harassment, by a group of politicians; Conspiracy changing information such as date of bir[th] and social security, incrimination for Drug traffic [sic] since I was born, main incrimination by Colombian Drug cartel involved in 8,000 Process [sic] for money

> laund[ering]; 1993 Colombian Drug lord abuse for speculation [sic]. I been use [sic] for illegal purposes such as. Prevaricate [sic], embezzlement, and appropriation, and Expropriation, by the government Of United States and Colombia, encrypted bank account from multiple bank institutions in Europe, and the United States, t[h]rough Racketeer influenced and corrupt organizations act R.I.C.O.

(Compl. at 4.)

The complaint also asserts that there is "a conspiracy against [plaintiff] and [his] family," which damaged plaintiff's "professional carrier [sic] life, ruin[ed] [his] life project, sexual abuse and harassment, discrimination, prostitution." (*Id.*)

Plaintiff further asserts that the Colombian government "create [sic] the situation deciding to use [plaintiff's] identity" for "illegal and corrupt purposes." (Id. at 6.) [1] Additionally, the complaint includes several statements apparently about "Plan Colombia," international narcotics enforcement operations, and United States foreign policy generally and foreign aid specifically, but the relevance of these statements to plaintiff's complaint is not clear. (*See id.* at 5-8.)

According to the complaint, the United Nations is named as a defendant

> because [a]t some point this war on drugs make the government to request many a Humanitarian Missions with United Nations by 1999 2002 [sic], 2003, 2008 for massacre Violence and expropriation of natural resources, even I take a chance to mention the corruption and abuse of my identity with a prevaricate [sic] of U.S Colombian Inmate who [i]n November 1994, was indicted in the District Of Colorado, then in 2004 in the Easter[n] District Of New York, and again

indicted in 2006 in Eastern District of
New York.

(*Id.* at 7.)

The complaint also mentions the United States Department
of Housing and Urban Development and its "section 8"
voucher program, as well as certain activity by the Securities
and Exchange Commission and the United States's antitrust
lawsuit against Microsoft Corporation. (*Id.* at 7-8.) The
relationship of these allegations to other aspects of the
complaint is unclear.

  **\*2** Plaintiff states that the amount of damages that he is due
is "incalculable." (*Id.* at 8.) Additionally, plaintiff requests
that Loretta Lynch, former Attorney General of the United
States, be interrogated by the Federal Bureau of Investigation
and/or prosecuted, and that an order of extradition be sent to
Luis Gustavo Moreno, the former National Director of Anti-
Corruption in Colombia. (*Id.* at 9.)

In addition to the complaint, plaintiff has submitted a
"statement as a complement for [his] complaint," which
purports to "explain the method (modus operandi) to commit
this fraud, and perform illegal actions on [sic] [his] name
such as drug traffic [sic][.]" ("Supp." or the "supplement,"
ECF No. 7-1.) In the supplement, plaintiff asserts that "two
corporations (DynCorp, Glencore) part of the private sector
'technically' belong to [him]," and that

> [t]he Colombian private sector has
> been granted several times t[h]rough
> me; placing me as the owner of
> majority of the land, real state
> [sic], corporations, cargo ship, and
> business in general, and scamming
> me different ways, this corruption,
> tax avoidance, and manipulation of
> foreign debt, allows to cover money
> laundry [sic] with fraudulent bank
> accounts, matching the sum of money
> in the account, and the amount of cash
> out of drug profit; Trustees, leasing's
> [sic], contractors, end real state [sic],

all of this product of narco-traffic,
committed on [sic] my name.

(*Id.*)

The supplement further states that "[e]very time [plaintiff]
come[s] to the [United States]," unspecified persons "take the
profit from the stock market" and "go to" other countries,
where they "open a legal process (for [plaintiff] ) call pardon
[sic]." (*Id.*) According to plaintiff,

> [t]his proves is the [sic] Federal
> agencies moving for me [sic] FBI,
> DEA, department of health and human
> services [sic], Department of housing
> and urban development [sic], because
> the incrimination [sic], and records
> [plaintiff] ha[s] were created by the
> government with the intention to
> defraud [plaintiff], or even the same
> government.

(*Id.*)

Plaintiff has also submitted a letter requesting that the court
assist plaintiff in "contacting the government and the parties
[he] sued." (Letter, ECF No. 7.) Because plaintiff's action is
dismissed as frivolous, the court denies plaintiff the relief he
seeks through the letter.

**STANDARD OF REVIEW**

"A document filed *pro se* is to be liberally construed, and a
*pro se* complaint, however inartfully pleaded, must be held
to less stringent standards than formal pleadings drafted by
lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal
quotation marks and citations omitted). At the pleadings stage
of the proceeding, the court must assume the truth of "all well-
pleaded, nonconclusory factual allegations" in the complaint.
*Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d
Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79
(2009) and *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d
Cir. 2009) ). A complaint must plead sufficient facts to "state
a claim to relief that is plausible on its face." *Bell Atl. Corp.
v. Twombly*, 550 U.S. 544, 570 (2007).

**Curmen v. United States Government, Not Reported in Fed. Supp. (2018)**

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 29 of 166

Additionally, regardless of whether a plaintiff has paid the filing fee, a district court has the inherent power to dismiss a case, *sua sponte*, if it determines that the action is frivolous or the court lacks jurisdiction over the matter. *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) ("[W]e hold that district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also* 28 U.S.C. § 1915(e)(2)(B) (providing statutory authority for the court to dismiss a frivolous action "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid").

**\*3** "An action is frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotation marks and citation omitted); *see also Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them.").

## DISCUSSION

Plaintiff appears to allege, in sum and substance, that the United States and Colombian governments, including officials at the highest levels of government in each country, acting in concert with each other and possibly with other unspecified actors, stole plaintiff's identity. (See Compl. at 4, 6; Supp.) The means by which plaintiff's identity was allegedly stolen are not clear from the complaint, nor is purpose of the government officials' alleged actions, though plaintiff appears to assert that the harm he suffered bears some connection to drug trafficking, "Plan Colombia" and United States foreign policy more generally. (See Compl. at 6-7; Supp.)

To the extent they are even discernible, plaintiff's allegations are wholly incredible, irrational, and/or appear to be the product of delusion or fantasy. Accordingly, the allegations in plaintiff's complaint—even read liberally, and even if plaintiff subjectively believes them to be true—are frivolous, and plaintiff's complaint is dismissed. See *Hawkins-El III v. AIG Fed. Sav. Bank*, 334 Fed.Appx. 394, 395 (2d Cir. 2009) (affirming district court's *sua sponte* dismissal of fee-paid frivolous complaint). [2]

Additionally, because the complaint is devoid of any basis in law or fact, defects that cannot be cured by amendment, plaintiff is denied leave to file an amended complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (noting that where the problem with a complaint is "substantive[,] better pleading will not cure it" and leave to amend should be denied); *see also Sun v. N.Y. Office of Atty. Gen.*, No. 17-CV-5916, 2017 WL 4740811, at \*2-3 (E.D.N.Y. Oct. 19, 2017) (dismissing fee-paid frivolous compliant and denying leave to amend).

## CONCLUSION

For the reasons set forth above, the instant action is dismissed as frivolous. *Fitzgerald*, 221 F.3d at 362; *see also* 28 U.S.C. § 1915(e)(2)(B). The Clerk of Court is respectfully directed to enter judgment, to serve a copy of this order, the judgment, and an appeals packet on plaintiff at the address of record, note service on the docket, and to close the case.

**\*4** Although plaintiff paid the filing fee to bring this action, the court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any in *forma pauperis* appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2324060

## Footnotes

**Curmen v. United States Government, Not Reported in Fed. Supp. (2018)**

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 30 of 166

1       Citations to specific page numbers in the complaint are with reference to the pagination generated by the ECF system.

2       On May 14, 2018, the United States filed a letter requesting that the court "sua *sponte* dismiss this action" pursuant to 28 U.S.C. § 1915(e)(2)(B), or, in the alternative, grant the United States government leave to file a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) and issue a scheduling order setting forth a briefing schedule for the motion. (Letter, ECF No. 6, at 1, 3.) The government's letter asserts that the court lacks subject matter jurisdiction because (i) no waiver of sovereign immunity applies to plaintiff's claims and (ii) plaintiff has failed to comply with applicable administrative exhaustion requirements under the Federal Tort Claims Act and Freedom of Information Act. (*See id.* at 2.) Although the government's requests set forth in its May 14, 2018 letter are moot in light of this order, the government's contentions set forth in it appear meritorious and would provide grounds to dismiss if motion practice proceeded.

---

**End of Document**                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 909203
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

April GALLOP, for Herself and as Mother and
Next Friend of Elisha Gallop, a Minor, Plaintiff,
v.

Dick CHENEY, Vice President of the U.S.A., Donald
Rumsfeld, former U.S. Secretary of Defense, General
Richard Myers, U.S.A.F. (Ret.), and John Does Nos.
I–X, all in their individual capacities, Defendants.

No. 08 Civ. 10881(DC).
|
March 15, 2010.

**Attorneys and Law Firms**

Dennis Cunningham, Esq., Brooklyn, NY, William W. Veale,
Esq., Walnut Creek, CA, Mustapha Ndanusa, Esq., Brooklyn,
NY, for Plaintiff.

Preet Bharara, Esq., United States Attorney for the Southern
District of New York, by: Heather McShain, Esq., Assistant
United States Attorney, New York, NY, for Defendants.

## MEMORANDUM DECISION

CHIN, District Judge.

**\*1** On September 11, 2001, four commercial airliners were
hijacked in the northeastern United States. Two crashed into
the World Trade Center towers in New York; a third crashed
into the Pentagon in Washington, D.C.; and the fourth crashed
in rural Pennsylvania, apparently as it was en route to the
White House or the Capitol.

In this case, plaintiff April Gallop, represented by counsel,
contends that officials of the United States government aided
in the attacks. Indeed, she sues former Vice President Dick
Cheney, former Secretary of Defense Donald Rumsfeld, and
former Acting Chairman of the Joint Chiefs of Staff Richard
Myers individually, claiming that they and other government
officials conspired "to facilitate and enable the hijacking of
the airliners" for use as "living bombs to attack buildings
containing thousands of innocent victims." (Compl.¶ 1).

Gallop further alleges that defendants then conspired "to
cover up the truth about what they had done." (Id.).

Before the Court is defendants' motion to dismiss the
complaint for failure to state a claim upon which relief may be
granted. Because I conclude that the complaint fails to allege
a plausible claim for relief, defendants' motion is granted and
the complaint is dismissed.

## STATEMENT OF THE CASE

### A. The Facts
The complaint alleges the following:

At all relevant times, Gallop was a career member of the U.S.
Army who was stationed at the Pentagon on September 11,
2001. (Id . ¶¶ 6, 10). That day was Gallop's first day back at
work from maternity leave, and she had her two-month old
baby, Elisha, with her at the Pentagon. (Id. ¶¶ 6, 10). As she sat
down to work, "there was an explosion, then another; walls
collapsed and the ceiling fell in." (Id. ¶ 6). Both Gallop and her
baby were hit by debris and suffered head and brain injuries.
(Id. ¶¶ 6, 7, 10, 57–59). Gallop grabbed her baby, and they
managed to escape through an opening in the wall. (Id. ¶ 6).

In fact, Gallop alleges, no plane crashed into the Pentagon.
(Id. ¶ 4). Instead, she contends, the "explosion and fireball
were engineered by other means, a planted bomb or bombs
and/or a missile." (Id.). The "official" reports of a hijacked
plane crashing into the Pentagon were "false," and were
issued to further defendants' unlawful conspiracy. (Id. ¶ 4).

Gallop seems to acknowledge that two planes crashed into the
World Trade Center towers in New York and a third crashed in
Pennsylvania. (Id. ¶ 14 ("Two [planes] were evidently crashed
into the World Trade Center towers in New York, which
later collapsed; ... and the fourth [plane], supposedly aiming
for the White House or the Capitol, was reported crashed
in Pennsylvania by its passengers, fighting back against the
hijackers.")). But Gallop contends that defendants and other
U.S. government officials aided and facilitated the attacks:

> to bring about an unprecedented,
> horrifying and frightening catastrophe
> of terrorism inside the United
> States, which would give rise to a
> powerful reaction of fear and anger

in the public, and in Washington. This would generate a political atmosphere of acceptance in which the new Administration could enact and implement radical changes in the policy and practice of constitutional government in our country .... By helping the attack succeed, defendants and their cohorts created a basis for the seizure of extraordinary power, and a pretext for launching the so-called Global War on Terror, in the guise of which they were free to pursue plans for military conquest, "full spectrum dominance" and "American primacy" around the world; as they have done.

**\*2**  (*Id.* ¶ 2).

Gallop alleges the following in support of her conspiracy theory:

- defendants and other U.S. government officials ignored "an increasingly explicit series of warnings" of planned Al Qaeda attacks inside the United States (*id.* ¶ 17);

- "[r]esponsible intelligence officials" ignored "critical investigative leads" (*id.* ¶ 18);

- "the many warnings of a coming attack by Al Qaeda forces (as many as forty messages in all, according to the [9/11] Commission Report, from eleven different countries) were studiously ignored" (*id.* ¶ 19);

- "defendants and others in the highest circles of Government" did not respond (*id.* ¶ 20);

- the U.S. air defense system failed to respond to the early reports of the hijackings (*id.* ¶¶ 22–26);

- Gallop was present at the Pentagon and saw no sign of a plane or any wreckage of or from a plane (*id.* ¶ 33);

- it was unlikely if not "nearly impossible" for a plane of this size to have maneuvered as this plane reportedly did, i.e., to have smashed into a side wall of the Pentagon rather than straight down into the top of the building (*id.* ¶¶ 37–40);

- there are no photographs or video of plane, either before or after the crash, from surveillance cameras (*id.* ¶¶ 40(a), (b));

- an odor of cordite, a high explosive used in gunpowder, was detected at the Pentagon in the aftermath, which is suggestive of explosives rather than a fire from burning jet fuel (*id.* ¶ 40(f));

- on September 10, 2001, the day before, Rumsfeld acknowledged that $2.3 trillion in defense funds could not be accounted for; to plaintiff's knowledge and belief, the bombing at the Pentagon destroyed records relevant to the tracing of those funds (*id.* ¶ 42);

- "the plainly visible pattern of damage on the outside and in the other photographic views makes it clear the building was not hit by a plane" (*id.* ¶ 43);

- there was time for the U.S. to send jets to intercept the two planes that hit the towers in New York, but this was not done (*id.* ¶ 47);

- the reports of what occurred on Flight 93, which crashed in Pennsylvania were false, because "the science is clear that, at least in 2001, cell phones couldn't operate at the high altitude where the struggle supposedly took place" (*id.* ¶ 48); and

- the reports of debris from the plane in Pennsylvania a mile or more from the crash are "an obvious impossibility," and the photographs of the crash site do not reveal visible debris or any sign of the plane (*id.* ¶ 50).

The true facts of what happened on September 11, 2001, Gallop alleges, were covered up by defendants and other U.S. government officials. (*Id.* ¶¶ 51–56).

**B.** *Procedural History*

This action was commenced on December 15, 2008. The complaint asserts three causes of action: (1) a claim pursuant to *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971), for violation of the constitutional rights of Gallop and her child; (2) a claim for common law conspiracy to cause death and great bodily harm; and (3) a claim under the Antiterrorism Act, 18 U.S.C. § 2333(a), which provides civil remedies, including treble damages and attorneys' fees, to U.S. nationals injured by "an act of international terrorism." 18 U.S.C. §

2333(a). The complaint seeks compensatory and punitive damages against defendants personally, on a joint and several basis, "in such amounts as the Jury may see fit to award," as well as treble damages and attorneys' fees and costs. (Compl. at 27).

**\*3** The Court conducted a pretrial conference on April 8, 2009, and three lawyers appeared for Gallop. Defendants were represented by the United States Attorney's Office for the Southern District of New York. One of Gallop's attorneys described her claims:

> We allege that this was a wide-ranging enormous conspiracy by members of the government, and we picked three principals, Donald Rumsfeld, Dick Cheney, and General Richard Myers, and have alleged that they conspired to facilitate the attack in essence.

(4/8/09 Tr. 2). Counsel suggested that the World Trade Center towers were blown up by explosives *after* they were hit by airplanes. (*Id.* 2, 4). Counsel suggested that a plane flew toward and over-but not into-the Pentagon and then some explosives inside the Pentagon were set off. (*Id.* 3). After the Court inquired as to the good faith basis for bringing the law suit, the following exchange between the Court and counsel ensued:

> THE COURT: So I am clear, you are asserting that Cheney, Rumsfeld, Myers were personally involved in some kind of plot to blow up the World Trade Center and the Pentagon.
>
> MR. VEALE: That's correct.
>
> THE COURT: That's the allegation.
>
> MR. CUNNINGHAM: I think we might back a little away from that in the sense that we do believe they were involved in a plot that allowed the planes to get to the World Trade Center and to the Pentagon, in other words—
>
> THE COURT: Meaning they knew it was going to happen and they did nothing to stop it and knowingly let it go forward.
>
> MR. CUNNINGHAM: Yes, and interfered in such a way to keep the normal operation of the interceptor fighter plane system from happening; they cut off those planes. Then

the issue of the bombing in either place is a little more problematic, but still that's what we have come to believe.

(*Id.* 4–5).

Defendants expressed their intent to file a motion to dismiss the complaint, a briefing schedule was set, and this motion followed. In her opposition, Gallop submitted several affidavits and affirmations, and submitted numerous references to books about and studies of the attacks of September 11, 2001.

## *DISCUSSION*

Defendants move to dismiss the complaint on several grounds: Gallop has not sufficiently alleged constitutional violations; defendants are entitled to qualified immunity; the Anti–Terrorism Act claim fails to state a claim upon which relief may be granted; Gallop's claims are barred by the doctrine of judicial estoppel; the constitutional claims are untimely; and the complaint is frivolous. I reach only the last prong of the motion: I agree that the complaint is frivolous. Hence, the motion is granted and the complaint is dismissed, with prejudice.

### A. *Applicable Law*

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. v. Twombly,* 550 U.S. 544, 570 (2007)). The Supreme Court in *Iqbal* set out a "two-pronged" approach for courts considering a Rule 12(b)(6) motion to dismiss. *Id.* at 1950.

**\*4** First, the court accepts plaintiff's factual allegations as true and draws all reasonable inferences in his favor. *See id.* The court considers only the factual allegations in the complaint and "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc .,* 369 F.3d 212, 217 (2d Cir.2004). [1] Legal conclusions "must be supported by factual allegations." *Iqbal,* 129 S.Ct. at 1950. Pleadings that are "no more than conclusions are not entitled to the assumption of truth," and a court need assume the veracity only of "well-pleaded factual allegations." *Id.*

Second, the court determines whether the "well-pleaded factual allegations ... plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly,* 550 U.S. at 556). Facts that are "merely consistent with" a defendant's liability are insufficient if they do not establish the "plausibility of 'entitlement to relief.' " (*Id.* (quoting *Twombly,* 550 U.S. at 557). Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

In *Iqbal,* the complaint alleged that following the attacks of September 11, 2001, high-ranking federal officials (the Attorney General and the Director of the FBI) directed the FBI to label thousands of Arab Muslim men as "high interest" and then to arrest and detain them—for invidious and discriminatory reasons, *i.e.,* their race, religion, or national origin. *Id.* at 1951–52. The Court held that "purposeful, invidious discrimination" was not a "plausible conclusion" in light of an "obvious alternative explanation" for the arrests: the high-ranking federal officials acted based on their "nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts." *Id.* at 1951–52. In other words, the Court rejected Iqbal's proffered explanation for the defendants' actions, finding it implausible when compared to a more compelling—and "obvious"—alternative explanation.

**B. *Application***

First, I consider the factual content of the complaint, keeping in mind that I am obliged to assume the veracity only of well-pleaded factual allegations, and that mere conclusions are not entitled to the assumption of truth. Second, I consider whether the well-pleaded facts, assumed to be true, give rise not just to a possible claim but to a plausible claim. In these analyses, I am required to draw on my judicial experience and to apply my common sense.

**1. *Factual Content of the Complaint***

**\*5** The complaint pleads little in terms of factual content beyond what Gallop saw and experienced herself at the

Pentagon on September 11th. She did not see any signs of a plane, but this is hardly compelling evidence that no plane was there, given her description of the chaos around her—a "huge explosion," followed by more explosions, walls collapsing, ceilings falling, flames shooting out of her computer, debris falling on her and her baby, smoke and dust all about, and the front of the building being blown open. (Compl.¶¶ 6, 7, 33, 34). Indeed, she alleges that she collapsed outside and did not wake up until some time later when she found herself in a hospital. (*Id.* ¶ 34). Under these circumstances, the fact that she did not see any sign of a plane, assuming that to be true, does not mean no plane hit the Pentagon. [2]

Certain other allegations are arguably factual in nature. Gallop alleges that government officials missed warnings that Al Qaeda was going to attack and that fighter jets had sufficient time to intercept the hijacked airplanes but failed to do so. I will assume, for purposes of this motion, that these factual allegations are true; after all, four commercial jetliners were hijacked and three of the four attacks succeeded. Beyond these facts, however, the complaint contains little more than speculation and conjecture. The allegations that high-ranking officials of the United States knew that the attacks were coming and that they facilitated the attacks and let them happen, knowing that thousands of civilians would die, to create an atmosphere of fear that would permit the administration to seize extraordinary power and start a pretextual global war on terror are not factual in nature. Rather, they are mere conclusions, unsupported by any specific factual assertion. Accordingly, the Court is not required, under *Iqbal,* to assume their truth.

**2. *Plausibility of Plaintiff's Claims***

Even assuming the factual allegations of the complaint are true, Gallop's claims are not plausible. It is simply not plausible that the Vice President of the United States, the Secretary of Defense, and other high-ranking officials conspired to facilitate terrorist attacks that would result in the deaths of thousands of Americans. If anything, the allegations are the product of cynical delusion and fantasy.

A court may dismiss a claim as "factually frivolous" if the facts alleged are "clearly baseless," that is, "fanciful," "fantastic," or "delusional." *Denton v. Hernandez,* 504 U.S. 25, 32–33 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 325, 327, 328 (1989)). Courts have not hesitated to dismiss complaints asserting delusional claims of conspiracy. [3] Indeed, courts have dismissed other cases alleging delusional

conspiracy theories about the attacks of September 11, 2001.[4] Because Gallop's claims are factually baseless—indeed, because they are fanciful, fantastic, and delusional—they are dismissed.

### CONCLUSION

**\*6** For the foregoing reasons, defendants' motion to dismiss is granted, and the complaint is dismissed, with prejudice. The Clerk of the Court shall enter judgment accordingly.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 909203

### Footnotes

1    Here, I do not consider the affidavits and affirmations submitted by plaintiff in opposition to the motion, as they are not properly considered as part of the complaint.

2    It should be noted that in a prior lawsuit, Gallop took the position that a passenger airliner did crash into the Pentagon. (*See* McShain Decl., Ex. B ¶ 2 (Amended Complaint, dated Mar. 23, 2005, filed in *Vadhan v. Riggs Nat'l Corp.,* No. 04 Civ. 7281(RCC))).

3    *See, e.g., McCormick v. Jackson,* No. 07 Civ. 7893(JSR), 2008 WL 3891260 (S.D.N.Y. Aug. 21, 2008) (dismissing complaint alleging that plaintiff's co-workers at U.S. Department of Housing and Urban Development engaged in vast conspiracy to create and disseminate non-consensual pornographic videos of her using secret cameras), *aff'd mem. sub nom. McCormick v. Donovan,* No. 08–5900–cv, 2010 WL 456686 (2d Cir. Feb. 11, 2010); *Bloom v. United States Government,* No. 02 Civ. 2352(DAB), 2003 WL 22327163 (S.D.N.Y. Oct. 10, 2003) (dismissing claims of government conspiracy to "murder and lynch" plaintiff and drugging him to keep him from pursuing practice of dentistry); *Tyler v. Carter,* 151 F.R.D. 537, 537–38 (S.D.N.Y.1993) (dismissing complaint *sua sponte* where plaintiff, a self-identified "cyborg," alleged that former Presidents Carter and Clinton were part of conspiracy to reinstitute slavery and breed humans for slaughter), *aff'd mem.,* 41 F.3d 1500 (2d Cir.1994); *George Washington America v. New York Passport Ctr.,* No. 91 Civ. 2731(MJL), 1991 WL 258763, at \*1 (S.D.N.Y. Nov. 27, 1991) (dismissing complaint alleging U.S. government, CIA, and communist conspirators used laser beams to weaken plaintiff's ability to concentrate, bugged his phone, and interfered with his sex life), *aff'd mem.,* 969 F.2d 1042 (2d Cir.1992); *see generally Fitzgerald v. First East Seventh Street Tenants Corp .,* 221 F.3d 362, 363 (2d Cir.2000) (holding that district courts have "inherent authority" to dismiss frivolous cases, whether filed *in forma pauperis* or by fee-paying plaintiffs, and to do so quickly "to preserve scarce judicial resources").

4    *See, e.g., Stich v. United States Government,* 108 Fed. App'x 32 (2d Cir.2004) (affirming district court's *sua sponte* dismissal of complaint alleging conspiracy involving government officials and agencies that facilitated seizure of four airliners on September 11, 2001); *Wood ex rel. United States v. Applied Research Assocs., Inc.,* No. 07 Civ. 3314(GBD), 2008 WL 2566728, at \* \*1, 3 (S.D.N.Y. June 26, 2008) (dismissing claims that World Trade Center towers were not hit by hijacked airliners but were "struck by high powered laser beams" fired by a "United States military's laser-like weaponry"); *Haas v. Gutierrez,* No. 07 Civ. 3623(GBD), 2008 WL 2566634, at \* \*1, 6 (S.D.N.Y. June 26, 2008) (dismissing as frivolous complaint alleging "existence of a nefarious conspiracy of epic proportion" involving governmental and non-governmental actors "to "further[ ] the false claim that two wide-body jetliners hit the World Trade Center on 9/11/01" when towers were actually destroyed by U.S. military).

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 5437212
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Anthony J. CEPARANO, Plaintiff,

v.

SUFFOLK COUNTY, County Executive Steve Levy, Suffolk County Police Department, Police Commissioner Richard Dormer, Former Police Commissioner (2003), Lt. Michael Fitzpatrick, Lt. James Maher, Lt. Paul Schrieber, Det. Anthony Leto, Det. Behrens, Det. Robert Suppa, Det. William Sheridan, P.O. Christopher Viar, P.O. Walter Hetzel, P.O. Kathleen Focas, P.O. Timothy Kelly, Sgt. Leonard, Sgt. William Wallace, P.O. Eric Guiterman, P.O. William Vasquez, P.O. James Behrens, P.O. Anthony Calato, P.O. Daniel Rella, P.O. Juan Valdez, Sgt. William Scaima, P.O. Anthony Wuria, P.O. Michael Pelcher, P.O. Ernie Ketcham, Sgt. Frank Giuliano, Lt. James Smith, Det. "James Smith's Partner", Sgt. Ken, P.O. (5TH Precinct), P.O. "John Doe's # 's 1–50", Lt. Stephen Hernandez, Lt. Daniel Meyer, Capt. John Hanley, Suffolk County Division of Medical Legal Investigations and Forensic Science, Chief of Toxicology Michael Lehrer, Asst. Chief of Toxicology Michael Katz, Toxicologist Lori Arendt, Reconstruction Analyst Robert Genma, Suffolk County District Attorney's Office, District Attorney Thomas J. Spota III, Chief Major Crime Bureau, A.D.A. Bradford S. Magill, A.D.A. Patricia Brosco, "Supervisor of Bradford S. Magill", "Supervisor of Patricia Brosco", Suffolk County Unified Courts System, Presiding Judge S.C. District Ct., Judge Gaetan B. Lozito, Presiding Judge Ralph T. Gazzilo, Presiding Judge C. Randall Hinrichs, Court Reporter Dennis P. Brennan, Court Reporter Susan T. Conners, Judge Martin Efman, Judge J.J. Jones, Suffolk County Legal Aid Society, Presiding Attorney Edward Vitale, Attorney Susan Ambro, 18–B Counsel Robert Macedonio, Suffolk County Sheriff's Department, Sheriff Vincent Demarco, Sheriff Alfred Etisch, Warden Ewald, Former Warden (2004–2006), C.O. # 1158, C.O. # 1257, C.O. # 1251, C.O. # 1207, C.O. # 1259, C.O. # 1094, C.O. # 1139, C.O. # 1241, C.O. Violet, C.O. # 962, C.O. # 1131, C.O. "Tom Arnold", Lt. McClurkin, C.O. Galotti, Sgt. Fischer, C.O. Cathy Ryan (Peeping Pervert), C.O. Kenneth Lawler, C.O. # 668, Co. # 1274, C.O. William Zikis, C.O. # 1324, C.O. # 1275, C.O. Joseph Foti, C.O. # 1220, C.O. # 1276, C.O. Ezekiel, Dep "Brutalitywiolators" # 1–12, C.O. "John Civil Rights Violators" # 1–200, Nurse "Korea", Nurse Pat, Nurse Julie "Loud", Nurse "Male, Earring, Glasses", Nurse "Really Ugly Warts, Always Nasty & Rude", Suffolk County Probation Department, Senior Supervisor, Senior P.O. Bennedetto, Probation Officer Curtis, Probation Officer "Herman Muenster" (P.O. Curtis' Partner), Probation Officer Soltan, Probation Officer "P.O. Soltan Partner", Front Desk Clerk, Andrew O'flaherty, West Babylon Fire Department, Supervisor Mina, Emt McClean, Good Samaritan Hospital, Dr. Jeffrey Margulies, Dr. "I.C.U.", Nurse "Do You Want His Clothes", Nurse "Interogate [Sic] Him Before He's Sedated", Donna Venturini, Rob Gannon, Beth Feeney, Jeanne H. Morena, Southside Hospital, Dr. "Julie Crist's E.R. Doctor", Dr. "Chief [of] Psychiatry", Newsday, Editor John Mancini, Managing Editor Deborah Henley, Managing Editor Debby Krenek, Reporter Bill Mason, 1010 Wins Radio, 1010 wins.com, Programming Director, Reporter, Cablevision, News 12 Long Island, Programming Director, Reporter, Southern Meadows Apartments, Property Manager Debra Cody, Property Manager, Maintenance [Sic] Supervisor William Florio, Suffolk County Intensive Case Management, Director Douglas Shelters, Case Manager Dana Romano, Bellport Outreach, Director, Supervisor of Julie Crist's Case Mgr Jenny, Julie Crist's Case Mgr Jenny, Global Tel–Link, Ceo, Board of Directors, Executive V.P. Billing and Marketing Margaret Phillips, Julie Dougherty A.K.A. Julie Crist, myspace.com, Mother's Against Drunk Driving (Madd), and Madd President 2007–2009, Defendants.

No. 10–CV–2030 (SJF)(ATK).
|
Dec. 15, 2010.

**Attorneys and Law Firms**

Anthony J. Ceparano, Gowanda, NY, pro se.

***ORDER***

FEUERSTEIN, District Judge.

I. Introduction

 **\*1**  On May 4, 2010, incarcerated *pro se* plaintiff Anthony J. Ceparano ("plaintiff"), commenced this purported civil rights action pursuant to 28 U.S.C. § 1983 against approximately four hundred and fifteen (415) defendants, one hundred and fifty-three (153) of whom are named: [1] Suffolk County, County Executive Steve Levy, Suffolk County Unified Courts System, Suffolk County District Attorney's Office, Suffolk County Legal Aid Society, Suffolk County Police Department, Suffolk County Sheriff's Department, Suffolk County Division of Medical Legal Investigations and Forensic Science, Suffolk County Probation Department, Suffolk County Police Commissioner Richard Dormer, Former Police Commissioner (2003), Captain John Hanley, Lieutenants Michael Fitzpatrick, James Maher, Paul Schrieber, James Smith, Stephen Hernandez, Daniel Meyer, Sergeants William Wallace, William Scaima, Frank Giuliano, Leonard, Ken Detectives Anthony Leto, Behrens, Robert Suppa, William Sheridan, "James Smith's Partner", Police Officers Christopher Viar, Walter Hetzel, Kathleen Focas, Timothy Kelly, Eric Guiterman, William Vasquez, James Behrens, Anthony Calato, Daniel Rella, Juan Valdez, Anthony Wuria, Michael Pelcher, Ernie Ketcham, "(5th Precinct)", Police Officers "John Doe's # 's 1–50", Chief of Toxicology Michael Lehrer, Assistant Chief of Toxicology Michael Katz, Toxicologist Lori Arendt, Reconstruction Analyst Robert Genma, Suffolk County District Attorney Thomas J. Spota III, Chief Major Crime Bureau, Assistant District Attorney Bradford S. Magill, Assistant District Attorneys Patricia Brosco, "Supervisor of Bradford S. Magill", "Supervisor of Patricia Brosco", Suffolk County presiding Judges Gaetan B. Lozito, Ralph T. Gazzilo, C. Randall Hinrichs, Martin Efman, J.J. Jones, Court Reporters Dennis P. Brennan, Susan T. Conners, Suffolk County presiding Legal Aid Attorneys Edward Vitale, Susan Ambro, 18–B Counsel Robert Macedonio, Suffolk County Sheriffs Vincent DeMarco, Alfred Etisch, Warden Ewald, Former Warden (2004–2006), Corrections Officers # 1158, # 1257, # 1251, # 1207, # 1259, # 1094, # 1139, # 1241,# 962, # 1131, # 668, # 1274, # 1324, # 1275, # 1220, # 1276, Violet, "Tom Arnold", Galotti, Ezekiel, "Cathy Ryan (Peeping Pervert)", William Zikis, Kenneth Lawler, Joseph Foti, Lieutenant McClurkin, Sergeant Fischer, "Dep BrutalityWiolators # 1–12", Corrections Officers "John Civil Rights Violators" # 1–200, Corrections Nurses "Korea", Pat, "Julie Loud", "Male, Earring, Glasses", "Really Ugly Warts, Always Nasty & Rude", Suffolk County Senior Probation Supervisor, Senior Probation Officer Bennedetto, Probation Officers Curtis, "Herman Muenster (P.O. Curtis' partner)", Soltan, "P.O. Soltan Partner", Front Desk Clerk, Andrew O'Flaherty, West Babylon Fire Department, Supervisor Mina, Emergency Medical Technician McClean, Good Samaritan Hospital, Doctors. Jeffrey Margulies, "I.C.U.", Nurses "Do you want his clothes", "Interogate [sic] him before he's sedated", Donna Venturini, Rob Gannon, Beth Feeney, Jeanne H. Morena, Southside Hospital, Drs. "Julie Crist's E.R. Doctor", "Chief [of] Psychiatry", Newsday, Editor John Mancini, Managing Editor Deborah Henley, Managing Editor Debby Krenek, Reporter Bill Mason, 1010 WINS Radio, 1010 WINS.com, Programming Director, Reporter, Cablevision, News 12 Long Island, Programming Director, Reporter, Southern Meadows Apartments, Property Manager Debra Cody, Property Manager, Maintenance [sic] Supervisor William Florio, Suffolk County Intensive Case Management, Director Douglas Shelters, Case Manager Dana Romano, Bellport Outreach, Director, Supervisor of Julie Crist's Case Manager Jenny, Julie Crist's Case Manager Jenny, Global Tel–Link, CEO, Board of Directors, Executive Vice President of Billing and Marketing, Margaret Phillips, Julie Dougherty A.K.A. Julie Crist, Myspace.com, Mother's Against Drunk Driving (MADD), and MADD President 2007–2009. Accompanying the complaint is an application to proceed *in forma pauperis.* Upon review of the declaration accompanying plaintiff's application, I find that plaintiff's financial status qualifies him to commence this action without prepayment of the filing fees. *See* 28 U.S.C. § 1915(a) (1). Accordingly, plaintiff's application is granted. However, for the reasons set forth below, the complaint is sua sponte dismissed in part without prejudice and dismissed in part with prejudice.

II. The Complaint

 **\*2**  Plaintiff's handwritten complaint exceeds two hundred and fifty pages and is comprised of over seven hundred numbered paragraphs purporting to allege a myriad of claims based upon conduct alleged to have occurred between 2003 and 2009. The complaint is largely a collection of diatribes, opinions, conclusions and speculation devoid of underlying facts. For example, the complaint begins:

> I grew up believing in this Country, and the ideals I was taught in school: "All men are created equal. By the people, of the people, for the people. No person shall be deprived of life, liberty or property without due process of the law. The rights of the people to be secure in their persons, houses, and papers ..." Anyone who believes this has never lived in

Suffolk County. It is all a lie! The people have no rights. Police, D.A.'s, local government agents, wield unchecked power and abuse whoever they want at will. No one is safe, and god forbid you've ever made a mistake, you are targeted forever ...

It took just *one year* of living in Suffolk County ... to destroy all my faith, and every illusion that I ever had about having civil rights. I thought these things only happened in urban ghettos or the backwoods of the deep south. Never could I have imagined this could ever happen here. It's a sick game. There is no justice ...

Compl. at ¶ IV (emphasis in original). The complaint continues:

> Police brutality in Suffolk County is not the exception. It is the rule. It is page one, standard operating procedure. A badge in Suffolk County is a license to assault, and even kill, placing the holder above the law. I have been arrested seven times in Suffolk County, six of which I was taken into custody. Of the six, *five* (83%) involved police brutality and excessive force.

*Id.* at ¶¶ 8–9 (emphasis in original). Plaintiff then describes each of his arrests in Suffolk County, beginning with his November 8, 2003 arrest wherein Lieutenant James Smith is alleged to have "yanked the phone out of my hand [and] smashed me over the head with it." *Id.* at ¶ 10. According to the complaint, "[i]n Suffolk County, law enforcement is a self-serving, self-sustaining aberation [sic] that exists not for the benefit of and protection of society as much as it does for the enrichment of those who hold badges and law licenses." *Id.* at ¶ 52. Plaintiff alleges:

> law here [in Suffolk County] is about conviction rates, merit raises, and elections. The goals are promotions and raises, and personal advancement and enrichment. Above all, it is about the exercise and abuse of power, without regard to consequence, by those that are above the law. These demons destroy lives, regardless of the irrelevant concepts of truth and innocence, with no more thought than you give to stepping on a bug while walking. Not only do police and district attorneys continue arrests and

prosecutions of those they suddenly realize are innocent, they also entrap people they know from the start are innocent. The attitude is "you've been arrested before so you'll do some more time. So what? What difference does a little thing like innocence make? I need an arrest

**\*3** Rule 8(a) (2) of the Federal Rules of Civil Procedure requires that pleadings present a "short and plain statement of the claim showing that the pleader is entitled to relief," and "[e]ach averment of a pleading shall be simple, concise and direct." Fed.R.Civ.P. 8; *Swierkiewicz v. Sorema, NA.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Pleadings must give "fair notice of what the plaintiff's claim is and the grounds upon which it rests" in order to enable the opposing party to answer and prepare for trial, and to identify the nature of the case. *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 346, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), overruled in part on other grounds by *Bell Atlantic Corporation v. Twombly,* 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

A complaint should be short and clear because "unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1998); *see also Roberto's Fruit Market, Inc. v. Schaffer,* 13 F.Supp.2d 390 (E.D.N.Y., 1998).; *The Homeless Patrol v. Joseph Volpe Family,* 09–CV–3628, 2010 WL 2899076, at *7 (S.D.N.Y. July 22, 2010) (dismissing *sua sponte* a one hundred and forty-eight (148) page *pro se* amended complaint for, *inter alia,* failure to satisfy Rule 8). "Complaints which ramble, which needlessly speculate, accuse, and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with [Rule 8's] goals and this system; such complaints must be dismissed." *Infanti v. Scharpf,* 06 CV 6552, 2008 WL 2397607, at *1 (E.D.N.Y. June 10, 2008) (quoting *Prezzi v. Berzak,* 57 F.R.D. 149, 151, 16 Fed.R.Serv.2d 970 (S.D.N.Y.1972)).

However, "[d]ismissal of a complaint in its entirety should be 'reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.' " *Infanti,* 2008 WL 2397607, at *2, (quoting *Salahuddin,* 861 F.Supp. at 42)). Accordingly, prolix, unintelligible, speculative complaints that are argumentative, disjointed and needlessly ramble have routinely been dismissed in this Circuit. *See, e.g., Jones*

*v. Nat'l Communications and Surveillance Networks,* 266 F.App'x 31, 32 (2d Cir.2008) (affirming dismissal of fifty-eight (58) page, single-spaced *pro se* complaint with eighty-seven (87) additional pages of attachments, alleging over twenty (20) separate causes of action against more than forty (40) defendants for failure to meet the "short and plain statement" requirement of Rule 8); *Bell v. Lasaceli,* 08–CV–0278A, 2009 WL 1032857, at *2 (W.D.N.Y., Apr.15, 2009) (dismissing a two hundred (200) page *pro se* complaint naming forty-two (42) defendants for noncompliance with Rule 8); *Infanti,* 2008 WL 2397607 (dismissing *sua sponte* a ninety (90) page complaint comprised of over five hundred (500) paragraphs for running a foul of Rule 8's requirements); *see also In re Merrill Lynch & Co., Inc.,* 218 F.R.D. 76, 77–78 (S.D.N.Y.2003) (dismissing ninety-eight (98) page complaint comprised of three hundred and sixty-seven (367) paragraphs and explaining that "[w]hen a complaint is not short and plain, or its averments are not concise and direct, 'the district court has the power, on motion or *sua sponte,* to dismiss the complaint ....' ") (quoting *Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995)). However, given the preference that *pro se* cases be adjudicated on the merits and not solely on the ground that the complaint does not constitute a short and plain statement of the facts, leave to amend the complaint should be given at least once. *Salahuddin,* 861 F.Supp. at 42.

### 3. Habeas Corpus

**\*4** Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983. To state a claim under Section 1983, a complaint must contain factual allegations plausibly suggesting: (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977 L.Ed.2d 130 (1999); *Velez v. Levy,* 401 F.3d 75, 84 (2d Cir.2005).

### B. Application

The complaint in its present form does not fulfill Rule 8(a) (2)'s pleading requirements. The complaint is prolix,

confused, ambiguous, speculative, repetitive, argumentative and unintelligible. Neither the defendants nor the court should be required to expend the time, effort and resources necessary to parse through plaintiff's pleading in order to determine what claims, if any, plaintiff has alleged. Given "labyrinthian prolixity of unrelated and vituperative charges that def[y] comprehension," *Shomo v. State of New York,* 374 F.App'x. 180, 183 (2d Cir.2010) (quoting *Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972)), the Court *sua sponte* dismisses the complaint for failure to satisfy Rule 8(a)(2). However, plaintiff is afforded an opportunity to file a "short and plain statement of [his] claim" in accordance with this order. Plaintiff is advised that, for the reasons that follow, many of the named defendants are either immune from suit or are outside the scope of Section 1983. Accordingly, plaintiff's Section 1983 claims against these defendants are not plausible and should be omitted from any amended complaint because such an amendment would be futile.

### 1. Immunity

a. Eleventh Amendment Immunity
The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. "The reach of the Eleventh Amendment has ... been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign sovereigns ...." *State Employees Bargaining Agent Coalition v. Rowland,* 494 F.3d 71, 95 (2d Cir.2007) (quoting *W. Mohegan Tribe & Nation v. Orange C'ty,* 395 F.3d 18, 20 (2d Cir.2004)) (alterations in original). Eleventh Amendment immunity also extends to suits for money damages against state officials in their official capacities. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As

such, it is no different from a suit against the State itself") (internal citation omitted); *McNamara v. Kaye,* No. 06–CV–5169, 2008 WL 3836024, at \*8 (E.D.N.Y. Aug.13, 2008) ("[L]awsuits against state officers acting [in] their official capacity and lawsuits against state courts are considered to be lawsuits against the state."). [2]

**\*5** Here, plaintiff's Section 1983 claims for money damages against the state defendants in their official capacities are barred by the Eleventh Amendment and therefore are not plausible. Accordingly, such claims are dismissed with prejudice. In so far as the plaintiff names the New York Unified Court System as a defendant, it too is considered an arm of the state and is thus immune from suit by the Eleventh Amendment. *Gollomp v. Spitzer,* 568 F.3d 355, 368 (2d Cir.2009) ("[E]very court to consider the question of whether the New York State Unified Court System is an arm of the State has concluded that it is, and is therefore protected by Eleventh Amendment sovereign immunity."). Thus, plaintiff's claims against the New York State Unified Court System are not plausible and are dismissed with prejudice.

#### b. Prosecutorial Immunity
Plaintiff also seeks to sue the prosecuting attorneys in the underlying criminal cases against him for civil rights violations pursuant to Section 1983. It is "well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983.' " *Shmueli v. City of New York,* 424 F.3d 231, 236 (2d Cir.2005) (internal quotations omitted). "Prosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.' " *Hill v. City of New York,* 45 F.3d 653, 661 (2d Cir.1995) (quoting *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994)). In *Hill,* an Assistant District Attorney's alleged acts of "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" were "clearly protected by the doctrine of absolute immunity as [being] part of his function as an advocate." *Id.* at 661.

Here, plaintiff alleges, *inter alia,* that Assistant District Attorneys Magill and Brosco withheld evidence from the grand jury and did not provide required disclosures until days before or the day of trial. These allegations fall within the scope of protection defined by the doctrine of prosecutorial immunity and plaintiff has failed to otherwise allege any

conduct by these defendants that would fall outside the scope of prosecutorial immunity. Accordingly, plaintiff's claims against these defendants are not plausible and are dismissed with prejudice.

#### c. Judicial Immunity
Plaintiff seeks to sue several state court judges of the Suffolk District Court, Suffolk County Court and New York State Supreme Court, Suffolk County, who were allegedly involved with his underlying criminal proceedings. Judges Lozito, Gazzilo [3], Hinrichs, Efman and Jones are entitled to absolute judicial immunity. It is well settled that judges are entitled to absolute immunity for damages arising out of judicial actions performed in their judicial capacity. *See Mireles v. Waco,* 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990). Therefore, "if the relevant action is judicial in nature, the judge is immune so long as it was not taken in the complete absence of jurisdiction." *Huminski v. Corsones,* 396 F.3d 53, 75 (2d Cir.2004).

**\*6** Even liberally construed, plaintiff alleges no acts performed by any of these defendants that fall outside the scope of absolute judicial immunity. To the extent plaintiff even describes the conduct of any of the judges, all acts described were performed in their official capacity as judges. Therefore, plaintiff's claims against these defendants are not plausible and are dismissed with prejudice.

#### d. Entities that are Immune from Suit
"[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002) (dismissing claim against Lynbrook Police Department); *see also Melendez v. Nassau County,* No. 10–CV–2516, 2010 WL 3748743, at \*5 (E.D.N.Y. Sept.17, 2010) (dismissing claims against Nassau County Sheriff's Department); *Coleman v. City of New York,* No. 08–CV–5276, 2009 WL 909742, at \*2 (E.D.N.Y. Apr. 1, 2009) (dismissing claims against New York City department of probation); *Conte v. County of Nassau,* No. 06–CV–4746, 2008 WL 905879, at \*1 n. 2 (E.D.N.Y. Mar. 31, 2008) (dismissing § 1983 claims against Nassau County District Attorney's Office).

Insofar as plaintiff alleges claims against the Suffolk County Police Department, Suffolk County District Attorney's Office,

Suffolk County Sheriff's Department and Suffolk County Probation Department, the Court finds these entities to be administrative arms of the municipality and therefore lack the capacity to be sued. The Court construes Suffolk County Division of Medical, Legal Investigations and Forensic Sciences to be an administrative arm of the municipality and thus lacks the capacity to be sue*d. S* ee *Bennett v. County of Suffolk,* 30 F.Supp.2d 353 (E.D.N.Y.1998) (Suffolk County acted through its Department of Health Services).[4] Therefore, plaintiff's claims against the above named entities are dismissed with prejudice.

2. Private Defendants Not Amenable to Suit Under § 1983

a. Suffolk County Legal Aid Society, Edward Vitale and Susan Ambro

"[T]he Legal Aid Society ordinarily is not a state actor amenable to suit under § 1983." *Schnabel v. Abramson,* 232 F.3d 83, 86–87 (2d Cir.2000). Furthermore, Legal Aid attorneys are employees of "a private not for profit legal services corporation ... organized under the laws of New York [that] exists independent of any state or local regulatory authority." *Neustein v. Orbach,* 732 F.Supp. 333, 336 n. 3 (E.D.N.Y.1990). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs.,* 526 U.S. at 49 (internal quotations omitted). Given that the Suffolk County Legal Aid Society and its attorneys are not state actors, plaintiff's § 1983 claims against the Suffolk County Legal Aid Society and its attorneys, Edward Vitale and Susan Ambro, are not plausible and are thus dismissed with prejudice.

b. Other Private Defendants

**\*7** As stated above, a defendant must be acting under color of state law to be liable for a § 1983 claim. *Id.* Plaintiff's complaint largely describes alleged civil rights violations pursuant to Section 1983 against a myriad of private actors. Insofar as plaintiff purports to allege Section 1983 claims against private defendants for violations of his civil rights, such claims are not plausible and are dismissed with prejudice. Accordingly, the complaint is dismissed as against E.M.T. McClean, Good Samaritan Hospital, Dr. Jeffrey Margulies, Donna Venturini, Rob Gannon, Beth Feeney, Jeanne H. Morena, Southside Hospital, Newsday, John Mancini, Deborah Henley, Debby Krenek, Bill Mason, 1010

WINS Radio, 1010 WINS.com, South Meadows Apartments, Debra Cody, William Florio, Bellport Outreach, Global Tel–Link, Margaret Phillips, Julie Dougherty A.K.A. Julie Crist, Myspace.com, and Mother's Against Drunk Driving (MADD).

3. Unnamed Correctional Officers

Although it is a general principle of tort law that a tort victim who cannot identify the tortfeasor cannot bring suit, in the case of *pro se* litigants this rule has been relaxed. *Valentin v. Dinkins,* 121 F.3d 72, 75 (2d Cir.1997).

Plaintiff purports to allege claims against various unnamed officers alleged to work at the Suffolk County Police Department's Fifth Precinct and the Suffolk County Sheriff's Department as well as other "John Doe" defendants, whose work places are not identified within the Complaint. The United States Marshal Service will not be able to serve the intended defendants without further information. Accordingly, the Court hereby directs plaintiff to ascertain the full names of the unidentified defendants whom plaintiff seeks to sue.

4. Claims Against State Actors in Their Individual Capacities

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986) (quoting *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977)). Whether or not there was "personal involvement is a question of fact." *Williams,* 781 F.2d at 323.

Upon review of the voluminous complaint, the Court finds that the following defendants, though named in the caption, appear nowhere in the body of the complaint: Suffolk County Executive Steve Levy, Police Commissioner Richard Dormer, Police Commissioner Former 2003, Det. Behrens, Det. William Sheridan, P.O. Timothy Kelly, Sgt. Leonard, Sgt. William Wallace, P.O. Eric Guiterman, P.O. James Behrens, P.O Anthony Calato, P.O. Daniel Rella, P.O. Juan Valdez, Sgt. William Scaima, P.O. Anthony Wuria, P.O. Michael Pelcher, P.O. Ernie Ketcham, Sgt. Frank Giuliano, Michael Lehrer, Thomas J. Spota, Supervisor of Bradford S. Magill, Supervisor of Patricia Brosco, Presiding Judge S.C. District Court 6/5/07, Edward Vitale, Sheriff Vincent DeMarco, Sheriff Alfred Etisch, Warden Ewald, Warden Former 8/04–5/06, C.O. # 1158, C.O. # 1257, C.O. # 1207, C.O. # 1259, C.O. # 1094, C.O. # 1139, CO. Violet, C.O. # 962, C.O.

"Tom Arnold", C.O. Galotti, Sgt. Fischer, C.O. Cathy Ryan (Peeping Pervert), C.O. Kenneth Lawler, C.O. # 668, C.O. # 1274, CO. William Zikis, C.O. # 1324, CO. # 1275, C.O. Joseph Foti, C.O. Ezekiel, Dep "Brutality*Violators" # 1–12, C.O. "John Civil Rights Violators" # 1–200, Suffolk County Probation Department, Senior Supervisor, Senior P.O. Bennedetto, Probation Officer Soltan, Probation Officer "P.O. Soltan Partner", Front Desk Clerk, West Babylon Fire Department, Supervisor Mina, EMT McClean, Dr. Jeffrey Margulies, Dr. "I.C.U.", Rob Gannon, Beth Feeney, Jeanne H. Morena, Southside Hospital, Dr. "Julie Crist's E.R. Doctor", Dr. "Chief [of] Psychiatry", Editor John Mancini, Managing Editor Deborah Henley, Managing Editor Debby Krenek, Reporter Bill Mason, Programming Director, Reporter, Programming Director, Reporter and Director Douglas Shelters.

**\*8** Plaintiff does not plead factual allegations such that these defendants would have notice of his claims and be able defend against them. Moreover, plaintiff does not allege that any of these defendants were personally involved in any of the alleged wrongdoing. Because personal involvement is a prerequisite to a damages award for an alleged constitutional violation, plaintiff's claims, as plead, are not cognizable as against these defendants.

D. Leave to Amend

Rule 15(a) (2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Thompson v. Carter,* 284 F.3d 411, 419 (2d Cir.2002) (citing *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)). Nevertheless, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.' " *Ruotolo v. City of New York,* 514 F.3d 184, 191 (2d Cir.1998) (citing *Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Forman,* 371 U .S. at 182. However, if amendment would be futile, *i.e.,* if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6), leave to amend may be denied. *See*

*Lucente v. International Business Machines Corp.,* 310 F.3d 243, 258 (2d Cir.2002).

Since plaintiff is proceeding *pro se,* he is granted leave to amend his complaint to replead his 1983 claims in accordance with this order. Plaintiff shall comply with Federal Rule of Civil Procedure 8 as set forth above at pages eight to ten (8–10) and file any amended complaint in accordance with this order **within thirty (30) days from the date this order is served with notice of entry upon him,** or plaintiff's complaint will be deemed dismissed with prejudice.

IV. Conclusion

For the foregoing reasons, plaintiff's application to proceed *in forma pauperis* is granted and the complaint is *sua sponte* dismissed with leave to amend within thirty (30) days from the date this order is served with notice of entry upon plaintiff. The Superintendent of the facility in which plaintiff is incarcerated must forward to the Clerk of the Court a certified copy of plaintiff's trust fund account for the six (6) months immediately preceding this order, in accordance with plaintiff's authorization in his *in forma pauperis* application. The agency holding plaintiff in custody must calculate the amounts specified by 28 U.S.C. § 1915(b), deduct those amounts from his prison trust fund account, and disburse them to the Clerk of the United States District Court for the Eastern District of New York. The Warden or Superintendent shall not deduct more than twenty percent (20%) from plaintiff's trust fund account.

**\*9** The Clerk of the Court is directed to mail a copy of this order, together with plaintiff's authorization, to the Superintendent of the facility in which plaintiff is incarcerated and to serve notice of entry of this Order in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure, including mailing a copy of the Order to the *pro se* plaintiff at his last known address, *see* Fed.R.Civ.P. 5(b)(2)(c). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5437212

## Footnotes

1    Plaintiff's "named" defendants include those he has nicknamed (i.e. "Herman Muenster") or otherwise described (i.e. "Nurse really ugly warts, always nasty & rude") as opposed to those simply included as "John Doe."

2    A narrow exception to this rule exists for suits injunctive relief against state officers in their official capacity. *See Will,* 491 U.S. at 71, n. 10. To the extent plaintiff seeks prospective injunctive relief against any state defendant in his or her official capacity, plaintiff may include such claim in an amended complaint to be filed in accordance with this order.

3    Plaintiff alternates the spelling of the defendant's name, spelling it "Gazzillo" and "Gazzilo."

4    The Court takes judicial notice that the Suffolk County Division of Medical Legal Investigations is a division of the Suffolk County Department of Health Services.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Harvey v. Kirk, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 45 of 166

2019 WL 5150035
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Gregory HARVEY, Plaintiff,

v.

Timothy KIRK, et al., Defendants.

6:19-CV-411 (MAD/ATB)
|
Signed 05/09/2019

**Attorneys and Law Firms**

GREGORY HARVEY, Plaintiff, pro se.

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

### I. Introduction

**\*1** Plaintiff filed this action on April 5, 2019, together with an application to proceed in forma pauperis ("IFP"). (Dkt. Nos. 1, 2-3). On the same day, District Judge Mae A. D'Agostino ordered administrative closure of the action because plaintiff failed to submit a properly completed IFP application. (Dkt. No. 4). In that order, Judge D'Agostino afforded plaintiff thirty (30) days to either pay the filing fee or submit a properly completed IFP application. On April 17, 2019, plaintiff filed a renewed motion to proceed IFP, the case was reopened, and has been sent to me for initial review. (Dkt. Nos. 5-6). On April 25, 2019, plaintiff filed a letter, requesting to amend his demand for relief. (Dkt. No. 8).

### II. IFP Application

#### A. Legal Standards

Where a plaintiff seeks leave to proceed IFP, the court must determine whether the plaintiff may proceed with the action without prepaying the filing fee in full. The court must then consider whether the causes of action stated in the complaint are, *inter alia*, frivolous or malicious, or if they fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915 (e)(2)(B).

In this case, even though plaintiff has now filed the appropriate forms to show that his financial status would qualify him to "commence" this action without prepaying

the filing fee in full, the court would recommend denying plaintiff's application. Title 28 of the United States Code, section 1915(g), as amended, provides:

> In **no event** shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) (emphasis added). The court has a responsibility to determine that a prisoner has not brought actions, on three or more occasions while incarcerated, which have been dismissed as frivolous, malicious or for failure to state a claim before permitting plaintiff to proceed with an action in forma pauperis. *Id.*

#### B. Application

##### 1. Three-Strikes

Plaintiff has been a frequent litigator in the Northern District of New York. On March 3, 2011, the Honorable Lawrence E. Kahn, Senior United States District Judge issued an order in *Harvey v. Law*, No. 9:10-CV-1468 (LEK/DEP), finding that plaintiff's IFP application should be denied because he had "three strikes" for purposes of section 1915(g). (Dkt. No. 4 in 10-CV-1468). Senior Judge Kahn stated that plaintiff "brought at least three actions in the Northern District which were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. (*Id.* at 2) (citing *Harvey v. Grow*, 9:09-CV-518 (N.D.N.Y.) (Order of Suddaby, J. filed 6/2/09)); *Harvey v. Sawyer*, 9:09-CV-598 (N.D.N.Y.) (Dkt. No. 26, Order of Scullin, S.J. filed 8/20/10); *Harvey v. Luther*, 9:09-CV-599 (N.D.N.Y.) (Dkt. No. 5, Order of Hurd, J. filed 6/8/09); *Harvey v. City of Utica*, 9:09-CV-644 (N.D.N.Y.) (Dkt. No. 4, Order of McAvoy, S.J., filed on 6/15/09). Based on these cases, and the finding that plaintiff

**Harvey v. Kirk**, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 46 of 166

was not in "imminent danger" for purpose of section 1915, the court denied plaintiff's application to proceed IFP. (Dkt. No. 4 at 3-5 in 9:10-CV-1468,).

 **\*2**  On August 24, 2014, plaintiff filed another complaint, which was referred to me for initial review after reopening. *Harvey v. Jalonak*, No. 14-CV-1046 (GLS/ATB). On October 2, 2014, I recommended that plaintiff's motion to proceed IFP be denied pursuant to 28 U.S.C. § 1915(g) based on plaintiff's previous "three-strikes." I also found that plaintiff was not in "imminent danger." I recommended that the case be dismissed unless plaintiff paid the full filing fee for the action. (Dkt. No. 8 in 14-CV-1046). Plaintiff did not file any objections to my recommendation. On October 29, 2014, Senior Judge Sharpe accepted my recommendation and denied plaintiff's motion to proceed IFP. (Dkt. No. 9 in 14-CV-1046).

On October 31, 2014, plaintiff filed a letter, stating that he had "no problem" paying the filing fee, but requesting a "stay" of the fee payment. (Dkt. No. 10 in 14-CV-1046). On November 14, 2014, Senior Judge Sharpe denied the "stay," but granted plaintiff an additional thirty (30) days to pay the fee. (Dkt. No. 11 in 14-CV-1046). Plaintiff did not pay the fee within the extra time granted by Judge Sharpe. Although the deadline for payment was set as December 14, 2014, the court did not issue a judgment until January 5, 2015. (Dkt. No. 12 in 14-CV-1046).

Because plaintiff is still incarcerated, section 1915(g) applies to him, and because he has filed at least three prior cases which have been dismissed either as frivolous or for failure to state a claim, this court must again recommend dismissal of plaintiff's action unless plaintiff is in "imminent danger."

The imminent-danger exception protects a prison inmate, who is exposed to potential danger, from the consequences of his earlier mistakes in filing frivolous litigation. The Second Circuit has held that "for a prisoner to qualify for the imminent danger exception, the danger must be present when he files his complaint – in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed." *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009) (citing *Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002)). Additionally, "there must be a nexus between the imminent danger a three-strikes prisoner alleges to obtain IFP status and the legal claims asserted in his complaint." *Pettus*, 554 F.3d at 297. When determining whether a prisoner has qualified

for the "imminent danger" exception, courts look at the non-conclusory allegations in the plaintiff's complaint.

A review of plaintiff's allegations in this case show that he is suing various agents of the United States Secret Service, who he claims have been conducting illegal surveillance of him since 2003. (Complaint ("Compl.") *generally*). Among other statements, which this court will discuss below, plaintiff states that these agents spied on plaintiff 24 hours per day, seven days per week for what they called the "United States Prophet Program." (Compl. at 4). Plaintiff seems to allege that the defendants hoped to get "future predictions and premonitions" from plaintiff because he is telepathic. (*Id.*) There are no non-conclusory statements in plaintiff's complaint, and there is absolutely no claim or indication that plaintiff is in imminent danger, sufficient to overcome the three-strikes bar.

Normally, when an inmate is subject to the three-strikes bar, the court will allow the complaint to go forward if the plaintiff pays the filing fee. However, a review of this action shows that even if plaintiff paid the filing fee, this action would be subject to dismissal as frivolous.

### 2. Merits

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case *at any time* if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

 **\*3**  In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous

Harvey v. Kirk, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 47 of 166

before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

As stated above, plaintiff alleges that the defendant Secret Service Agents and "Affiliates" began spying on plaintiff as early as 2003. Apparently, plaintiff believes that the defendants are somehow mentally harassing him by obtaining predictions and premonitions from him telepathically. (Compl. at 4). Plaintiff states that the New York City agents have "sophisticated telepathic equipment" with which they "harass innocent religious citizens trying to force them to become prophets for the U.S. Government." (*Id.*) Plaintiff states that "they" claim that this Prophet Program is "classified," and when plaintiff attempted to sue the Syracuse Field Office in 2005, the defendants forced a medical doctor to diagnose plaintiff with mental illness. Plaintiff claims that he has been under surveillance until the present day.[1]

The complaint contains three causes of action. (Compl. at 5). The first cause of action alleges violations of plaintiff's First Amendment right to practice his religion without government involvement. (*Id.*) The second cause of action is for a violation of Equal Protection, stating that plaintiff may not be the subject of discrimination by the government for expressing his religion and giving premonitions to the media. Finally, plaintiff alleges that his Eighth Amendment rights have been violated because the Secret Service has used telepathic individuals to mentally harass plaintiff and falsely arrest him every time that he tries to sue them. Plaintiff claims that two of the defendant "staged" his current wrongful conviction and imprisonment. (*Id.*)

The claims stated above are the precise type of claims that may be dismissed sua sponte as frivolous or fanciful even if plaintiff paid the filing fee, notwithstanding the liberal treatment that is accorded pro se pleadings. *See*

*e.g. Frank v. U.S. F.B.I.*, No. 13-CV-848, 2013 WL 839862, at *1 (E.D.N.Y. Mar. 5, 2013). In *Frank*, the court dismissed plaintiff's complaints sua sponte notwithstanding his payment of the filing fee. *Id.* In *Frank*, plaintiff alleged that he was targeted by the United States government for surveillance because he was a whistle blower in a mortgage processing "scenario in 2007." Instead of using " ' 'normal' surveillance ... they have jeopardized my life with attack helicopters - in certain case missing [Frank] by less than 8 feet.' " *Id.* Mr. Frank claimed to have been mutilated physically and psychologically, and that the F.B.I. was attacking him with actual aircraft, resulting in plaintiff having to dodge helicopters. *Id.* The court found that Mr. Frank's claims were "fanciful" and "fantastic." In addition, the court found that the problem with Mr. Frank's complaint was "substantive," and that "better pleading will not cure it." *Id.* at *2. The court dismissed the action with prejudice. *Id.*

 *4 In this case, although the causes of action seem coherent, the factual bases for these three causes of action are not grounded in reality. The plaintiff's claim that the Secret Service is attempting to use telepathic methods from New York City to attempt to obtain "religious" premonitions from the plaintiff in a further attempt to make him a "prophet" for the government is clearly frivolous and fanciful and should be dismissed with prejudice, even if plaintiff paid the filing fee.

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). If plaintiff paid the filing fee, the court would still recommend dismissal of the complaint in its current form. Based on the basis of plaintiff's claims, this court does not find that there is any way that plaintiff could amend his allegations to cure the defects in his complaint. There does not appear to be any amended pleading that would allow an individual to sue the Secret Service for engaging in telepathic harassment. Thus, this court recommends a dismissal with prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's motion to proceed IFP (Dkt. No. 4) be **DENIED** based on plaintiff's accumulation of three strikes under 28 U.S.C. § 1915(g), and it is

**RECOMMENDED**, that notwithstanding the section 1915(g) provision allowing plaintiff to proceed if he pays the

**Harvey v. Kirk, Not Reported in Fed. Supp. (2019)**

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 48 of 166

filing fee, the complaint be **DISMISSED AS FRIVOLOUS WITH PREJUDICE**, and it is

**ORDERED**, that plaintiff's request to amend his claim for relief (Dkt. No. 8) is **DENIED AS MOOT.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5150035

## Footnotes

1     The court notes that the statute of limitations for an action under *Bivens v. Six Unknown Named Federal Narcotics Agents*, 403 U.S. 388 (1971) is three years. *See Chin v. Bowen*, 833 F.2d 21, 23-24 (2d Cir. 1987). A claim accrues when the plaintiff either knows of the claim or has enough information that a reasonable person would investigate and discover the existence of the claim. *Gonzalez v. Hasty*, 802 F.3d 212, 220-21 (2d Cir. 2005). There is likely a statute of limitations issue in this case, but I will not address it because the complaint is frivolous regardless of the date that plaintiff's alleged claims accrued.

**End of Document**                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Harvey v. Kirk, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 49 of 166

2019 WL 3491264
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Gregory HARVEY, Plaintiff,

v.

Timothy KIRK, Secret Service Agent; Justin
Majorawski, Secret Service Agent; Albert
Monaco, Secret Service Agent; Melanie McCall,
Secret Service Affiliate; Mark Greenburg; Tim
Witherspoon; Frank Hanfield, Defendants.

6:19-CV-411 (MAD/ATB)
|
Signed 08/01/2019

**Attorneys and Law Firms**

GREGORY HARVEY, 07-A-3479, Mid-State Correctional
Facility, P.O. Box 2500, Marcy, New York 13403, Plaintiff,
pro se.

### MEMORANDUM-DECISION AND ORDER

Mae A. D'Agostino, U.S. District Judge:

### I. INTRODUCTION

**\*1** Plaintiff *pro se* Gregory Harvey, an inmate in the
custody of the New York State Department of Corrections and
Community Supervision ("DOCCS"), commenced this action
on April 5, 2019. *See* Dkt. No. 1. Plaintiff alleges that he has
been mentally harassed by Defendants by means of telepathic
communication. *See* Dkt. No. 1 at 5. On the same date, this
Court ordered administrative closure of the action due to
Plaintiff's failure to submit a completed *in forma pauperis*
("IFP") application. *See* Dkt. No. 4. The Court afforded
Plaintiff thirty days to submit a completed IFP application.
*See id.* On April 17, 2019, Plaintiff filed a completed IFP
application and the case was reopened. *See* Dkt. Nos. 5, 6.
On May 9, 2019, Magistrate Judge Baxter issued a Report-
Recommendation and Order, recommending that, (1) the
Court deny Plaintiff's IFP application based on Plaintiff's
accumulation of "three strikes" under 28 U.S.C. § 1915(g);
(2) dismiss the complaint with prejudice as frivolous; and (3)
deny Plaintiff's request to amend his claim for relief as moot.
*See* Dkt. No. 9 at 9. Plaintiff has not filed any objections.

### II. BACKGROUND

Plaintiff is an inmate in the custody of DOCCS. *See* Dkt. No.
5. Plaintiff asserts three claims involving alleged violations
of his First, Fourteenth, and Eighth Amendment rights by
Defendants. *See* Dkt. No. 1 at 6. Specifically, Plaintiff alleges
Defendants have conducted years of mental surveillance and
harassment against Plaintiff by telepathic means in an attempt
to conscript him into the "United States Prophet Program."
*See id.* at 5. According to Plaintiff, this program is a classified
program in which the government spies on citizens "in
hopes of getting future predictions and premonitions." *See
id.* Magistrate Judge Baxter reviewed Plaintiff's motions for
leave to proceed *in forma pauperis. See* Dkt. No. 9. Currently
before the Court is Magistrate Judge Baxter's May 9, 2019
Order and Report-Recommendation.

### III. DISCUSSION

**A. Standard**

Section 1915(e)(2)(B) directs that, when a plaintiff seeks to
proceed in forma pauperis, "(2) ... the court shall dismiss
the case at any time if the court determines that − ... (B)
the action ... (i) is frivolous or malicious; (ii) fails to state a
claim on which relief may be granted; or (iii) seeks monetary
relief against a defendant who is immune from such relief."
28 U.S.C. § 1915(e)(2)(B). "[I]n a *pro se* case, the court
must view the submissions by a more lenient standard than
that accorded to 'formal pleadings drafted by lawyers.' "
*Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y.
2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).
The Second Circuit has opined that the court is obligated to
"make reasonable allowances to protect *pro se* litigants" from
inadvertently forfeiting legal rights merely because they lack
a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90,
95 (2d Cir. 1983)).

When a party files specific objections to a magistrate
judge's report-recommendation, the district court makes a
"*de novo* determination of those portions of the report or
specified proposed findings or recommendations to which
objection is made." 28 U.S.C. § 636(b)(1). However, when
a party declines to file objections or files "[g]eneral or
conclusory objections or objections which merely recite
the same arguments [presented] to the magistrate judge,"
the court reviews those recommendations for clear error.

**Harvey v. Kirk, Not Reported in Fed. Supp. (2019)**

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 50 of 166

*O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1).

### B. Three Strikes Rule

**\*2** 28 U.S.C. § 1915(g) bars prisoners from proceeding *in forma pauperis* ("IFP") after three or more previous claims have been dismissed as frivolous, malicious, or for failing to state a claim. *See* 28 U.S.C. § 1915(g) (2011). Section 1915(g) applies to "any person incarcerated or detained in any facility who is ... convicted of ... violations of criminal law." *See* 28 U.S.C. § 1915(h). Frivolous claims "lack[ ] an arguable basis either in law or in fact." *Tafari v. Hues*, 473 F.3d 440, 442 (2d Cir. 2007) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).

The "three-strike" provision contains a narrow exception which permits suits, notwithstanding prior dismissals, when the prisoner is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g); *see also Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002) (applying the imminent danger exception "[w]hen a threat or prison condition is real and proximate, and when the potential consequence is 'serious physical injury' "). To determine whether the imminent danger exception applies, the court must evaluate whether the claimed danger was still in existence when a complaint was filed and whether such danger was sufficiently serious to require protection. *See Chavis v. Chappius*, 618 F.3d 162, 169-70 (2d Cir. 2010) (other citations omitted). Therefore, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or non-specific allegations of imminent danger are not sufficient to bypass the three-strike bar. *Id.* at 170 (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).

In the present matter, Magistrate Judge Baxter noted Plaintiff's lengthy litigation history in this district and that he has previously been denied IFP status pursuant to 28 U.S.C. § 1915(g). *See* Dkt. No. 9 at 2-3 (citing *Harvey v. Law*, No. 9:10-CV-1468 (N.D.N.Y. Mar. 3, 2011)) (finding that at least three of the nine actions filed by the plaintiff in the Northern District of New York during his period of confinement were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted) (citations omitted).

An additional review of the Plaintiff's litigation history indicates that the Plaintiff has filed ten actions in this court since 2009, including the instant case. [1] Having reviewed the disposition of each action, it appears that Plaintiff has brought at least three actions in the Northern District which were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. *See Harvey v. Sawyer*, No. 9:09-CV-598, Dkt. No. 26 (N.D.N.Y. Aug. 20, 2010); *Harvey v. Luther et al.*, No. 9:09-CV-599, Dkt. No. 5 (N.D.N.Y. June 8, 2009); *Harvey v. City of Utica Police Officers*, No. 9:09-CV-644, Dkt. No. 4 (N.D.N.Y. June 15, 2009). Accordingly, the Court finds that Plaintiff has previously acquired three "strikes" for the purposes of 28 U.S.C. § 1915(g).

**\*3** Pursuant to 28 U.S.C. § 1915(g), Plaintiff, having acquired three strikes may only proceed *in forma pauperis* if he was under imminent danger of serious physical injury at the time of the filing of the complaint. *See* 28 U.S.C. § 1915(g); *see also Malik v. McGinnis*, 292 F.3d 559, 562 (2d Cir. 2002). Plaintiff has alleged only that Defendants "used telepaths to mentally harrass [sic] [Plaintiff]" and tried to force him to become a "prophet for the U.S. Government." *See* Dkt. No. 1 at 5. Plaintiff has not alleged sufficient facts to demonstrate that at the time of the filing of this action he was in imminent danger of serious physical harm. Accordingly, Plaintiff has not lodged sufficient allegations to bypass the three strikes rule and his application to proceed *in forma pauperis* must be denied.

### C. Dismissal on the merits

Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke*, 490 U.S. at 325. "[I]n a pro se case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan*, 289 F. Supp. 2d at 295 (N.D.N.Y. 2003) (quoting *Haines*, 404 U.S. at 520 (1972)). The Second Circuit has held that the court is obligated to "make reasonable allowances to protect pro se litigants" from inadvertently forfeiting legal rights merely

Harvey v. Kirk, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 51 of 166

because they lack a legal education. *See id.* (quoting *Traguth, 710 F.2d at 95 (2d Cir. 1983)*).

Similarly, 28 U.S.C. § 1915A(b) directs a court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). "A district court has the inherent power to dismiss a case, *sua sponte*, if it determines that the action is frivolous ... regardless of whether a plaintiff has paid the filing fee." *Frank v. U.S. F.B.I*, No. 13-CV-848, 2013 WL 839862, *1 (E.D.N.Y. Mar. 5, 2013) (citing *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363-364 (2d Cir. 2000)).

When reviewing a complaint under section 1915(e), the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. Proc. 8(a)(2). The purpose of Rule 8 " 'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense.' " *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977))) (other citation omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *See id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. Proc. 8(a)(2)). A complaint filed by a *pro se* litigant should not be dismissed without granting leave at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991).

**\*4** Here, Plaintiff alleges three causes of action. *See* Dkt. No. 1 at 6. First, Plaintiff alleges violations of his First Amendment right to freely exercise his religion. *See id.* Second, Plaintiff alleges violations of his Fourteenth Amendment right to Equal Protection under the law, claiming discrimination by the government on the basis of his expression of his religious beliefs. *See id.* Third, Plaintiff alleges violations of his Eighth Amendment rights, claiming that the Secret Service has used telepathic individuals to mentally harass and spy upon him. *See id.* The basis for all of these claims is that Defendants used individuals with telepathic abilities to mentally survey and harass Plaintiff for years in the hopes of involuntarily enlisting him into a top-secret government program intended to obtain premonitions from religious individuals as a means of predicting the future. *See* Dkt. No. 1 at 5. Such claims are not based in reality, and even construed in the light most favorable to Plaintiff, would not entitle Plaintiff to relief. The factual basis underlying Plaintiff's claims lack any basis fact and, thus, is frivolous. *See Neitzke*, 490 U.S. 319 at 325.

Magistrate Judge Baxter correctly concluded that even if Plaintiff were able to pay the filing fee, the instant action should be dismissed. As Judge Baxter described, courts have previously dismissed with prejudice cases alleging similar outlandish surveillance methods. *See Frank*, 2013 WL 839862, at *1 (finding allegations of helicopter attacks and government surveillance to be "fanciful" and "fantastic" and unable to be cured with an amended pleading). Similarly here, even if Plaintiff was permitted to amend his complaint, the underlying conduct alleged still could not form the basis of a cause of action. Accordingly, the court dismisses the case with prejudice as frivolous.

## IV. CONCLUSION

After careful consideration of Magistrate Judge Baxter's Order and Report-Recommendation, the applicable law, and for the reasons stated herein, the Court hereby

Harvey v. Kirk, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 52 of 166

**ORDERS** that Magistrate Judge Baxter's May 9, 2019 Order and Report-Recommendation is **ADOPTED** in its entirety; and the Court further

**ORDERS** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 5) is **DENIED** based on Plaintiff's accumulation of three strikes under 28 U.S.C § 1915(g); and the Court further

**ORDERS** that, notwithstanding the section 1915(g) provision allowing Plaintiff to proceed if he pays the filing fee, the complaint is **DISMISSED WITH PREJUDICE** as frivolous; and the Court further

**ORDERS** that Plaintiff's request to amend his claim for relief (Dkt. No. 8) is **DENIED** as moot; and the Court further

**ORDERS** that the Clerk of the Court shall serve the parties with a copy of this Memorandum-Decision and Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 3491264

---

### Footnotes

1    The previous actions include: *Harvey v. Jalonak*, No. 6:14-CV-1046 (N.D.N.Y. Aug. 25, 2014); *Harvey v. Farber et al.*, No. 9:09-CV-152 (N.D.N.Y. Feb. 9, 2009); *Harvey v. Harder*, No. 9:09-CV-154 (N.D.N.Y. Feb. 9, 2009); *Harvey v. Jabout, et al.*, No. 9:09-CV-517 (N.D.N.Y. May, 4, 2009); *Harvey v. Grow et al.*, No. 9:09-CV-518 (N.D.N.Y. May, 4, 2009); *Harvey v. Sawyer, et al.*, No. 9:09-CV-598 (N.D.N.Y. May, 22, 2009); *Harvey v. Luther et al.*, No. 9:09-CV-599 (N.D.N.Y. May, 22, 2009); *Harvey v. City of Utica Police Officers et al.*, No. 9:09-CV-644 (N.D.N.Y. June, 4, 2009); *Harvey v. Law*, No. 9:10-CV-1468 (N.D.N.Y. Dec. 7, 2010)

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Ciltas v. Wang, Not Reported in Fed. Supp. (2020)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 53 of 166

2020 WL 6146865
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, E.D. New York.

Fidel CILTAS, Plaintiff,

v.

Mark WANG; Christian Hayes; David Gust; Tim
Cook; John Doe American Express Executive;
John Doe Blackstone Executive; John Doe
Wall Street Executive; Umit Ciltas; Candas
Guler; and Cuneyt Ozdemir, Defendants.

20-cv-2520 (KAM)
|
Signed 10/20/2020

**Attorneys and Law Firms**

Fidel Ciltas, Sunnyside, NY, pro se.

### MEMORANDUM & ORDER

MATSUMOTO, United States District Judge:

 **\*1** Plaintiff Fidel Ciltas ("plaintiff"), proceeding *pro se,*
commenced the instant action on June 3, 2020. (ECF No. 1,
Complaint ("Compl.").) Plaintiff has paid the statutory filing
fee to commence this action. For the reasons discussed below,
the complaint is dismissed as frivolous.

### BACKGROUND

Plaintiff's statement of claim alleges the following:

> I have been living in an Attempted
> Murder settings in eight (8) years with
> the last five (5) years in Genocide.
> Defendants Mark Wang, Christian
> Hayes, David Gust who are Hilton
> Grand Vacations' Executives have
> terminated my position with false
> statement and then they've placed
> hidden cameras at my places, car,
> and hacked into my electronic devices

> since 2012 with defendants Umit
> Ciltas, Candas Guler and Cuneyt
> Ozdemir. Defendant Tim Cook along
> with other Wall Street Executives
> have threatened people and organized
> International Mafia so that people
> including my girlfriend and ex-
> girlfriend can not contact me....

(Compl. 11.)

In the complaint, plaintiff provides a seven-page timeline,
from 2008 through 2020, which plaintiff alleges reflects the
attempts by various companies and institutions to murder him.
By way of example, plaintiff alleges that in 2012, hidden
cameras were placed in his bathroom, bedroom, and car. (*Id.*
16.) He further asserts that his electronic devices, including
a laptop and smart phone, were hacked. (*Id.*) Plaintiff also
alleges that the media in Turkey was watching him through
hidden cameras and that AT&T and Time Warner Cable have
hacked his cable and internet services. (*Id.* 17.) In addition,
plaintiff claims that he has been "chased" by spies, the
New York City Fire Department, the New York City Police
Department, and ambulances. (*Id.* 21.) For relief, plaintiff
seeks his "freedom" and for "the court to hold Genocide and
Attempted Murder criminals accountable for their crimes and
sentence them." (*Id.* 12.)

### DISCUSSION

A federal court must "liberally construe[ ]" pleadings by
*pro se* parties, who are held to less stringent standards than
attorneys. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citation
omitted); *accord Ahlers v. Rabinowitz,* 684 F.3d 53, 60 (2d
Cir. 2012). Nevertheless, a district court may dismiss a *pro se*
action *sua sponte*—even if the plaintiff has paid the requisite
filing fee—if the action is frivolous. *Fitzgerald v. First East
Seventh Street Tenants Corp.,* 221 F.3d 362, 363-64 (2d Cir.
2000). An action is frivolous when "the factual contentions
are clearly baseless, such as when allegations are the product
of delusion or fantasy...." *Livingston v. Adirondack Beverage
Co.,* 141 F.3d 434, 437 (2d Cir. 1998) (internal quotations
and citations omitted). "[A] finding of factual frivolousness
is appropriate when the facts alleged rise to the level of
the irrational or the wholly incredible, whether or not there
are judicially noticeable facts available to contradict them."
*Denton v. Hernandez,* 504 U.S. 25, 33 (1992); *Francis v.*

Ciltas v. Wang, Not Reported in Fed. Supp. (2020)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 54 of 166

*Miraj*, No. 19-CV-753, 2019 WL 499772, at *2 (E.D.N.Y. Feb. 8, 2019) (dismissing *pro se* complaint where plaintiff's allegations are irrational and fail to provide defendants with notice of the claims against them); *Glass v. U.S. Presidents since 1960*, No. 17-CV-3141, 2017 WL 4621006, at *3 (E.D.N.Y. Oct. 12, 2017).

**\*2** Even when read with the "special solicitude" due *pro se* pleadings, plaintiff's complaint must be dismissed as frivolous. Plaintiff's allegations rise to the level of the irrational, and there is no legal theory on which he can rely in advancing them. *See Denton*, 504 U.S. at 33. Additionally, because the complaint is devoid of any basis in law or fact, defects that cannot be cured by amendment, plaintiff is denied leave to file an amended complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (noting that where the problem with a complaint is "substantive[,] better pleading will not cure it" and leave to amend should be denied); *see also Curmen v. U.S. Govt.*, No. 18-CV-1546, 2018 WL 2324060, at *3 (E.D.N.Y. May 22, 2018) (dismissing fee-paid frivolous compliant and denying leave to amend).

## CONCLUSION

For the reasons set forth above, the instant action is dismissed as frivolous. *Fitzgerald*, 221 F.3d at 362. The Clerk of Court is respectfully directed to enter judgment, to serve a copy of this order, the judgment, and an appeals packet on plaintiff at the address of record, note service on the docket, and to close the case. Although Plaintiff paid the filing fee to bring this action, the Court certifies pursuant to 28 U.S.C. § 1915 (a)(3) that any *in forma pauperis* appeal from this order would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 6146865

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1014204
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

David RAOUL, Plaintiff,
v.
CITY OF NEW YORK POLICE DEPARTMENT;
Federal Bureau of Investigation; Central
Intelligence Agency; State of New York;
and United States of America, Defendants.

No. 14–CV–1787 (RRM)(CLP).
|
Signed March 6, 2015.

### *MEMORANDUM & ORDER*

ROSLYNN R. MAUSKOPF, District Judge.

**\*1** Plaintiff David Raoul filed this *pro se* complaint on March 19, 2014. [1] On April 11, 2014, the State of New York filed a letter requesting that the Court *sua sponte* dismiss the complaint or, in the alternative, hold a pre-motion conference in anticipation of a contemplated motion to dismiss. (*See* Doc. No. 8.) The City of New York Police Department ("NYPD") also requested a pre-motion conference on April 14, 2014, seeking leave to file a motion to dismiss. (*See* Doc. No. 10.) Out of an abundance of caution, the Court directed Raoul to respond to the requests for dismissal. On April 18, 2014, Raoul filed a letter asserting that his claims were adequately pled and emphasizing that his complaint was not brought under the *in forma pauperis* statute. [2] (*See* Doc. No. 12.)

On May 24, 2014, the United States filed a letter requesting that the Court *sua sponte* dismiss the complaint or, in the alternative, grant it leave to move to dismiss the complaint. (*See* Doc. No. 17.) On June 6, 2014, the Court deemed that letter to be a motion to dismiss, ordered the letter to be served on Raoul, and directed Raoul to file any opposition thereto by July 27, 2014. [3] Raoul filed his opposition on July 16, 2014. (*See* Doc. No. 31.) The State and the NYPD also proceeded to file fully-briefed motions to dismiss on June 9, 2014, and July 21, 2014, respectively. [4] (*See* Doc. Nos. 19, 32.) Raoul opposed both of those motions as well. (*See* Doc. Nos. 18, 37.) For the reasons explained below, the complaint is dismissed. [5]

### BACKGROUND

At the outset, the Court acknowledges that *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Boykin v. KeyCorp,* 521 F.3d 202, 213–14 (2d Cir.2008), and reads Raoul's *pro se* complaint liberally, interpreting it to raise the strongest arguments that it suggests. *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Harris v. Mills,* 572 F.3d 66, 71–72 (2d Cir.2009). Moreover, at this stage of the litigation, the Court assumes the truth of all well-pleaded, nonconclusory factual allegations in the complaint. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Main St. Legal Servs., Inc. v. Nat'l Sec. Council,* 962 F.Supp.2d 472, 474 (E.D.N.Y.2013). But despite this special solicitude, Raoul is still required to plead sufficient facts to state a claim that is plausible on its face. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir.2006). "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Raoul's complaint alleges a wide-ranging conspiracy by the State of New York, the New York Police Department, the Federal Bureau of Investigation, the Central Intelligence Agency, and the United States, which began as early as 2004 and continues unabated to this day. (Compl.(Doc. No. 1) ¶ 1a–1d.) According to the complaint, defendants have engaged in a campaign to "covertly kill, and damage and destroy the plaintiff['s] quality of life" through myriad means, including "covertly and overtly harassing, sabotaging, torturing, damaging, and assaulting the plaintiff ... constantly 24 hours[,] 7 days a week without sign of stoppage." (*Id.* ¶ 1.) This conspiracy was allegedly perpetrated through "proxy personal [*sic* ] ... consisting of various groups of people and persons working in teams to conduct their assault on the plaintiff ... [to] give the illusion to the plaintiff that the assault is coming from some private, or third party civilian group." (*Id.* ¶ 1c.)

**\*2** Raoul also claims that "[a]nother main component of the defendants ['] assault was the use of devices, equipment, or technologies, that would produce and project

artificial phenomen[a]," which allegedly "beamed, focused or projected sound and voices on the plaintiff to harass, torture him"; "deprived plaintiff of sleep, privacy, and freedom of cognition"; and "literally hijacked every aspect of the plaintiff[']s life." (*Id.* ¶¶ 1e, 1h.) Raoul insists that "[t]his is a psychological warfare operation" that "is currently going on as you [the Court] read this." (*Id.* ¶ 1.)

## DISCUSSION

Defendants have moved to dismiss on numerous bases. As an initial matter, however, both the United States and the State of New York urge this Court to dismiss Raoul's complaint as frivolous. (*See* Doc. Nos. 8, 17.) A finding of frivolousness "is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *Mendlow v. To be Named After Discovery Unknown Gov't Agencies,* 152 F.3d 919 (2d Cir.1998). "[A] court may dismiss a claim as factually frivolous only if the facts alleged are 'clearly baseless,' " *Denton,* 504 U.S. at 32 (quoting *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)), a high bar satisfied only by claims that "are 'fanciful,' 'fantastic,' or 'delusional.' " *Gallop v. Cheney,* 642 F.3d 364, 368 (2d Cir.2011) (quoting *Denton,* 504 U.S. at 32–33). After carefully reviewing both the complaint and Raoul's responses to defendants' motions, the Court concludes that this action must be dismissed on this basis. [6]

### I. Facial Plausibility

Raoul's allegations are facially implausible and render this action factually frivolous. Even affording his *pro se* complaint the most liberal reading possible, the allegations therein can only be described as clearly baseless. Raoul's claims are based purely on wide-ranging, incoherent allegations of a massive conspiracy by numerous federal, state, and local government entities to persecute him through tactics ranging from aerial drone surveillance to messages beamed directly into his mind. These claims are "fanciful," "fantastic," and "delusional," *Gallop,* 642 F.3d at 368, and they do not state a plausible claim for relief. [7]

Nor does the fact that Raoul paid the filing fee in this case prevent dismissal. "[D]istrict courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee...." *Fitzgerald v. First E. Seventh St. Tenants Corp.,* 221 F.3d 362, 364 (2d Cir.2000); *see also Mallard v. United States Dist. Court,* 490 U.S. 296, 307–08, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989) ("Section 1915(d) ... authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision."); *Bliven v. Hunt,* 418 F.Supp.2d 135, 137 (E.D.N.Y.2005) (citing *Mallard* and *Fitzgerald* and concluding that "[t]he Court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee"). The Court therefore dismisses the complaint as to all defendants.

### II. Leave to Amend

**\*3** Generally, "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795–96 (2d Cir.1999) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)). However, "[t]he problem with [Raoul]'s causes of action is substantive ... [and] better pleading would not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000). In particular, even under the liberal standard afforded to *pro se* pleadings, Raoul's irrational allegations are facially implausible. Leave to amend is therefore denied as futile. *Id.; see also Utreras v. Chicago Title Ins. Co.,* No. 12–CV–04766 (RRM)(LB), 2013 WL 4700564 (E.D.N .Y. Sept. 1, 2013).

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss (Doc. Nos.17, 19, 32) are granted and the complaint is dismissed as to all defendants. The Clerk of Court is directed to enter Judgment accordingly, and to close this case.

The Clerk of Court is further directed to transmit a copy of this Memorandum and Order, together with the accompanying Judgment, to Raoul via U.S. mail and to note the mailing on the docket.

Although Raoul did not seek to proceed *in forma pauperis,* the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith, and *in forma pauperis* status is therefore denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1014204

## Footnotes

1    Raoul paid the requisite filing fee and does not seek *in forma pauperis status* under 28 U.S.C. § 1915.

2    This fact is relevant because, as the State and the NYPD point out, Chief Judge Loretta A. Preska dismissed
     a strikingly similar action filed *in forma pauperis* by Raoul in the United States District Court for the Southern
     District of New York pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). *See Raoul v. City of New York Police Dep't, et
     al.,* No. 14–CV–680 (LAP), Doc 5 (S.D.N.Y. Feb. 27, 2014).

3    The Court had originally directed Raoul to file his opposition on or before June 27, 2014. On June 23, 2014,
     however, the Court granted Raoul's request for an extension of time to respond, (Doc. No. 26), until July 27.

4    Although the State of New York had already filed a fully-briefed motion to dismiss on May 14, 2014, (*see*
     Doc. No. 13), counsel re-filed the motion on June 9, 2014, because he had failed to comply with this Court's
     Individual Rules.

5    The appearing defendants' motions are therefore either granted or rendered moot. It is unclear whether the
     remaining defendants named in this action, the Federal Bureau of Investigation and the Central Intelligence
     Agency, were properly served. (*See* Doc. Nos. 5, 7.) The United States maintains, however, that "[b]y
     operation of law, the United States should be substituted for [the] named defendants FBI and CIA." (Doc. No.
     17 at 1.) In any event, because the Court finds that Raoul has failed to state a plausible claim, the complaint
     is dismissed as to those defendants as well.

6    The Court notes that Chief Judge Preska reached the same conclusion in a case previously filed by Raoul.
     *See generally Raoul,* No. 14–CV–680 (LAP), Doc No. 5. Although Raoul somewhat amplified the claims in
     this complaint and paid the paid the filing fee rather than proceed *in forma pauperis,* the allegations here are
     substantially unaltered from those in the prior action. Raoul is thus cautioned that dismissal by a court in one
     district is not an invitation to refile the same action in another.

7    Because it concludes that the complaint is factually frivolous, the Court need not consider the State of New
     York's additional arguments that Raoul's claims are barred by sovereign immunity, *res judicata,* collateral
     estoppel, and the statute of limitations applicable to 42 U.S.C. § 1983. (*See generally* Doc. No. 22.) Nor must
     the Court address the NYPD's additional arguments that Raoul failed to name a suable entity, to comply with
     notice of claim procedures, or adequately to plead municipal liability. (*See generally* Doc. No. 35.)

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 2511154
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Brittany KILCHER, Plaintiff,

v.

NEW YORK STATE POLICE, Defendant.

1:19-CV-00157 (MAD/TWD)
|
Signed 06/18/2019

**Attorneys and Law Firms**

BRITTANY KILCHER, 1618 Columbia Turnpike, Castleton-on-Hudson, New York 12033, Plaintiff pro se.

### MEMORANDUM-DECISION AND ORDER

Mae A. D'Agostino, U.S. District Judge

### I. INTRODUCTION

**\*1** On February 7, 2019, *pro se* plaintiff Brittany Kilcher ("Plaintiff") commenced this action against Defendant New York State Police ("Defendant"), pursuant to 42 U.S.C. § 1983, alleging that Defendant violated Plaintiff's rights under the First, Fourth, and Fifth Amendments. *See* Dkt. No. 1 at 1-3. Plaintiff also filed a state law negligence claim. *See* Dkt. No. 1 at 3. In a February 19, 2019 Order and Report-Recommendation, Magistrate Judge Dancks reviewed the complaint and granted Plaintiff's application to proceed *in forma pauperis*. *See* Dkt. No. 5 at 1-2. Magistrate Judge Dancks found that Plaintiff's claims against the New York State Police are barred by the Eleventh Amendment, but recommended that the Court grant Plaintiff an additional thirty days in which to amend her complaint by naming an individual defendant or defendants who do not have Eleventh Amendment immunity. [1] *See* Dkt. No. 5 at 6-7. For the reasons that follow, the Court affirms Magistrate Judge Dancks' Order and Report-Recommendation in its entirety.

### II. BACKGROUND

Plaintiff alleges that on July 15, 2018, after a vehicle rear-ended the vehicle in which Plaintiff and her friends were traveling, the responding state trooper yelled profanities at Plaintiff and her friends and ordered the driver of Plaintiff's vehicle to exit the car. *See* Dkt. No. 1 at 2. Plaintiff began recording the incident, but the trooper told her to put her phone down and then allegedly assaulted her and placed her in handcuffs. *Id.* First, Plaintiff alleges that the trooper violated her Fourth Amendment rights by unlawfully imprisoning Plaintiff and by using excessive force. *Id.* at 3. Second, Plaintiff alleges that the trooper violated her Fifth Amendment right to due process of law by forcefully removing her from the car and handcuffing her. *Id.* Third, Plaintiff alleges that the trooper violated her First Amendment rights by telling her to put her phone down after she began recording the trooper. *Id.* Lastly, Plaintiff asserts a state law negligence claim for the trooper's failure to obtain the medical attention that Plaintiff requested at the accident scene. *Id.* According to Plaintiff, Defendant New York State Police has not arrested this trooper or otherwise held her accountable for this incident. *Id.* Plaintiff seeks both monetary damages and the trooper's arrest. *Id.* at 4.

### III. DISCUSSION

**A. Standard of Review**

Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, although the court must show liberality toward *pro se* litigants, *see Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis.* [3]

**\*2** When reviewing a complaint under section 1915(e), the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides a pleading setting forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Rule 8's purpose

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 59 of 166

Kilcher v. New York State Police, Not Reported in Fed. Supp. (2019)

" 'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense.' " *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)) (other quotation and citation omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). A complaint filed by a *pro se* litigant should not be dismissed without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991) (citation omitted).

If a litigant files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, if a litigant fails to file objections or files "[g]eneral or conclusory objections or objections which merely recite the same arguments [presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007) (citation omitted). After the appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1)(C).

**B. Analysis of the Order and Report-Recommendation**

Plaintiff's complaint names the New York State Police as the only defendant in this action. *See* Dkt. No. 1 at 1. Magistrate Judge Dancks correctly determined that Plaintiff's claims against the New York State Police are barred by both the Eleventh Amendment and the language of § 1983. *See Pierce v. New York State Police (Troop D Lowville)*, No. 7:05-CV-1477, 2011 WL 1315453, *13 (N.D.N.Y. Apr. 4, 2011) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66-71 (1989)). [4]

**\*3** The Eleventh Amendment to the United States Constitution bars federal courts from exercising subject matter jurisdiction over claims against a state or one of its agencies absent their consent to such a suit or an express statutory waiver of immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 90-100 (1984). Congress did not abrogate the Eleventh Amendment immunity granted to the states when it enacted 42 U.S.C. § 1983 because it is well-settled that states are not "persons" under section 1983. *See Quern v. Jordan*, 440 U.S. 332, 240-41 (1979); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted).

The Eleventh Amendment's immunity extends to the New York State Police as an agency of the State of New York. *See, e.g., Riley v. Cuomo*, No. 2:17-CV-01631, 2018 WL 1832929, *4 (E.D.N.Y. Apr. 16, 2018) (holding that the New York State Police, as a division in the executive department of the State, is immune from claims under § 1983); *Finkelman v. New York State Police*, No. 06 Civ. 8705, 2007 WL 4145456, *3 (S.D.N.Y. Nov. 15, 2007) (holding that the Eleventh Amendment barred the plaintiff's suit seeking monetary damages under § 1983 against New York State Police) (citing *Morrongiello v. Ashcroft*, No. 01 Civ. 2524, 2004 WL 112944, *2 (S.D.N.Y. Jan. 22, 2004)); *Estes-El*, 954 F. Supp. at 536 (same). Furthermore, the New York State Police is not a person subject to suit under § 1983. *See Lilly v. Cullen*, No. 15-CV-874A(F), 2017 WL 1273972, *3 (W.D.N.Y. Mar. 14, 2017) (citing *Will*, 491 U.S. at 65). For the foregoing reasons, Magistrate Judge Dancks correctly determined that the Court should dismiss Plaintiff's claims against the New York State Police for lack of subject matter jurisdiction under 28 U.S.C. § 1915(e)(B)(iii) and Rule 12(h)(3) of the Federal Rules of Civil Procedure. *See* Dkt. No. 5 at 6.

Finally, the Court finds that Magistrate Judge Dancks correctly determined that Plaintiff should be granted leave

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 60 of 166

Kilcher v. New York State Police, Not Reported in Fed. Supp. (2019)

to amend. In any such amended complaint, Plaintiff shall name as a defendant any individuals employed by the New York State Police whom she believes violated her various Constitutional rights, as set forth in more detail by Magistrate Judge Dancks.

### IV. CONCLUSION

After carefully considering Magistrate Judge Dancks' Order and Report-Recommendation and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Dancks' February 19, 2019 Order and Report-Recommendation is **ADOPTED**; and the Court further

**ORDERS** that Plaintiff shall file her amended complaint within **THIRTY (30) DAYS** of the date of this Order; [5] and the Court further

**ORDERS** that if the Plaintiff amends her complaint, the amended complaint shall be sent to Magistrate Judge Dancks for initial review; and the Court further

**ORDERS** that, if Plaintiff fails to file her amended complaint within thirty (30) days of the date of this Order, the Clerk of the Court shall enter judgment in Defendant's favor and close this case without further order from the Court; and the Court further

**\*4** **ORDERS** that the Clerk of the Court shall serve Plaintiff with a copy of this Memorandum-Decision and Order in accordance with the Local Rules.

### IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2511154

---

### Footnotes

1   A § 1983 claim for monetary damages brought against a state trooper in his or her individual capacity is not barred by the Eleventh Amendment. *See Estes-El v. Town of Indian Lake*, 954 F. Supp. 527, 537 (N.D.N.Y. 1997). Individual capacity suits seek to impose individual liability upon a government officer who has caused the deprivation of a federal right while acting under color of state law. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

2   To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

3   "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the court," *Nelson v. Spitzer*, No. 9:07-CV-1241, 2008 WL 268215, *1 n.3 (N.D.N.Y. Jan. 29, 2008) (citation omitted), as well as "to discourage the filing of [baseless lawsuits], and [the] waste of judicial ... resources[.]" *Neitzke*, 490 U.S. at 327.

4   The Eleventh Amendment also bars Plaintiff's state law negligence claim against the New York State Police. *See Pennhurst*, 465 U.S. at 120; *Winokur v. Office of Court Admin.*, 190 F. Supp. 2d 444, 450-51 (E.D.N.Y. 2002).

5   Any amended complaint must be a complete pleading that supercedes the original complaint in all respects and does not incorporate by reference any portion of the original complaint. Plaintiff must comply in all respects with Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure, which require, among other things, that the amended complaint contain a short and plain statement of each claim showing that Plaintiff is entitled

to relief and that she state her claims in numbered paragraphs, each limited as far as practical to a single set of circumstances.

---

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Overruling Risk - Negative Treatment

Overruling Risk    Darnell v. Pineiro,    2nd Cir.,    February 21, 2017

2011 WL 1315485

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

Michael D. PIERCE, Plaintiff,

v.

NEW YORK STATE POLICE (TROOP D

LOWVILLE), William C. Cross, Kurt W. Lavalley,

Todd A. Galarneau, Richard A. Knight, Lewis County

Sheriff L. Michael Tabolt, Rickey E. Craft, Defendants.

No. 7:05–CV–1477 (GHL).

|

April 4, 2011.

**Attorneys and Law Firms**

Goettel, Poplaski & Dunn PLLC, Jason F. Poplaski, Esq., of Counsel, Watertown, NY, for Plaintiff.

Smith, Sovik, Kendrick & Sugnet, P.C., Robert P. Cahalan, Esq., of Counsel, Syracuse, NY, for Defendants Lewis County Sheriff's Department, Tabolt, Galarneau, Knight, and LaValley.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, David B. Roberts, Esq., of Counsel, Albany, NY, for Defendants.

### *MEMORANDUM DECISION AND ORDER* [1]

GEORGE H. LOWE, United States Magistrate Judge.

**\*1** In this action brought pursuant to 42 U.S.C. § 1983, Plaintiff Michael Pierce contends that Lewis County and New York State officers wrongfully entered his home, beat him, arrested him, searched his bedroom, and denied him medical care. Currently pending before the Court are motions by Defendants Richard Knight, Todd Galarneau, Kurt LaValley, Michael Tabolt, and the Lewis County Sheriff's Department ("County Defendants") and Defendants William C. Cross and Ricky E. Craft ("State Defendants") for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. Nos. 131 and 132.) Plaintiff has opposed the motions.

(Dkt.Nos.136–139.) For the reasons that follow, Defendants' motions are granted in part and denied in part.

### I. FACTUAL HISTORY

On the evening of August 2, 2005, at about 9:45 p.m., Defendant Lewis County Sheriff's Deputy Todd A. Galarneau received a call from the father of a seventeen year old boy, reporting that the boy had been the victim of a sexual assault earlier that day. (Dkt. No. 131–2 ¶ 16.) Just after the telephone conversation, the boy and his parents came to the Lewis County Sheriff's Department to make a formal complaint. *Id.*

At the station, the boy provided a supporting deposition. *Id.* He stated that on August 2, 2005, he had been working for a contractor measuring and documenting insect infestation in a corn field. *Id.* ¶ 17. A man walked into the field to see what the boy was doing. *Id.* While they were alone in the field, the man asked the boy whether he wanted "to have some fun." *Id.* When the boy asked the man what he meant, the man stepped toward him and grabbed the crotch of the boy's jeans, pushing his hand against the boy's penis. *Id.* The man then tried to unbutton the top of the boy's jeans. *Id.* The boy jumped away, telling the man not to touch him and to stay away from him. *Id.* The man said "I just wanna see, seeing never hurt," and stepped toward the boy. *Id.* The boy turned and started running. *Id.* The man grabbed him by the back of his shirt, but lost his grip. *Id.* The boy ran to his car and drove away. *Id.*

The boy described the man as being 5′8″ tall, approximately 50 years old, with metal splints affixed to two of his fingers with tape. *Id.* ¶ 18. Defendant Galarneau knew that the boy's description fit Plaintiff, who was a registered level three sex offender who lived in the area of the corn field. *Id.* ¶ 19. Defendant Galarneau showed the boy an archival photograph of Plaintiff. *Id.* ¶ 20. The boy recognized Plaintiff as the man who had assaulted earlier in the day. *Id.*

Defendant Galarneau notified Defendant Sergeant Richard A. Knight of the complaint and investigation. *Id.* ¶ 21. Defendant Knight ran a criminal history report on Plaintiff. *Id.* The criminal history report confirmed that Plaintiff was a registered sex offender who had been arrested on two prior violent sexual felony charges. *Id.* ¶ 22. The criminal history report also indicated that Plaintiff had a non-sexual felony arrest history for burglary and a history of resisting arrest, intentionally damaging property, and aggravated harassment. *Id.* ¶ 23. He had served more than ten years in prison. [2] *Id.*

**\*2** Defendants Galarneau and Knight "determined that they would attempt to interview [Plaintiff] and ascertain if he was wearing finger splints" as the boy had described. (Dkt. No. 131–2 ¶ 24.) Further, because Plaintiff had a "violent criminal history, [Defendant] Deputy LaValley was called back in and the New York State Police was contacted for back-up if necessary." *Id.* ¶ 25.

Plaintiff alleges that Defendants arrived at his house at 12:30 a .m. (Dkt. No. 104 at 15.) Defendants do not state what time it was. Therefore, it is undisputed that the following events occurred after midnight.

The parties' accounts of what happened next vary widely. Defendants contend that upon arrival at Plaintiff's house, Defendants Knight and Galarneau went to the side door and knocked. (Dkt. No. 131–2 ¶ 26.) Defendants Craft, Cross, and LaValley remained outside. *Id.* ¶ 27. When Plaintiff's mother answered the door, Defendant Knight "asked her if we could come in and speak to her son .... The plaintiff's mother told us to go ahead and she let us into the house .... She yelled up to her son, but he did not answer. She then directed us up the stairs and told us that his room was to the left and then all the way to the front of the house." (Knight Decl., Dkt. No. 131–5 ¶¶ 31–34.) Plaintiff's mother "stated that she was in poor health and could not climb the stairs herself to get him." (Galarneau Decl., Dkt. No. 131–4 ¶ 28.)

Plaintiff contends, citing only his verified complaint, that Defendants Galarneau, Knight, Craft, Cross, and LaValley all "barged into" his house at the same time and "bullied their way past [P]laintiff's elderly mother." (Dkt. No. 138 ¶¶ 26–28, 30 .)

Defendants contend that they entered Plaintiff's room, saw that he had splints on his fingers, and began to question Plaintiff about the boy. (Dkt. No. 131–2 ¶¶ 31–33.) Plaintiff became agitated, raised his voice, and did not comply when he was instructed to turn around and put his hands behind his back. *Id.* ¶¶ 34–36. Defendants contend that Plaintiff "resisted arrest so pepper spray was used." *Id.* ¶ 36. Defendant LaValley heard raised voices through the open bedroom window and heard that pepper spray was going to be used, so he and Defendants Cross and Craft "entered the house to render assistance." *Id.* ¶ 37. Defendants contend that "[w]hen LaValley, Cross, and Craft arrived at [Plaintiff]'s bedroom, pepper spray had been applied, and [Plaintiff] was on his feet, in the grasp of Deputy Galarneau, resisting his effort to pull his hands behind his back and place them in cuffs. During

the struggle to put handcuffs on [Plaintiff], Deputy Galarneau and Trooper Cross fell to the floor on top of him." *Id.* ¶ 38. Defendant LaValley then "assisted by helping Trooper Cross handcuff [P]laintiff." *Id.* ¶ 39.

Plaintiff denies that he resisted Defendants. (Dkt. No. 138 ¶¶ 33–34.) Plaintiff declares that when Defendant LaValley entered the bedroom, he grabbed both of Plaintiff's arms "and restrained them behind his back, causing great pain." (Dkt. No. 137 ¶ 8.) While Defendant LaValley restrained Plaintiff, Defendant Knight "stood in front of him, held a flashlight directly into his face, and questioned him. During the questioning, Knight called [Plaintiff] a liar, ... closed his fist, and punched [Plaintiff] in the abdomen." *Id.* ¶¶ 9–10.

**\*3** Defendant Galarneau began to question Plaintiff. *Id.* ¶ 13. Plaintiff responded by asking Defendants if they had a warrant and telling them they should leave if they did not. *Id.* ¶ 14. Defendant Knight then punched Plaintiff again in the abdomen with a closed fist. *Id.* ¶ 15. Defendant Galarneau said "We do not need a fucking warrant," and punched Plaintiff in the ribs. *Id.* ¶ 17. Plaintiff could hear and feel his ribs break. *Id.* ¶ 18.

During these events, Defendant Cross "stood by but did not intervene, did not restrain his fellow officers, or assist" Plaintiff. *Id.* ¶ 21. Although Plaintiff was not resisting, Defendant Cross said that he had "better quit resisting us and tell us what we want to know or I will teach you a lesson about resisting us." *Id.* ¶ 19. Defendant Craft "removed his can of pepper spray and sprayed [Plaintiff] while he held the can directly upon his face." *Id.* ¶ 22. [3] Observing this, Defendant Cross said "That's not enough, do it again." *Id.* ¶ 23. Defendant Craft "again held his pepper spray against [Plaintiff]'s face" and discharged it. *Id.* ¶ 24. Defendant Cross told Defendant Craft to do it a third time, and Defendant Craft did. *Id.* ¶¶ 25–26. Defendant Craft then punched Plaintiff with a closed fist in the area of his left kidney. *Id.* ¶ 27. Defendant LaValley, who still had Plaintiff restrained, slammed Plaintiff's head into his dresser. *Id.* ¶ 29. Defendant Knight drove his elbow into Plaintiff's back, driving Plaintiff to the floor. *Id.* ¶ 30. He then kicked Plaintiff in the buttocks, picked him up off the floor, grabbed his hands behind his back, and handcuffed him so hard that the cuffs cut off circulation to Plaintiff's left wrist. *Id.* ¶¶ 31–34.

Plaintiff declares that Defendants LaValley, Galarneau, Cross, and Craft searched his bedroom. (Dkt. No. 137 ¶¶ 35–38.) Defendants contend that they did so after "Plaintiff and his

mother consented verbally to the search ..." (Dkt. No. 131–2 ¶ 40.)

Neither Defendants' statement of material facts nor the evidence filed supporting the statement includes any facts about what happened after the initial encounter between Plaintiff and the officers in Plaintiff's bedroom. (Dkt. No. 131–2.) Therefore, Plaintiff's version of events is undisputed. Plaintiff declares that Defendant Knight forcibly escorted him out of the house and into the rear passenger seat of the Sheriff's marked vehicle. (Dkt. No. 137 ¶ 39.) Plaintiff told Defendant Knight that his face was burning because of the pepper spray. *Id.* ¶ 41. Defendant Knight told Plaintiff that he would "put his face through that glass" if Plaintiff touched the glass divider between the front and rear seats. *Id.* ¶ 42. When Plaintiff told Defendant Knight that his handcuffs were too tight, Defendant Knight shook them violently and tightened them. *Id.* ¶¶ 43–44. When Plaintiff told Defendant Knight that he could not breathe, Defendant Knight told him to "tough it out." *Id.* ¶ 46.

**\*4** Plaintiff was transported to the Lewis County Sheriff's Department. (Dkt. No. 137 ¶ 47.) He sat on a wooden bench in severe pain and had difficulty breathing. *Id.* ¶ 48. Defendant Galarneau "continually harassed and threatened" Plaintiff, "but offered no assistance with respect to his physical condition." *Id.* ¶ 49. When Plaintiff asked to see a doctor, Defendant Knight said "We are not going to spend any money on shit like you." *Id.* ¶¶ 51–52. Defendant Galarneau said "that another inmate would be able to tend to him medically instead of a doctor or physician." *Id.* ¶ 53.

An hour and a half later, Plaintiff was transported to court for his arraignment. (Dkt. No. 137 ¶ 54.) Plaintiff told the judge what had happened. *Id.* ¶ 55. Defendant LaValley told the judge that Plaintiff "was not going to a hospital, he was going to jail." *Id.* ¶ 56. Instead, the judge "called for an ambulance to provide medical care to" Plaintiff. *Id.* ¶ 57. Upon arriving, the ambulance provided Plaintiff with oxygen and transported Plaintiff to Lewis County General Hospital. *Id.* ¶¶ 58–59. At the hospital, a nurse washed the pepper spray residue off of Plaintiff's face. *Id.* ¶ 60. Plaintiff was diagnosed with broken ribs, a bruised and bleeding left lung, a ruptured spleen, and damage to his kidney and his liver. *Id.* ¶ 61. Plaintiff was taken immediately to the emergency room to address the spleen injury. *Id.* ¶ 62. Plaintiff remained in the hospital for eight days, six of which were spent in the intensive care unit. *Id.* ¶¶ 63–64.

On February 3, 2006, Plaintiff pleaded guilty to one count of attempted sexual abuse in the first degree, arising from an encounter with a 17–year–old boy on August 2, 2005. (Dkt. No. 131–3 at 10.) The plea included a waiver of appeal.[4] *Id.* at 9.

## II. PROCEDURAL SUMMARY

Plaintiff, proceeding *pro se,* filed the original complaint in this action on November 28, 2005. (Dkt. No. 1.) He filed the operative complaint on December 31, 2008. (Dkt. No. 104.)

The operative complaint is a notarized twenty-nine page handwritten document. (Dkt. No. 104.) It contains a jurisdictional statement, a list of parties, an eleven-page statement of facts, twelve causes of action, and a prayer for relief. *Id.* Plaintiff claims that Defendants committed "hate crime assault" and violated the Fourth Amendment, the Eighth Amendment, the "Fourteenth Amendment Right [to] equal protection of the laws." *Id.* at 15–22.

On December 29, 2009, Jason F. Poplaski, Esq., was appointed as counsel for Plaintiff "for the purposes of trial only." (Dkt. No. 119.) Mr. Poplaski filed a Notice of Appearance on January 6, 2010. (Dkt. No. 120.) On October 20, 2010, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Dkt. No. 127.) Trial is scheduled for April 18, 2011. (Feb. 1, 2011, Text Order.)

## III. APPLICABLE LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

**\*5** Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006). The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a dispute

regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material [5] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino,* 542 F.3d 290, 309 (2d Cir.2008).

### B. Legal Standard Governing Motions to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compaigne Gen. Transatlantique,* 405 F.2d 270, 273 (2d Cir.1968) (citations omitted); *accord, Katz v. Molic,* 128 F.R.D. 35, 37–38 (S.D.N.Y.1989) ("This Court finds that ... a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

**\*6** "In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949.

## IV. ANALYSIS

### A. Eighth Amendment Claims

Plaintiff claims that Defendants violated his Eighth Amendment rights. (Dkt. No. 104 at 16–20.) Defendants argue that the complaint fails to state an Eighth Amendment claim. (Dkt. No. 131–3 at 5–6; Dkt. No. 132–1 at 20.)

Plaintiff's opposition to the motions for summary judgment does not assert any arguments regarding the Eighth Amendment. (Dkt. No. 136.) A party's failure to oppose a portion of a motion requesting dismissal constitutes consent to the unopposed argument. *Burns v. Trombly,* 624 F.Supp.2d 185, 197 (N.D.N.Y.2008). In such circumstances, the moving party's burden is "modest" and the party will prevail so long as the argument is "facially meritorious." *Id.* at 197–98.

Defendants have met their burden. The Eighth Amendment only applies to convicted prisoners. *Graham v. Connor,* 490 U.S. 386, 392 n. 6, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Plaintiff was not a convicted prisoner at the time of the incident giving rise to this lawsuit. Therefore, I grant Defendants' motions for summary judgment and dismiss Plaintiff's Eighth Amendment claims.

### B. Equal Protection Claims

Plaintiff claims that Defendants violated his rights under the Equal Protection Clause. (Dkt. No. 104 at 15–22.) Defendants argue that the complaint fails to state an equal protection claim. (Dkt. No. 131–3 at 8; Dkt. No. 132–1 at 20–21.) Plaintiff's opposition to the motions for summary judgment does not assert any arguments regarding the Equal Protection Clause. (Dkt. No. 136.)

Defendants have met their burden of showing that their unopposed argument is facially meritorious. The Equal Protection Clause provides that "no State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). The Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' " Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir.2005) (emphasis omitted) (quoting LeClair v. Saunders, 627 F.2d 606, 609–10 (2d Cir.1980)). Governmental action may also violate the Equal Protection Clause where the defendants intentionally treat the plaintiff "differently from others with no rational basis for the difference in treatment." Id. (citing Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)). Thus, a plaintiff asserting an equal protection claim must allege facts plausibly suggesting that (1) he was treated differently from similarly situated individuals; and (2) the defendants treated him differently due to his membership in a suspect class, inhibited his exercise of a fundamental right, acted out of malice, or acted irrationally and arbitrarily.

**\*7** Here, Plaintiff does not assert that he is a member of a suspect class. Nor does he assert that Defendants inhibited or punished his exercise of a fundamental right.[6] Plaintiff's equal protection claim is thus properly classified as a "class-of-one" claim, alleging that Defendants acted either out of malice or irrationally and arbitrarily.

It is extremely difficult for class-of-one plaintiffs to allege facts plausibly suggesting that they were treated differently from similarly situated individuals. "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir.2006.)

Here, Plaintiff has not asserted that he was treated differently from any similarly situated individual. (Dkt. No. 104.) He has not even alleged cursorily that other individuals were treated differently than he was, much less shown an "extremely

high degree of similarity" between himself and some other person. Therefore, I grant Defendants' motions for summary judgment and dismiss Plaintiff's equal protection claim.

### C. "Hate Crime" Claims

Plaintiff alleges that Defendants committed "hate crime assaults" against him. (Dkt. No. 104 at 16–18, 20.) Defendants argue that the complaint fails to state a hate crime claim. (Dkt. No. 131–3 at 8 n.4; Dkt. No. 132–1 at 20.) Plaintiff's opposition to the motions for summary judgment does not assert any arguments regarding the hate crime claims. (Dkt. No. 136.)

Defendants have met their burden of showing that their unopposed argument is facially meritorious. New York's hate crime law, Penal Law § 485.05, is a criminal statute that prohibits the commission of offenses based on "a belief or perception regarding the race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation of a person ...." Here, the complaint does not allege that Plaintiff is a member of any protected group or that Defendants believed he was. (Dkt. No. 104.) Moreover, even if the complaint did include such an allegation, violations of New York's hate crime law do not give rise to constitutional claims that are cognizable under § 1983. Jones v. Harris, 665 F.Supp.2d 384, 404 (S.D.N.Y.2009).

Further, although the Second Circuit has not yet addressed the issue, district courts have held that the federal criminal hate crime statute, 18 U.S.C. § 249(a), does not create a private right of action. Wolfe v. Beard, No. 10–2566, 2011 U.S. Dist. LEXIS 15339, at \*10, 2011 WL 601632, at \*3 (E.D.Pa. Feb.15, 2011); Lorenz v. Managing Director, St. Luke's Hospital, No. 09 Civ. 8898(DAB) (JCF), 2010 U.S. Dist. LEXIS 127746, at \*20–21, 2010 WL 4922267, at \*8 (S.D.N.Y. Nov. 5, 2010); Lee v. Lewis, No. 2:10–CV–55–F, 2010 U.S. Dist. LEXIS 129816, at \*5–6, 2010 WL 5125327, at \*2 (E.D.N.C. Oct. 28, 2010). In the absence of any briefing from Plaintiff on this issue, I grant Defendants' motions for summary judgment and dismiss Plaintiff's hate crime claims.

### D. Unreasonable Entry Claim

**\*8** Plaintiff alleges that Defendants violated his Fourth Amendment rights when they entered his home after midnight without a warrant. (Dkt. No. 104 at 14–15.) Defendants move for summary judgment of this claim, arguing that the undisputed facts show that Plaintiff's mother consented to

Defendants' entry. (Dkt. No. 131–3 at 19.) Defendants are correct.

"The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Georgia v. Randolph,* 547 U.S. 103, 106, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006).

Here, as discussed above, the undisputed facts show that Plaintiff's mother consented to Defendants entering the home. Although Plaintiff asserts that Defendants barged into the house and bullied his mother, he has not presented any admissible evidence supporting that assertion. Plaintiff relies entirely on his verified complaint. (Dkt. No. 138 ¶ 26.) A verified pleading "has the effect of an affidavit and may be relied on to oppose summary judgment," but only where "it makes allegations on the basis of the plaintiff's personal knowledge, and not merely on information and belief ...." *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir.2004); *Spence v. Maryland Cas. Co.,* 803 F.Supp. 649, 664 (W.D.N.Y.1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd,* 995 F.2d 1147 (2d Cir.1993). Here, Plaintiff admits that he was upstairs when Defendants entered the home. (Dkt. No. 138 ¶ 31.) He does not set forth any basis of personal knowledge for his assertion that Defendants entered without consent. Plaintiff has not provided an affidavit from his mother [7], the only person other than Defendants with personal knowledge. Therefore, the only admissible facts before the Court are that Plaintiff's mother let the officers into the house and directed them to Plaintiff's room.

Plaintiff argues that the "allegations relating to the entry are absolutely disputed. [Plaintiff] contends the police entry into his home was not consensual. He [went] so far as to request a warrant and ask the police to leave." (Dkt. No. 136 at 2.) Although he does not cite any authority, Plaintiff may be relying on *Georgia v. Randolph.* In that case, the Supreme Court held that police may not enter a home on a "consent" theory when one co-tenant consents and another co-tenant simultaneously objects. *Georgia,* 547 U.S. at 121. However, the Court stated that its holding was quite narrow and acknowledged that "we are drawing a fine line; if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector,

nearby but not invited to take part in the colloquy, loses out." *Id.* The fact that Plaintiff asked Defendants to leave when they entered his bedroom without a warrant is, thus, immaterial to the issue of consent because he was not "in fact at the door." Therefore, I grant Defendants' motions for summary judgment of Plaintiff's Fourth Amendment claim regarding Defendants' warrantless entry into his home.

**E. False Arrest Claims**

**\*9** Plaintiff claims that Defendants violated his Fourth Amendment rights when they arrested him. (Dkt. No. 104 at 15, 20–21.) Defendants move for summary judgment of this claim, arguing that (1) Plaintiff's guilty plea bars the claim; and (2) Defendants had probable cause to arrest Plaintiff. (Dkt. No. 131–3 at 9; Dkt. No. 132–1 at 5.)

*1. Guilty Plea*

The elements of a Fourth Amendment false arrest claim under 42 U.S.C. § 1983 are the same as those for a false arrest claim under New York law. *Kraft v. City of New York,* 696 F.Supp.2d 403, (S.D.N.Y.2010). "To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Savino v. City of New York,* 331 F.3d 63, 75 (2d Cir.2003) (punctuation and citation omitted). Where an officer has probable cause to arrest a plaintiff, the confinement is privileged. *Id.* at 76. The burden of showing that there was probable cause for the arrest is on the officer. *Id.*

Defendants argue that Plaintiff's guilty plea bars his false arrest claim. (Dkt. No. 131–3 at 9; Dkt. No. 132–1 at 5.) As Defendants correctly note, entry of a guilty plea "operates as a defense to a Section 1983 action for arrest without probable cause." *Roundtree v. City of New York,* 778 F.Supp. 614, 619 (E.D.N.Y.1991). Plaintiff does not dispute that this is the state of the law. Rather, Plaintiff "denies the related criminal matter was resolved by a guilty plea. He claims the case is still unresolved on appeal." (Dkt. No. 136 at 2.)

Plaintiff has not raised a triable issue of fact on this issue. In opposition to the motions for summary judgment, Plaintiff declares that he "never pleaded guilty as a matter of law in the related criminal matter," that he "exhausted his direct appeal rights," and that he filed a petition for writ of habeas corpus "in New York state court and that matter is currently before the New York State Supreme Court Appellate Division,

Fourth Department and is scheduled for oral argument on April 22, 2011." (Dkt. No. 137 ¶¶ 65–67.) Other than his own declaration, Plaintiff has not provided the Court with any evidence regarding his guilty plea, appeal, and habeas petition. Plaintiff has not requested judicial notice of any documents. According to the court calendar on the Fourth Department's web site, the court's April Term closes on Friday, April 15, 2011, and the May Term does not begin until Monday, May 16, 2011. New York State United Court System, Appellate Division, Fourth Department, http://www.courts.state.ny.us/ad4 (Calendar/Terms of Court) (Last visited March 30, 2011). It thus does not appear that any cases are scheduled for oral argument before the Fourth Department on April 22, 2011. Accordingly, I find that the undisputed facts show that Plaintiff pleaded guilty to one count of attempted sexual assault in the first degree.

**\*10** As the State Defendants note, "[p]erhaps Plaintiff's denial of his 'guilty' plea is based on an unarticulated argument that he initially [was] charged with Sexual Abuse in the First Degree and Resisting Arrest, but he pled guilty to Attempted Sexual Abuse in the First Degree." (Dkt. No. 141 at 5.) If Plaintiff is indeed implicitly making such an argument, it is without merit. "[A] plea of guilty to a charge lesser than that for which plaintiff was arrested also bars a Section 1983 action for arrest without probable cause." *Roundtree,* 778 F.Supp. at 619.

The undisputed facts establish that Plaintiff pleaded guilty to one count of attempted sexual abuse in the third degree. Therefore, I grant Defendants' motions for summary judgment of Plaintiff's false arrest claim.

### 2. *Probable Cause*

Defendants argue that they would be entitled to summary judgment of Plaintiff's false arrest claim even if Plaintiff had not pleaded guilty because the undisputed facts show that Defendants had probable cause to arrest Plaintiff. (Dkt. No. 132–1 at 7–17.)

"Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir.2004) (internal quotation marks and citation omitted). "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with a crime,

has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir.1995).

Plaintiff was charged with, *inter alia,* sexual abuse in the first degree. (Dkt. No. 131–4 at 17.) Under New York law, a person is guilty of this crime "when he or she subjects another person to sexual contact ... by forcible compulsion." N.Y. Penal Law § 130.65(1) (McKinney 2004). Sexual contact includes "any touching of the sexual ... parts of a person ... for the purpose of gratifying sexual desire ... includ[ing] the touching of ... the victim by the actor, whether directly or through clothing." N.Y. Penal Law § 130.00(3) (McKinney 2004.)

The boy provided a sworn supporting deposition that a man about 5′8″ tall with brownish colored mid length hair and metal splints on two fingers asked him if he "want[ed] to have some fun" and then grabbed the crotch of his jeans. (Dkt. No. 131–4 at 19–20.) The boy also swore that he "was shown a picture by Deputy Galarneau [and] the picture of the person was definately (sic) the person who attacked me in the cornfield." *Id.* at 20. Defendant Galarneau declares that the picture was of Plaintiff. (Dkt. No. 131–4 ¶ 20.) The boy's statement provided the officers with probable cause.

**\*11** Plaintiff argues, without citation to any evidence, that he "denie[s] the criminal conduct happened and questions the facts that drew the Defendants' attention to him." (Dkt. No. 136 at 2.) Plaintiff's denial that he committed the crime does not raise a triable issue of fact that Defendants lacked probable cause to believe that he had. Therefore, even if Plaintiff had not pleaded guilty, I would grant Defendants' motions for summary judgment and dismiss Plaintiff's false arrest claim.

### F. Unreasonable Search Claims

Plaintiff's first cause of action is labeled "unreasonable search." (Dkt. No. 104 at 15.) Plaintiff alleges that while Defendant Knight held him in the police car, the other Defendants searched his bedroom for "about an hour." *Id.* at 19. Construed liberally, these allegations could constitute a Fourth Amendment unreasonable search claim. Defendants move for summary judgment dismissing this claim. (Dkt. No. 131–3 at 9; Dkt. No. 132–1 at 5–7.) Plaintiff's opposition brief does not address this argument.

"In order to recover compensatory damages [based on an allegedly unreasonable search], the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which ... does *not* encompass

the 'injury' of being convicted and imprisoned." *Heck v. Humphrey,* 512 U.S. 477, 487 n. 7, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (emphasis in original). Here, Plaintiff declares that "Defendants destroyed much of Mr. Pierce's property and belongings while the Defendants detained Mr. Pierce in handcuffs." (Dkt. No. 137 ¶ 69.) In reply, the State Defendants assert that Plaintiff's declaration is too conclusory to raise a triable issue of fact. (Dkt. No. 141 at 7.) I find that Plaintiff's declaration is, just barely, enough to raise a triable issue of fact. Therefore, Defendants' motions for summary judgment are denied as to Plaintiff's claim that the post-arrest search of his bedroom was unreasonable.

### G. Excessive Force Claims

Plaintiff claims that Defendants used excessive force. (Dkt. No. 104 at 15–21.) Defendants concede that these claims should proceed to trial. (Dkt. No. 131 at 2; Dkt. No. 132–1 at 2–3.) Trial will begin on April 18, 2011.

### H. Medical Care Claims

Plaintiff claims that Defendants Knight and Galarneau were deliberately indifferent to his serious medical needs. (Dkt. No. 104 at 19, 22.)

Before conviction, a plaintiff's claim that defendants were deliberately indifferent to his serious medical needs is governed by the Fourteenth Amendment's Due Process Clause rather than by the Eighth Amendment. *Caiozzo v. Koreman,* 581 F.3d 63, 72 (2d Cir.2009) (holding that deliberate indifference standard applies to pretrial detainee's due process claim regarding denial of medical care); *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) ("The rights of one who has not been convicted [including any right to medical care] are protected by the Due Process Clause."); *Rasmussen v. City of New York,* ——F.Supp.2d ——, No. 10 Civ. 1088(BMC), 2011 U.S. Dist. LEXIS 10089, at *31–32, 2011 WL 477713, at *10 (E.D.N.Y. Feb. 2, 2011) (analyzing arrestee's claim that officers denied her medical care under Due Process Clause, using deliberate indifference test).

**\*12** The parties disagree about whether or not the complaint properly asserts claims under the Due Process Clause. (Dkt. No. 131–2 ¶ 2; Dkt. No. 138 ¶ 2.) Plaintiff argues that the complaint "pleaded violations of the Fourteenth Amendment; therefore, [Plaintiff] pleaded a violation of his due process rights." (Dkt. No. 138 ¶ 2.) Defendants argue that Plaintiff has not asserted a due process claim because each cause of action

refers to the Fourteenth Amendment's guarantee of "the equal protection of the laws." (Dkt. No. 131–3 at 6.)

Courts must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest possible arguments that they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). This requirement applies to any pleading drafted by a *pro se* litigant and continues even if the litigant later retains counsel. *See Malcolm v. Honeoye Falls–Lima Educ. Ass'n,* 678 F.Supp.2d 100, 104 (W.D.N.Y.2010) ("the Court notes that plaintiff's complaint, even viewed liberally in light of her pro se status at the time it was filed ..."). Therefore, I must liberally construe Plaintiff's complaint.

Construed as raising the strongest possible arguments it suggests, Plaintiff's complaint alleges that Defendants Knight and Galarneau violated his due process rights by acting with deliberate indifference to his serious medical needs. Therefore, I reject Defendants' argument that the complaint does not include a due process claim.

Defendants have not advanced any argument or provided any evidence that they were not deliberately indifferent to Plaintiff's serious medical needs. Therefore, this claim will proceed to trial on April 18, 2011.

### I. Failure to Intervene Claim

Plaintiff claims that either Defendant Cross or Defendant Craft failed to intervene as the other Defendants were using excessive force on Plaintiff. (Dkt. No. 104 at 20.)[8] Such claims are governed by the Due Process Clause. *Rosen v. City of New York,* 667 F.Supp.2d 355, 359–60 (S.D.N.Y.2009) (officer's alleged failure to intervene to protect a pretrial detainee from harm analyzed under Due Process Clause). Defendants have not presented any arguments regarding Plaintiff's failure-to-intervene claim, other than to argue that the complaint does not assert a due process cause of action. As discussed above, the complaint when liberally construed includes a due process claim. Therefore, this claim will proceed to trial.

### J. Monell Claims

In his prayer for relief, Plaintiff alleges that Defendants Knight, Galarneau, LaValley, Cross, and Craft would not have used the allegedly excessive force "had they been properly trained." (Dkt. No. 104 at 23–26.) Liberally construed, the complaint thus includes a failure-to-train cause of action

against the New York State Police [9] and the Lewis County Sheriff's Department [10].

**\*13** Defendants move for summary judgment of this claim. (Dkt. No. 131–3 at 13–15; Dkt. No. 132–2 at 22.) Plaintiff's brief does not address this argument. (Dkt. No. 136.)

Regarding the New York State Police, Plaintiff's claim is barred both by the Eleventh Amendment and by the language of § 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66–71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Therefore, I grant Defendants' motions for summary judgment dismissing any claims against the New York State Police.

Regarding the Lewis County Sheriff's Department, a "municipality or other local government may be liable [under § 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson,* 131 S.Ct. 1350, 179 L.Ed.2d 417, at \*6 (Mar. 29, 2011) (citing *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). A local government entity's alleged failure to train its employees creates liability under § 1983 only "[i]n limited circumstances." *Id.* Indeed, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at \*7. The "stringent standard" of "deliberate indifference" applies to failure-to-train claims. *Id.* In order to prevail, the plaintiff must demonstrate that the municipality was "on actual or constructive notice that a particular omission in [its] training program causes ... employees to violate citizens' constitutional rights [and] the policymakers chose to retain that program." *Id.* "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at \*8 (citing *Board of Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

Here, each of the County Defendants has filed a declaration describing the training they received regarding the appropriate use of force. (Dkt. No. 131–2 ¶ 41–43.) In his opposition to Defendants' statement of facts, Plaintiff "disputes" that Defendants received proper training. (Dkt. No. ¶¶ 41–43.) However, the only evidence Plaintiff cites for this proposition is his own complaint. *Id.* Plaintiff has not set forth any basis of personal knowledge regarding the officers' training. Therefore, Plaintiff has not raised a triable issue of fact. Accordingly, I grant the County Defendants' motions

for summary judgment dismissing the failure-to-train claim against the Lewis County Sheriff's Department.

### K. Claims Against Defendant Tabolt

The complaint appears to assert a failure-to-train claim against Defendant L. Michael Talbot. (Dkt. No. 104 at 24–25.) The County Defendants move for summary judgment of this claim. (Dkt. No. 131–3 at 16–17.) Plaintiff's brief does not address this argument. (Dkt. No. 136.)

Under Second Circuit precedent, " 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some tangible connection between the unlawful conduct and the defendant. *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior* ) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501; *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). Rather, supervisory personnel may be considered "personally involved" if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). [11]

**\*14** Here, Defendants have presented the facially meritorious argument, based on the declaration of Defendant Tabolt, that none of the *Colon* categories applies. (Dkt. No. 131–7.) Plaintiff has not raised a triable issue of fact. Therefore, I grant the motion for summary judgment and dismiss all claims against Defendant Tabolt.

**ACCORDINGLY,** it is

**ORDERED** that the motions for summary judgment (Dkt. Nos. 131 and 132) are **GRANTED IN PART AND DENIED IN PART.** The following claims are dismissed: (1) all Eighth Amendment claims; (2) all equal protection claims; (3) all hate crime claims; (4) the Fourth Amendment claim regarding Defendants' entry into Plaintiff's house; (5) all false arrest claims; (6) all claims against the New York State Police; (7) all claims against the Lewis County Sheriff's Department; and (8) all claims against Defendant Tabolt. The following claims will proceed to trial on April 18, 2011:(1)

the Fourth Amendment claim regarding the post-arrest search of Plaintiff's bedroom; (2) the excessive force claims; (3) the due process claims against Defendants Knight and Galarneau for deliberate indifference to Plaintiff's serious medical needs; and (4) the due process failure-to-intervene claim against Defendant Cross or Craft.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 1315485

---

## Footnotes

1  This matter is before the Court by consent of both parties. (Dkt. No. 127.)

2  In his opposition to the motions for summary judgment, Plaintiff purports to deny these facts. Plaintiff states, in full, that he "denies that he committed a sexual assault at any point or time that is at issue in this matter." (Dkt. No. 138 ¶¶ 16–23.) Plaintiff's "denial" does not raise a dispute of material fact on any relevant issue. It is immaterial whether or not Plaintiff committed the crime. As discussed below, the relevant inquiries are what information Defendants received before going to Plaintiff's home and whether Plaintiff pleaded guilty. Plaintiff's "denial" does not dispute Defendants' version of these relevant facts.

3  The complaint's version of events reverses the identities of Defendants Cross and Craft, stating that Craft stood by without intervening and that Cross used the pepper spray. (Dkt. No. 104 at 7.)

4  State Defendants request that the Court take judicial notice of the transcript of Plaintiff's plea hearing in Lewis County Supreme Court. (Dkt. No. 132–1 at 5.) Judicial notice is appropriate, and I grant Defendants' request. *Davis v. Cotov,* 214 F.Supp.2d 310, 315 (E.D.N.Y.2002) (taking judicial notice of the fact that Plaintiff pleaded guilty to a parole violation); *Marshall v. City of New York,* No. _____, 2010 U.S. Dist. LEXIS ——, at *——, 2010 WL 4739810, at *2 n. 1 (S.D.N.Y._____, 2010) (taking judicial notice of state court guilty plea in context of subsequent § 1983 false arrest action); *Rodriguez v. Patterson,* No. 04 civ. 25(MRK), 2006 WL 1272620, at *2 (D.Conn. Apr. 5, 2006) (taking judicial notice that the plaintiff pleaded guilty to two separate counts).

5  A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson,* 477 U.S. at 248.

6  The fundamental rights as identified by the United States Supreme Court fall into six substantive categories: (1) the right to freedom of association; (2) the right to vote; (3) the right to interstate travel; (4) the right to fairness in the criminal process (which includes the right to counsel and the right of access to the courts); (5) the right to procedural due process; and (6) the right to privacy "which includes various forms of freedom of choice in matters relating to the individual's personal life" such as freedom of choice in marital decisions, child bearing, and child rearing. 2 Ronald D. Rotunda & John E. Nowak, *Treatise On Constitutional Law Substance and Procedure,* § 15.7 (4th ed.2010).

7  Plaintiff characterizes his mother as being "elderly" in August 2005. (Dkt. No. 137 ¶ 3.) The record suggests that Plaintiff's mother was ill at the time of Plaintiff's guilty plea in 2006. (Dkt. No. 131–3 at 34–35.) However,

Plaintiff has not advanced any explanation, such as ill health or death, for the absence of a declaration from his mother.

8     I note again that the complaint and Plaintiff's affidavit in opposition to the motions for summary judgment differ regarding this incident, reversing the identities of Defendants Cross and Craft. (Dkt. NO. 137 ¶¶ 21–27; Dkt. No. 104 at 7, 20.)

9     The complaint lists "New York State Police, Troop D, Lowville" as a defendant in the caption, but not in the list of parties. (Dkt. No. 104 at 1–3.)

10     The complaint does not name the Lewis County Sheriff's Department as a defendant in either the caption or the list of parties, but does request "punitive and monetary damages ... from Defendant, the Lewis County Sheriff Department." (Dkt. No. 104 at 24–25.)

11     In *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing *Iqbal'* s effect on the *Colon* categories. Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States,* 674 F.Supp.2d 531, 543–44 (S.D.N.Y.2009) (collecting cases). I will assume for the purposes of these motions that *Colon* remains good law.

---

**End of Document**                     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01337-AMN-ML Document 7 Filed 04/19/24 Page 73 of 166

Swanhart v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 875846
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Bryan SWANHART, Desiree Bartholomew,
and Joyce Swanhart, Plaintiffs,

v.

State of NEW YORK, New York State Police, George P.
Beach II, sued both in his individual and official capacity
as Superintendent of the New York State Police, Trooper
Kyle Jackson, Shield # 2795, sued both in his individual
capacity and official capacity as a Trooper with the New
York State Police, and John Doe Officers 1-5 (their true
names and identities presently unknown), acting both
in their official and unofficial capacities, Defendants.

No. 20 Civ. 6819 (NSR)
|
Signed 03/24/2022

**Attorneys and Law Firms**

Thomas Martin Gambino, Law Office of Thomas M.
Gambino & Associates PC, Poughkeepsie, NY, for Plaintiffs.

Amanda Yoon, NYS Office of the Attorney General, New
York, NY, for Defendants State of New York, New York State
Police, George P. Beach, II, Trooper Kyle Jackson.

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

**\*1** Plaintiffs Bryan Swanhart ("Bryan S."), Desiree
Bartholomew, and Joyce Swanhart ("Joyce S.") bring this
action under 42 U.S.C. §§ 1981, 1983, 1985, and 1986,
and state common law, alleging that after Bryan S. had a
car accident after suffering a seizure, the responding New
York State trooper, instead of rendering medical assistance,
allegedly (i) shook and slapped him; (ii) had his blood drawn
against his consent and released his medical information to
his employer; (iii) falsely arrested and charged him for driving
while impaired, following too closely, and leaving the scene
of the crime; (iv) denied him access to his wife, Bartholomew,
and his mother, Joyce S. while hospitalized; and (v) tampered
with evidence during his subsequent criminal prosecution.
(*See* Compl. at 1–9, ECF No. 1.) They sue Defendants State
of New York, New York State Police, George P. Beach II

(Superintendent of the New York State Police), Trooper Kyle
Jackson, and John Doe Officers 1-5, asserting federal claims
for violations of their constitutional rights, as well as an
assortment of state common law claims arising from such
violations. (*See id.* at 10–20.)

Presently pending before the Court is Defendants' motion
to dismiss Plaintiffs' Complaint under Federal Rule of Civil
Procedure 12(b)(1) and (6). (ECF No. 21.) For the following
reasons, the Court GRANTS Defendants' motion to dismiss.

**BACKGROUND**

**I. Factual Background**
The following facts are derived from the Complaint and are
taken as true and constructed in the light most favorable to
Plaintiffs for the purposes of this motion. [1]

*A. Bryan S. has a car accident after suffering
a seizure; Trooper Jackson responds to the
scene and does not provide medical assistance*

On September 1, 2017, Bryan S., a sergeant for the New
York Department of Corrections and Community Supervision
("DOCCS"), had a car accident on 1360 Route 22, Southeast,
New York, after suffering a seizure while driving his vehicle.
(Compl. ¶¶ 14–15, 49.) Troopers Jackson and Jane Doe 1
responded to the scene. (*Id.* ¶¶ 16–17.) Upon arriving at
the scene, an unidentified off-duty New York City Police
Detective, whose identity is known to Defendants, was
already present at the scene and informed the troopers that
Bryan S. was having a seizure. (*Id.* ¶ 17.)

Rather than addressing Bryan S.'s medical needs, Trooper
Jackson shook Bryan S. and slapped him in the face. (*Id.*
¶ 19.) Trooper Jackson repeatedly and continuously yelled
profanities toward Bryan S., stating "What the fuck are you
on?" (*Id.* ¶ 21.) Trooper Jackson directed Bryan S., who was
still seated inside his vehicle with his seatbelt on, to undo his
seatbelt and face towards him. (*Id.* ¶ 22.) Bryan S. complied
while in excruciating pain. (*Id.* ¶ 23.) Trooper Jackson then
demanded Bryan S. to tell him what medications he was
taking and told him that he would not be going to the hospital
but to jail until he submitted to blood tests. (*Id.* ¶ 25.) Trooper
Jackson told Bryan S. that he was going to strap him down,
take him to jail, and draw his blood against his wishes. (*Id.*

**Swanhart v. New York, Not Reported in Fed. Supp. (2022)**

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 74 of 166

¶ 26.) Bryan S. informed Trooper Jackson that he was in significant pain and needed medical treatment. (*Id.* ¶ 18.)

**\*2**  When an ambulance arrived, rather than permitting its crew to assist Bryan S., Trooper Jackson directed Bryan S. to walk to the ambulance without any assistance. (*Id.* ¶ 20.) Throughout this encounter, Trooper Jackson told Jane Doe 1 that "she was going to learn how to 'do a [Correction Officer] today' and that it does not matter that [Bryan S.] is a Sergeant." (*Id.* ¶ 25.) Eventually, Trooper Jackson permitted the ambulance crew to transport Bryan S. to Danbury Hospital in Connecticut and followed them to that location. (*Id.* ¶¶ 27–28.)

*B. Bryan S. is hospitalized and his wife and mother visit him, but Trooper Jackson denies them access, and obtains and discloses Bryan S.'s medical information without his consent to the DOCCS*

At Danbury Hospital, Trooper Jackson denied Bryan S.'s wife, Bartholomew (who is an African-American female) access to Bryan S. by throwing her out of the hospital room where her husband was, and threatened her with arrest if she failed to comply with his orders. (*Id.* ¶¶ 28, 59.) Trooper Jackson did permit Bryan S.'s mother, Joyce S., to remain inside the hospital room with her son, but he did not permit her to speak to Bryan S. (*Id.* ¶ 29.) Trooper Jackson then interrogated Bartholomew, demanding she tell him what medication Bryan S. takes, when he took the medication, and whether he smokes marijuana (*Id.* ¶ 31.) Bartholomew told Trooper Jackson that she gave Bryan S. his required medications, but that she did not see him take his pain medication, and that he did not smoke marijuana. (*Id.* ¶¶ 30–31.)

Trooper Jackson continued to interrogate Bartholomew and Bryan S. and also obtained Bryan S.'s medical information without his consent. (*Id.* ¶ 33.) Trooper Jackson directed Bryan S.'s blood to be drawn against his will despite him writing NO on a consent form—a form which Trooper Jackson claims is now lost. (*Id.* ¶¶ 34.) Trooper Jackson later released Bryan S.'s medical information to the DOCCS, for which Bryan S. suffered negative repercussions from his employer. (*Id.* ¶ 39.) Trooper Jackson, who had previously worked at DOCCS, also called Bryan S.'s supervisor, Lieutenant Michael Harvey (the acting watch commander), and falsely informed him that Bryan S. had admitted to

smoking marijuana, causing negative repercussions for Bryan S. with DOCCS. (*Id.* ¶ 49.)

*C. Trooper Jackson arrests and charges Bryan S. for violations of traffic law; Bryan S. is criminally prosecuted*

Trooper Jackson then arrested Bryan S. and charged him with violating New York Vehicle and Traffic Law §§ 1192(4) (driving while impaired by drugs), 1129(a) (following too closely) and 600.01(A) (leaving the scene of an accident), despite knowing said charges to be false. (*Id.* ¶ 40.) Trooper Jackson told Bryan S. to show up at the Trooper Barracks by 6:00 p.m. because he would start his vacation at 6:00 p.m., and if Bryan S. "fucks up" his vacation, he would charge Bryan S. with felonies instead of misdemeanors, drag him to jail, and make him wait a week to bail out. (*Id.* ¶ 41.) Hospital staff advised Bryan S. to remain in the hospital because he could have a spine fracture, but Bryan S. still signed out in fear of retribution by Trooper Jackson. (*Id.* ¶¶ 42–43.) Bryan S. also suffered an additional seizure while at the hospital in the presence of medical staff. (*Id.* ¶ 44.) Bryan S. immediately returned to the hospital (presumably after meeting Trooper Jackson) after the staff informed him that he was at risk of paralysis because he suffered a compression fracture of his spine, a concussion, and bruising to his shoulder, chest, and ribs as a result of the accident. (*Id.* ¶ 45.)

**\*3**  Bryan S. was subsequently criminally prosecuted for the charges Trooper Jackson pressed, which he knew to be false. (*Id.* at 7.) [2] During the criminal prosecution, Trooper Jackson claimed to have lost the dash cam evidence with footage of the scene of the accident and encounter between him and Bryan S. When the dash cam was later found, the footage depicting the encounter between the two had been deleted, as well as Trooper Jackson's conduct towards Bryan S. (*Id.* ¶ 47.) Trooper Jackson also erased the name of the off-duty New York City Detective from the official police reports, although this information was later recovered. (*Id.*) All criminal charges against Bryan S. were subsequently dismissed and sealed. (*Id.* ¶ 48.)

## II. Procedural Background

On August 24, 2020, Plaintiffs filed the instant Complaint (Compl., ECF No. 1.) After they were served with the Complaint and summons, on January 14, 2021, Defendants sought leave to file a motion to dismiss, which the Court subsequently granted and issued a briefing schedule. (ECF

Nos. 19 & 20.) On April 15, 2021, the parties filed their respective briefing on the instant motion: Defendants their notice of motion (ECF No. 21), memorandum in support ("Motion," ECF No. 22), and reply ("Reply," ECF No. 23); and Plaintiffs their response in opposition ("Response in Opposition," ECF No. 25) and a declaration with accompanying exhibits (Gambino Decl., ECF No. 26). [3]

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). "Once challenged, the burden of establishing jurisdiction rests with the party asserting that it exists. The party asserting subject matter jurisdiction has the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction." *Augienello v. F.D.I.C.*, 310 F. Supp. 2d 582, 587–88 (S.D.N.Y. 2004) (Sweet, J.) (internal citations omitted).

"On a motion to dismiss for lack of subject matter jurisdiction, the court may resolve disputed jurisdictional factual issues by reference to evidence outside the pleadings" such as affidavits or other evidence. *Id.* at 588 (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)). "[C]ourts must accept as true all material factual allegations in the complaint" and "refrain from drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *Fox v. Commonw. Worldwide Chauffeured Transp. of NY, LLC*, No. 08–CV–1686, 2009 WL 1813230, at *1 (E.D.N.Y. June 25, 2009) (Garaufis, J.) (internal quotation marks and citations omitted).

### II. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a

cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted).

## DISCUSSION

**\*4** Plaintiffs assert claims under federal law against Trooper Jackson and Jane Doe 1 for (1) violation of their rights under the First and Fourteenth Amendments to freely associate with others; (2) violation of Bryan S.'s Fourth Amendment right to be free from excessive force; and (3) false arrest and imprisonment, and malicious prosecution of Bryan S. (*See* Compl. at 11–13.) Plaintiffs also assert federal claims—premised on Trooper Jackson and Jane Doe 1's alleged violations of their constitutional rights—against the remaining Defendants for (1) conspiracy under § 1983; (2) conspiracy under § 1985(3); [4] and (3) supervisory liability and failure to intercede. (*See id.* at 10–14.) Plaintiffs also assert state common law claims against all Defendants for (1) gross negligence, negligence, and intentional and negligent infliction of emotional distress; (2) *respondeat superior*; (3) assault and battery; (4) false arrest and false imprisonment; (5) *prima facie* tort; (6) negligent hiring and supervision; and (7) libel and slander. (*See id.* at 14–20.)

Defendants seek to dismiss all claims arguing that: (1) the Court lacks subject matter jurisdiction over all claims against the State of New York, the New York State Police, and individual defendants in their official capacity because the Eleventh Amendment and sovereign immunity bars all such claims; (2) Plaintiffs fail to allege personal involvement of Superintendent Beach; (3) Plaintiffs' federal claims fail as a matter of law on several grounds; (4) Superintendent Beach and Trooper Jackson are entitled to qualified immunity; (5) Plaintiffs' state law claims fail as a matter of law on several grounds; and (6) Superintendent Beach and Trooper Jackson are immune from state tort claims because they are being sued for actions that are discretionary in nature. (*See* Mot. at 13– 30.) The Court analyzes Defendants' arguments in that order.

**I. The Eleventh Amendment and sovereign immunity bars all of Plaintiffs' claims against the State of New**

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 76 of 166

Swanhart v. New York, Not Reported in Fed. Supp. (2022)

**York, the New York State Police, and individual defendants in their official capacity**

As a preliminary matter, the Court agrees with Defendants that it lacks subject matter jurisdiction over all of Plaintiffs' claims against the State of New York, the New York State Police, and the individual defendants in their official capacity because the Eleventh Amendment and sovereign immunity bar such damages claims. (Mot. at 13–14.) Indeed, Plaintiffs concede that these claims must be dismissed. (Resp. in Opp'n at 10.)

The Eleventh Amendment jurisdictionally bars from federal court all suits by private parties against a state or one of its agencies unless the state consents to such suit or Congress has expressly abrogated the state's immunity. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100–02 (1984). Congress did not abrogate states' immunity when it enacted §§ 1981, 1983, 1985, 1986. *See, e.g., Quern v. Jordan,* 440 U.S. 332, 343–45 (1979) (§ 1983); *Daisernia v. State of New York,* 582 F. Supp. 792, 800, 803 (N.D.N.Y. 1984) (§ 1981); *True v. New York State Dep't of Corr. Servs.,* 613 F. Supp. 27, 31 (W.D.N.Y. 1984) (§ 1985); *Seibert v. Oklahoma,* 867 F.2d 591, 594 (10th Cir. 1989) (§ 1986), *abrogated on other grounds by Federal Lands Legal Consort, ex rel. Robart Estate v. United States* 195 F.3d 1190 (10th Cir. 1999). The State of New York has also not consented to suit in federal court under either § 1983, *see Le Grand v. Evan,* 702 F.2d 415, 417 (2d Cir. 1983), § 1981, *see Quirk v. City of New York,* No. 03 Civ. 0324, 2003 WL 1872714, at *1 (S.D.N.Y. Apr. 10, 2003), § 1985, *see id.,* or § 1986, *see Gasparik v. Stony Brook University,* No. CV-05-3817, 2007 WL 2026612, at *4 (E.D.N.Y. July 9, 2007).

 **\*5** The immunity provided by the Eleventh Amendment extends to actions seeking damages against state officials sued in their official capacities if the state is the real party in interest. *See Davis v. New York,* 316 F.3d 93, 101 (2d Cir. 2002); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir. 1988).

Accordingly, the Court dismisses all of Plaintiffs' federal and state law claims against the State of New York, the New York State Police, and individual defendants in their official capacity with prejudice.

**II. Plaintiffs' conspiracy claims fail because Defendants are legally incapable of conspiring together under the intracorporate conspiracy doctrine**

Next, the Court agrees with Defendants that Plaintiffs' conspiracy claims under §§ 1983 and 1985 against the individual Defendants (Superintendent Beach, Trooper Jackson, and John Does 1-4), in their individual capacities, fail because they are barred by the intracorporate conspiracy doctrine. (Mot. at 15.)

"Under the 'intracorporate conspiracy' doctrine, the officers, agents, and employees of a single corporate entity, each acting within the scope of her employment, are legally incapable of conspiring together." *Little v. City of New York,* 487 F. Supp. 2d 426, 442–43 (S.D.N.Y. 2007) (quoting *Salgado v. City of New York,* No. 00 Civ. 3667(RWS), 2001 WL 290051, at *8–9 (S.D.N.Y. March 26, 2001) (citing *Herrmann v. Moore,* 576 F.2d 453, 459 (2d Cir. 1978); *Girard v. 94th St. and Fifth Ave. Corp.,* 530 F.2d 66, 71–72 (2d Cir. 1976))). An exception to this doctrine exists where the individuals are "motivated by an independent personal stake in achieving the corporation's objective." *Id.* (quoting *Salgado,* 2001 WL 290051, at *8.)

Here, Plaintiffs formulaically allege that the individual Defendants conspired with each other to violate their rights under both §§ 1983 and 1985, (*see* Compl. ¶¶ 61–64, 81–83), and that the individual Defendants are part of a single corporate entity: the New York State Police. (*See id.* ¶¶ 4, 8.) Moreover, nowhere in the Complaint do Plaintiffs allege "that [any] of the officers were motivated by an independent personal stake" in carrying out the alleged conspiracy of the violation of their rights. *Little,* 487 F. Supp. 2d at 443.

Accordingly, the Court dismisses all of Plaintiffs' conspiracy claims against Superintendent Beach, Trooper Jackson, and John Does 1-4 without prejudice.

**III. Plaintiffs fail to allege the personal involvement of Superintendent Beach and John Does 2-4**

Next, the Court agrees with Defendants that Plaintiffs' claims against Superintendent Beach are insufficiently pled for failure to allege his personal involvement in any of their asserted claims. (Mot. at 14.) The Court is also of the view that Plaintiffs' claims against John Does 2-4 fail for similar reasons.

"A defendant in a § 1983 action may not be held responsible unless he was personally involved in the alleged constitutional violations." *Whitton v. Williams,* 90 F. Supp. 2d 420, 427 (S.D.N.Y. 2000). "The Second Circuit has held that 'personal involvement' for these purposes means 'direct participation, or failure to remedy the alleged wrong after

Swanhart v. New York, Not Reported in Fed. Supp. (2022)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 77 of 166

learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates.' " *Id.* (quoting *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir. 1996)).

**\*6** Here, the majority of Plaintiffs' allegations relating to each of their federal causes of action hastily attribute the violations of Plaintiffs' rights to all "Defendants" despite Plaintiffs' initial factual allegations averring only the personal involvement of Trooper Jackson, and at best, also that of Jane Doe 1—who was allegedly present during the incidents with Plaintiffs. (*Compare* Compl. ¶ 19 ("Trooper Kyle Jackson ... violently shook [Bryan S.] and slapped him in the face.") *and id.* ¶ 28 ("Trooper Kyle Jackson ... threw ... [Bartholomew], who is African-American, out of [Bryan S.'s] hospital room, denying them access to each other and threatened her with arrest if she failed to comply with his order.") *with id.* ¶ 67 ("The conduct of the *Defendants* toward Plaintiff constituted assault and battery on the person of the Plaintiff by *Defendants.*" (emphasis added)) *and id.* ¶78 ("By their conduct and under color of law, federal and state, *Defendants* deprived [Bartholomew] of her First and Fourteenth Amendment rights to freely associate with others." (emphasis added)).

Further, regarding those claims against Superintendent Beach, Plaintiffs merely conclusorily allege that, as the Superintendent of the New York State Police, he implemented the policies and practices and supervised the actions of the subordinate officers. (Compl. ¶¶ 11, 12, 57, 58.) "Absent further factual enhancement, simply stating that [Superintendent Beach] created unidentified policies or practices" and supervised actions of his subordinate officers are "not enough to defeat a Rule 12(b)(6) motion." *Casiano v. Cnty. of Nassau,* No. CV161194SJFARL, 2019 WL 487868, at \*7 (E.D.N.Y. Jan. 7, 2019), *report and recommendation adopted,* No. 16CV1194SJFARL, 2019 WL 337098 (E.D.N.Y. Jan. 28, 2019); *see also Curley v. Village of Suffern,* 268 F.3d 65, 72 (2d Cir. 2001) ("Failure to intercede results in liability where an officer observed excessive force is being used or has reason to know that it will be." (citations omitted)); *Lindsey v. Butler,* 43 F. Supp. 3d 317, 330 (S.D.N.Y. 2014), *reconsideration granted on other grounds,* 2014 WL 5757448 (S.D.N.Y. Nov. 5, 2014) ("In order to hold supervisors liable for creating a custom or policy fostering a constitutional violation, courts in this Circuit have required that plaintiffs plead more than conclusory allegations of the existence of the custom or policy." (citing cases)).

Additionally, Plaintiffs' federal claims against John Does 2-4 are similarly insufficient because all that Plaintiffs allege is that Trooper Jackson's actions "were supervised by supervisors of the New York State Police identified as John Does 2-4" and that they "knew or should have known that the allegations" leading to Bryan S.'s arrest were false and not based on probable cause. (Compl. ¶¶ 50–51); *see also Gray-Davis v. New York,* No. 5:14-CV-1490 GTS/TWD, 2015 WL 2120518, at \*8 (N.D.N.Y. May 5, 2015) (dismissing supervisory liability claim against John Doe defendant because plaintiff failed to sufficiently allege personal involvement).

Accordingly, the Court dismisses all of Plaintiffs' federal claims against Superintendent Beach and John Does 2-4 without prejudice.

### IV. Plaintiffs' remaining federal claims against Trooper Jackson and Jane Doe 1 fail

The only federal claims remaining are Plaintiffs' claims against Trooper Jackson and Jane Doe 1, including: (1) for violation of Bryan S.'s Fourth Amendment right to be free from excessive force; (2) for Bryan S.'s false arrest, false imprisonment, and malicious prosecution; (3) for violation of Plaintiffs' First and Fourteenth Amendments right to association; and (4) those purportedly asserted under §§ 1981 and 1986. The Court addresses these claims in that order.

*A. Plaintiffs' excessive force claim fails because they fail to sufficiently allege that the force used was either not de minimis or objectively unreasonable*

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they

Case 3:23-cv-01337-AMN-ML  Document 7  Filed 04/19/24  Page 78 of 166

Swanhart v. New York, Not Reported in Fed. Supp. (2022)

did so 'under color of state law.' " *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

**\*7**  Here, the main dispute between the parties involves only the first element: whether there was a deprivation of a constitutional right. Plaintiffs allege that Trooper Jackson violated Bryan S.'s Fourth Amendment right to be free of excessive force by "violently [shaking] and slapp[ing]" him right after Bryan S. had his seizure that resulted in a car accident. (Compl. ¶ 19.) Defendants contend that Plaintiffs' excessive force claim fails because they fail to allege that Trooper Jackson used more than *de minimis* force and that his use of force was objectively unreasonable under the circumstances. (Mot. at 17.) After due consideration, the Court agrees with Defendants.

As a preliminary matter, the Court notes that the relevant allegations here strongly suggest that Trooper Jackson suspected that Bryan S. was driving under the influence, and was seeking to seize him until he could confirm his suspicions. (*See, e.g.*, Compl. ¶¶ 21, 25 (alleging that Trooper Jackson asked Bryan S. whether he took any medications and also: "What the fuck are you on?"); *id.* ¶ 25 (alleging that Trooper Jackson told Bryan S. that he would take him to jail and not the hospital until he submitted to blood tests).) Therefore, based on these allegations, Trooper Jackson's use of force during the course of this encounter must be analyzed under the Fourth Amendment and its "reasonableness standard." *See Graham v. Connor,* 490 U.S. 386, 395 (1989).

The Fourth Amendment's reasonableness standard requires "balancing ... 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Dancy v. McGinley*, 843 F.3d 93, 116 (2d Cir. 2016) (quoting *Graham*, 490 U.S. at 395–96). A police officer's use of force is excessive "if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.' " *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham* 490 U.S. at 397).

Factors relevant to this inquiry include:

> the need for the application of force, the relationship between the need and

the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016) (quoting *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 251–52 (2d Cir. 2001)).

"[I]t is ... well established that not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a [plaintiff's] constitutional rights." *Kayo v. Mertz*, 531 F. Supp. 3d 774, 797 (S.D.N.Y. 2021) (quoting *Mesa v. City of New York*, No. 09 Civ. 10464 (JPO), 2013 WL 31002, at \*18 (S.D.N.Y. Jan. 3, 2013) (cleaned up)). However, "[i]t is the force used, not the injuries caused, which must be determined to be *de minimis* as a matter of law." *Jackson v. Mastrangelo*, 405 F. Supp. 3d 488, 492 (W.D.N.Y. 2019) (quoting *Campbell v. City of New York*, No. 06-CV-5743, 2010 WL 2720589, at \*8 (S.D.N.Y. June 30, 2010)).

Here, even when construing the Complaint in the light most favorable to them, Plaintiffs fail to sufficiently allege that Trooper Jackson used more than *de minimis* force and that such force was unreasonable under the circumstances. Specifically, the Complaint's allegations relating to Plaintiffs' excessive force claim omit certain salient facts material to the reasonableness analysis, and they also describe events that are not necessarily in chronological order. Hence, these deficiencies in the Complaint make it difficult for the Court to discern how certain allegations occurred in relation to each other.

**\*8**  For example, in relevant part, Plaintiffs allege that upon Trooper Jackson's arrival at the scene, an off-duty New York City Police Detective at the scene informed him that Bryan S. "was having a seizure"—that is, *in the middle of* a seizure episode *at the same time* the detective and Trooper Jackson were talking. (Compl. ¶ 17.) But Plaintiffs' next allegation is that Bryan S. informed Trooper Jackson "that he was in significant pain and needed medical treatment." (*Id.* ¶ 18.) Viewed together, these allegations inconclusively suggest three possible alternative scenarios, that (a) Bryan S. was conscious and could still communicate while suffering a seizure; (b) some undefined time passed between Bryan S.'s seizure and him regaining his ability to communicate; or (c)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 79 of 166

Swanhart v. New York, Not Reported in Fed. Supp. (2022)

Bryan S. informed Trooper Jackson that he was in significant pain and needed medical treatment at some other point in time during the encounter. Yet, Plaintiffs do not provide sufficient context in either the remaining allegations or their response in opposition to make clear what they intended to allege. [5]

This omitted context is important because Plaintiffs' next allegation is the one at issue here: that Trooper Jackson shook and slapped Bryan S. As the reasonableness standard requires the Court to analyze whether the force used was reasonable *under the circumstances alleged*, without any clarifying allegations as to the timing of alleged force used in relation to Bryan S.'s seizure and him regaining the ability to communicate, the Court is unable to conduct the analysis because the circumstances are a matter of speculation. Indeed, Plaintiffs also crucially fail to allege or clarify whether the forced used caused Bryan S. any injury [6] or even the number of times that Trooper Jackson slapped Bryan S., both of which are material circumstances on which the reasonableness analysis could turn decisively.

To illustrate, in considering the different scenarios that the allegations mentioned above suggest, the results of the reasonableness inquiry vary. In the first scenario, if Trooper Jackson shook and slapped Bryan S. *multiple times* while he was conscious and able to communicate while in the middle of a seizure, then the force used can neither be *de minimis* nor reasonable because Bryan S. was restrained in his car, not resisting, and in "significant pain and in need of medical assistance." *See, e.g., Campbell v. City of New York*, No. 06 CV 5743 (HB), 2010 WL 2720589, at *8 (S.D.N.Y. June 30, 2010) ("The alleged force used on Campbell when he was being interrogated at the police station, slapping and cigarette burns, in particular cannot conceivably be deemed a *de minimis* use of force if it in fact occurred."); *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 391 (S.D.N.Y. 2009) ("[W]e do not believe that any particular quantum of physical injury is required in such circumstances, since the evidence demonstrates that no use of force was justified. That is the scenario here, which involved an interrogation of an unresisting previously-arrested individual.").

**\*9** Of course, the result would be the opposite if Trooper Jackson only slapped Bryan S. *once* and resulted in no injury because then the force used would be *de minimis*. See *Lewis v. Huebner*, No. 17-CV-8101 (KMK), 2020 WL 1244254, at *6 (S.D.N.Y. Mar. 16, 2020) ("Courts have repeatedly held that a single slap that results in no injury constitutes unactionable, *de minimis* force." (collecting cases)).

On the other hand, in the second and third scenarios, if Trooper Jackson shook and slapped Bryan S. while he was still suffering a seizure *but before* he had regained his ability to communicate, then, even when construing the allegations in Plaintiffs' favor, the force used would plausibly be reasonable. Notably, given that Trooper Jackson suspected that Bryan S. was driving under the influence, it follows that the allegations would suggest that he ostensibly used such force to assess Bryan S.'s sobriety or consciousness. But even then, Trooper Jackson's force could still be unreasonable depending on whether he slapped Bryan S. *multiple times* and such force resulted in an injury.

To be sure, for purposes of this motion, the Court recognizes that it must accept all factual allegations in the complaint as true and draw all reasonable inferences in Plaintiffs' favor. *Freidus*, 734 F.3d at 137. However, "the [C]ourt cannot simply 'fill in the blanks' to supply what is missing, on a motion to dismiss," *Read v. Corning Inc.*, 351 F. Supp. 3d 342, 357 (W.D.N.Y. 2018), "or follow a bread crumb trail of a represented plaintiff." *Jackson v. Cnty. of Onondaga*, No. 917CV845GLSCFH, 2019 WL 355729, at *4 (N.D.N.Y. Jan. 28, 2019). Put differently, at this stage, the Court is not required to either speculate or puzzle out Plaintiffs' allegations in such a way that the Court would be effectively pleading Plaintiffs' claim for them.

And moreover, the Court notes that Plaintiffs also fail to allege how Jane Doe 1, who was allegedly present at the scene with Trooper Jackson, was personally involved in the violation of Bryan S.'s right to be free of excessive force. See *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003), *aff'd sub nom. Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) ("A police officer is personally involved in the use of excessive force if he either: (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so." (citing *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). In fact, even if Plaintiffs had sufficiently alleged that Trooper Jackson used excessive force, they would still fail to sufficiently allege a claim against Jane Doe 1 for her failure to intercede because the Complaint contains no allegations that she had "a reasonable opportunity to do so." *Id.*

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 80 of 166

Swanhart v. New York, Not Reported in Fed. Supp. (2022)

Accordingly, the Court dismisses all of Plaintiffs' claims for the alleged violation of Bryan S.'s Fourth Amendment right to be free from excessive claim without prejudice.

*B. Plaintiffs fail to allege a claim for false arrest, false imprisonment, and malicious prosecution as a matter of law because the allegations suggest Trooper Jackson had probable cause*

1. Underline: Underlined heading

1. False arrest and false imprisonment

**\*10** Because "[f]alse arrest is considered a kind of false imprisonment, ... the claims are analyzed in identical fashion." *See Mitchell v. Home,* 377 F.Supp.2d 361, 371 (S.D.N.Y. 2005) (citing *Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995) (describing false arrest claim as type of false imprisonment claim and stating that claims are analyzed identically), *cert. denied,* 517 U.S. 1189 (1996); *Weyant v. Okst,* 101 F.3d 845, 853 (2d Cir. 1996) (quoting *Singer*)).

"To establish a claim for false arrest under 1983, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification.' " *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Weyant,* 101 F.3d at 852). A plaintiff cannot prevail on a false arrest claim if the arresting officer had probable cause to arrest. *See Singer,* 63 F.3d at 118.

Probable cause exists if officers have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Panetta v. Crowley,* 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation omitted). "Probable cause does not require absolute certainty." *Boyd v. City of New York,* 336 F.3d 72, 76 (2d Cir. 2003). Indeed, "some exculpatory evidence does not make an arrest illegal when the totality of evidence still establishes probable cause to believe that the suspect committed the crime." *Stansbury v. Wertman,* 721 F.3d 84, 94 (2d Cir. 2013).

To defeat a false arrest claim, an arresting officer need not have had probable cause to arrest the plaintiff for the specific offense invoked by the officer at the time of the arrest, or the offense with which the plaintiff was charged. *See Devenpeck v. Alford,* 543 U.S. 146, 153 (2004); *Jaegly v. Couch,* 439 F.3d 149, 154 (2d Cir. 2006). As long as there was probable cause to arrest the plaintiff for *some* offense, a false arrest

claim will fail. *See Jaegly,* 439 F.3d at 152. "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 128 (2d Cir. 1997).

Here, Plaintiffs allege that Trooper Jackson arrested Bryan S. for violating New York Vehicle and Traffic Law §§ 1192(4) (driving while impaired by drugs), 1129(a) (following too closely) and 600.01(A) (leaving the scene of an accident), "despite knowing said charges to be false." (Compl. ¶ 40.) Based on Plaintiffs' placement of this allegation within the Complaint, Trooper Jackson presumably arrested Bryan S. *after* he was hospitalized, his blood drawn from him, and Trooper Jackson obtained his medical information. (*See id.* ¶¶ 34–40.)

As a result, after due consideration, the Court agrees with Defendants that, even when viewing the Complaint in Plaintiffs' favor, the allegations suggest that Trooper Jackson had probable cause to arrest Bryan S. for violating New York Vehicle and Traffic Law § 1192(4) (driving while impaired by drugs). First, the Complaint alleges that Trooper Jackson asked Bartholomew whether her husband, Bryan S., takes medication and when. (*See id.* ¶ 30.) Bartholomew responded that she had given Bryan S. his required medication, but that she did not see him take his pain medication. (*See id.* ¶ 31.) Further, the Complaint alleges that Trooper Jackson arrested Bryan S. *after* he learned of his medical information and had his blood drawn. (*See id.* ¶¶ 34–40.) In sum, it can be inferred from these allegations that Trooper Jackson developed probable cause that Bryan S. was driving under the influence due to the medications he had taken earlier and the results of his blood tests. Additionally, that the criminal charges against Bryan S. were eventually dismissed and sealed has no bearing on the issue of whether Trooper Jackson had probable cause to effectuate the arrest. *See Quinn v. City of New York,* No. 99 Civ. 7068, 2003 WL 1090205, at *4 (E.D.N.Y. Mar. 12, 2003) ("The validity of an arrest does not depend on a finding of innocence or any other disposition." (citing *Haussman v. Fergus,* 894 F. Supp. 142, 147–48 (S.D.N.Y. 1995)).

**\*11** Accordingly, the Court dismisses all of Plaintiffs' claims for false arrest and imprisonment against Trooper Jackson without prejudice. The Court also dismisses those same claims against Jane Doe 1, who Plaintiffs once again fail to allege how she was personally involved in Bryan S.'s arrest.

## 2. Malicious prosecution

The elements of a malicious prosecution claim under § 1983 are that: (1) the defendant initiated a prosecution against the plaintiff; (2) the defendant lacked probable cause to believe the proceeding could succeed; (3) the defendant acted with malice; (4) the prosecution terminated in the plaintiff's favor; and (5) there was a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights. *Rohman v. New York City Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000); *see also Singer,* 63 F.3d at 116–17 (relying in part on common law and New York State malicious prosecution law in analyzing § 1983 malicious prosecution claim, and observing that "[t]he 'appropriate starting point' of the inquiry is the common law of torts" (quoting *Carey v. Piphus,* 435 U.S. 247, 258 (1978))).

Here, Plaintiffs' malicious prosecution claim under § 1983 against Trooper Jackson and Jane Doe 1 fails because, even when construing the Complaint in the light most favorable to Plaintiffs, the allegations indicate that Trooper Jackson had probable cause to arrest Bryan S., as discussed above.

Furthermore, while police officers do not generally "commence or continue" criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to "play[ ] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Manganiello v. City of New York,* 612 F.3d 149, 163 (2d Cir. 2010) (quoting *Rohman,* 215 F.3d at 217). "This element might be satisfied by, for example, showing that an officer generated witness statements or was regularly in touch with the prosecutor regarding the case." *Bermudez v. City of New York,* 790 F.3d 368, 377 (2d Cir. 2015) (citing *Manganiello,* 612 F.3d at 163). However, Plaintiffs allege no facts indicating that either Trooper Jackson or Jane Doe 1 played an active role in the subsequent prosecution of Bryan S.

Accordingly, the Court dismisses Plaintiffs' malicious prosecution claim under § 1983 against Trooper Jackson and Jane Doe 1 without prejudice.

*C. Plaintiffs' claims for the violation of their rights under the First and Fourth Amendments*

*fail because the allegations suggest the temporary separation was not shocking, arbitrary, and egregious*

Plaintiffs next claim that Trooper Jackson interfered with their familial association when Bryan S. was hospitalized and he refused to allow Bartholomew and Joyce S. be present during Bryan S.'s questioning. (Compl. ¶¶ 28–29.) But Defendants argue that such claim is meritless because, for the claim to be viable, the interference with their familial association must be "shocking, arbitrary, and egregious." (Resp. in Opp'n at 21–22.) The Court agrees.

The Second Circuit has held that relatives maintain, "in general terms, a substantive right under the Due Process Clause to remain together without the coercive interference of the awesome power of the state." *Anthony v. City of New York,* 339 F.3d 129, 142–43 (2d Cir. 2003). To prevail on a claim for violation of the substantive due process right of familial association, a plaintiff "must demonstrate that [the alleged offending act] was so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Id.* at 143 (internal citation and quotations omitted) (holding that a woman's temporary separation from her sister due to involuntary confinement at hospital did not violate her sister's substantive due process right to familial association).

**\*12** To rise to a "conscience-shocking level," the misconduct alleged in a substantive due process claim must be either conduct intended to injure in some way unjustified by any governmental interest, or inflicted with deliberate indifference that was shocking under the circumstances. *Miner v. New York State Dep't of Health,* No. 02 Civ. 3180, 2004 WL 1152491, at \*5 (S.D.N.Y. May 24, 2004) (finding the lack of deliberate indifference fatal to the familial association claim of an inmate whose wife filed for divorce after receiving an inaccurate letter notifying her that her husband was HIV positive).

Here, Plaintiffs fail to allege how Trooper Jackson's interference with their familial association was "conscience-shocking"; much less, how such interference could even be considered misconduct because Trooper Jackson was investigating a car accident involving a compromised or inebriated driver, which is a violation of New York Vehicle and Traffic Law. *See, e.g.,* *People v. DeJesus,* 845 N.Y.S.2d 517, 518 (3d Dep't 2007) ("It is now well established that the police are not required to provide a defendant access to a family member who is present at police headquarters during interrogation." (citations omitted)).

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 82 of 166

Swanhart v. New York, Not Reported in Fed. Supp. (2022)

Accordingly, the Court dismisses all of Plaintiffs' claims against Trooper Jackson for interference with their familial association without prejudice. The Court also dismisses those same claims against Jane Doe 1, who Plaintiffs once again fail to allege how she was personally involved in the event.

### D. Plaintiffs' claims under §§ 1981 and 1986 fail

Lastly, Plaintiffs' Complaint purports to assert claims under §§ 1981 and 1986. (*See* Compl. ¶ 1.) But with respect to their § 1981 claims, none of Plaintiffs' allegations invoke a claim under that statute. *See Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) (noting that § 1981 "was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race." (internal quotation marks and citations omitted)). And as the Court concluded above that Plaintiffs' § 1985 claims fail, then their claims under § 1986 must also fail because "a § 1986 claim must be predicated upon a valid § 1985 claim." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (citations omitted).

In sum, as all of Plaintiffs' federal claims against Defendants fail, the Court need not address Defendants' arguments on qualified immunity. And on that same basis, the Court also declines to exercise supplemental jurisdiction over Plaintiffs' state law claims because there remains no independent jurisdictional basis. "The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial

economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims"). Additionally, where the federal claims are dismissed at an early stage in the litigation, the Second Circuit has generally held that it is inappropriate for the district court to exercise supplemental jurisdiction. *See, e.g., Giordano,* 274 F.3d at 754; *Seabrook v. Jacobson,* 153 F.3d 70, 72 (2d Cir. 1998); *Castellano v. Bd. of Trs. of Police Officers' Variable Supplements Fund,* 937 F.2d 752, 758 (2d Cir. 1991).

**\*13** Therefore, the Court dismisses the entirety of Plaintiff's Complaint. [7]

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss (ECF No. 21) and DISMISSES Plaintiffs' Complaint. Specifically, the Court DISMISSES Plaintiffs' federal and state law claims against New York State, the New York State Police, and all individual defendants in their official capacities with prejudice, and all other remaining federal and state law claims against the individual defendants in their individual capacities without prejudice. Plaintiffs are granted leave to file an Amended Complaint as to those claims that were dismissed without prejudice. If Plaintiffs choose to do so, they will have until May 20, 2022, to file an Amended Complaint. Defendants are then directed to answer or otherwise respond by June 20, 2022. If Plaintiffs fail to file an Amended Complaint within the time allowed, and they cannot show good cause to excuse such failure, any claims dismissed without prejudice by this opinion and order may be deemed dismissed with prejudice.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 875846

---

### Footnotes

1    The Court notes that some of the Complaint's allegations describe events that are not necessarily in chronological order and they fail to include certain salient facts, which make it difficult to comprehend how certain allegations occurred in relation to each other. Plaintiffs' response in opposition also fails to provide context on these allegations. The following compilation of facts is the result of the Court's reasonable attempt to figure out the logical temporal order that Plaintiffs may have originally intended.

**Swanhart v. New York**, Not Reported in Fed. Supp. (2022)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 83 of 166

2   To avoid confusion, the Court cites to the Complaint's page here because Plaintiffs' Complaint contains two paragraphs numbered "45."

3   Plaintiffs also filed a notice of motion to amend or correct their complaint. (ECF No. 24.) They included a paragraph in their Response in Opposition asking for leave to amend should the Court is inclined to dismiss upon the pleadings. (Resp. in Opp'n at 20.) But Plaintiffs' briefing on their motion to amend is procedurally deficient because they failed to comply with Rule 3(A)(ii) of this Court's Individual Practices by not filing a pre-motion letter seeking conference before filing their motion.

4   None of the allegations in Plaintiff's Complaint seem to invoke § 1985(1) and (2) because they relate to conspiracy claims to prevent officers from performing their duties and to obstruct judicial proceedings by intimidating a party, witness, or juror.

5   In another instance, Plaintiffs allege that Trooper Jackson told Jane Doe 1 that "she was going to learn how to 'do a [Correction Officer] today' and that it does not matter that Bryan S. is a sergeant." (*Id.* ¶ 24.) But nowhere in their previous allegations did Plaintiffs allege when or how Trooper Jackson found out about Bryan S.'s identity, employment, and rank at the DOCCS.

6   In their response in opposition, Plaintiffs impliedly contend that Bryan S. suffered injuries as a result of Trooper Jackson denying him immediate medical assistance, preventing the ambulance crew from helping him, and requiring him to walk to the ambulance. (Resp. in Opp'n at 13–14.) However, Plaintiffs neither explicitly include these allegations in their Complaint, nor can the Court draw reasonable inferences alluding the same from Plaintiffs' allegations. But above all, "[i]t is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs." *Fadem v. Ford Motor Co.,* 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005).

7   As noted above, Plaintiffs also filed a notice of motion to amend or correct their complaint that failed to comply with Rule 3(A)(ii) of this Court's Individual Practices. (ECF No. 24.) While the Court denies the motion to amend as procedurally deficient, the Court nonetheless grants Plaintiffs' leave to file an amended complaint. *See Cotiviti, Inc. v. Deagle,* No. 20-CV-02730, 2020 WL 6806434, at *13 (S.D.N.Y. Nov. 19, 2020) (explaining that *sua sponte* leave to amend is appropriate "when justice so requires" (quoting Fed. R. Civ. P. 15(a)(2))).

---

**End of Document**                                                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 8827185

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Mark A. ROARK, Plaintiff,

v.

The People of the State of NEW YORK;

Watertown Police Dep't; Samaritan Hosp.;

and the Watertown District Attorney's

Office, Kristyna S. Mills, [1] Defendants.

5:23-CV-1237 (DNH/ML)

|

Signed December 21, 2023

**Attorneys and Law Firms**

MARK A. ROARK, Plaintiff, Pro Se, Ulster Correctional Facility, Post Office Box 800, Berme Road, Napanoch, New York 12458.

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent a *pro se* complaint in the above captioned action together with an application to proceed *in forma pauperis* and inmate authorization filed by Mark A. Roark ("Plaintiff") to the Court for review. (Dkt. Nos. 1, 2.) For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application and recommend that Plaintiff's Complaint be dismissed in its entirety. (Dkt. Nos. 1, 2.)

**I. BACKGROUND**

Construed as liberally [2] as possible, Plaintiff's Complaint appears to allege that his civil rights were violated by Defendants The People of the State of New York, Watertown Police Department ("WPD"), Samaritan Hospital, and the Watertown District Attorney's Office (collectively "Defendants"). (*See generally* Dkt. No 1.) More specifically, the Complaint alleges that on an unspecified date, time, and year, he was walking around an unspecified town where he was "pulled to the side of the road" by officers employed by Defendant WPD and asked why he was J-walking. (Dkt. No. 1 at 5, 7.) The Complaint alleges that, despite not being "put through any test," the officers insisted that Plaintiff was under the influence of a substance, placed handcuffs on him, and

transported him to the WPD headquarters. (Dkt. No 1 at 5, 7.) The Complaint alleges that while at WPD headquarters, "6 John Doe's came in and assaulted [Plaintiff] while being fully [restrained]." (Dkt. No. 1 at 5.)

The Complaint alleges that after Plaintiff was assaulted, he was taken to Defendant Samaritan Hospital, where he was admitted for medical care. (Dkt. No. 1 at 5.)

The Complaint alleges that Defendant Watertown District Attorney's Office "never spoke to [Plaintiff] nor read [him his] rights" but that he sat in jail for ten days before being transported by the New York State Police to the Clinton County Jail for a probation violation. (Dkt. No. 1 at 6.) The Complaint alleges that no new charges were filed against Plaintiff, he did not plead guilty, and did not appear before a judge. (*Id.*)

Notwithstanding these allegations, the Complaint also alleges that on an unspecified date and at an unspecified time, Plaintiff was "brought in[ ]front of a [j]udge and ... charged [with] orderly misconduct." (Dkt. No. 1 at 8.)

Plaintiff alleges that as a result of the incidents alleged in the Complaint, he has lost his dog, his belongings, and his freedom. (Dkt. No. 1 at 8.)

Based on these factual allegations, Plaintiff appears to assert the following nine claims: (1) a claim of false arrest against Defendant WPD in violation of the Fourth Amendment and 42 U.S.C. § 1983; (2) a claim of excessive force against Defendant WPD in violation of the Fourth Amendment and 42 U.S.C. § 1983; (3) a claim of failure to protect against Defendant WPD in violation of the Fourth Amendment and 42 U.S.C. and § 1983; (4) a claim that his right to equal protection of the law was violated by Defendant WPD pursuant to Fourteenth Amendment and 42 U.S.C. § 1983; (5) a claim that Defendant Watertown District Attorney's Office denied his right of access to the courts pursuant to First Amendment and 42 U.S.C. § 1983; (6) claim of false arrest against Defendant Watertown District Attorney's Office in violation of the Fourth Amendment and 42 U.S.C. § 1983; (7) a claim that Defendant Watertown District Attorney's Office violated his right to freedom of speech pursuant to the First Amendment and 42 U.S.C. § 1983; (8) a claim that Defendant Watertown District Attorney's Office violated his due process rights pursuant to Fourteenth Amendment and 42 U.S.C. § 1983; and (9) a claim that Defendant Watertown District Attorney's Office violated his right to counsel pursuant to the

Sixth Amendment and 42 U.S.C. § 1983. (Dkt. No. 1 at 5-7.) As relief, Plaintiff seeks $5,000,000.00 in damages and would like to "fully charge the officers from [his] assault." (Dkt. No. 1 at 5.)

**\*2** Plaintiff also filed a motion for leave to proceed *in forma pauperis.* (Dkt. No. 2.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). [3] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at \*1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that Plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility (Dkt. No. 2 at 2), and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization required in the Northern District. (Dkt. No. 2 at 3.)

Accordingly, Plaintiff's application to proceed with this action IFP is granted. (Dkt. No. 2.)

## III. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

Having found that Plaintiff met the financial criteria for commencing this action *in forma pauperis*, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also* 28 U.S.C. 1915A(a) ("The court shall review ... as soon as practicable ... a complaint in a civil action in which a prisoner seeks redress from a

governmental entity or officer or employee of a governmental entity."). [4]

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

**\*3** A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *rev'd on other grounds*, 682 F. App'x 30. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

"[E]xtreme caution should be exercised in ordering sua sponte dismissal of a ... complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee).

"Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. Defendants The People of the State of New York and Watertown District Attorney's Office [5]

To the extent Plaintiff seeks money damages against Defendants The People of the State of New York and Watertown District Attorney's Office, those claims are barred by the Eleventh Amendment. *Drawhorne v. Aloise*, 23-CV-1278, 2023 WL 8188396, at *3 (N.D.N.Y. Nov. 27, 2023) (Dancks, M.J.) (citing *Best v. Brown*, 19-CV-3724, 2019 WL 3067118, at *2 (E.D.N.Y. July 12, 2019) (dismissing the plaintiff's claim against the Office of the Queens County District Attorney as barred by the Eleventh Amendment); *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity."); *Rich v. New York*, 21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); *Gentry v. New York*, 21-CV-0319, 2021 WL 3037709, at *6 (N.D.N.Y. June 14, 2021) (Lovric, M.J.) (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities—which were effectively claims against the State of New York—as barred by the Eleventh Amendment) *adopted by*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021) (Suddaby, C.J.)).

Therefore, the undersigned recommends Plaintiff's Section 1983 claims against Defendants The People of the State of New York and Watertown District Attorney's Office be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A. *Drawhorne*, 2023 WL 8188396, at *3.

### B. Defendant Watertown Police Department

**\*4** "Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")), *report and recommendation adopted by*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.). Thus, Defendant WPD is not a proper party which would be amenable to suit.

To the extent that Plaintiff's claims are liberally construed as against the City of Watertown, I recommend that they be dismissed.

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so

widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees. *Connick*, 563 U.S. at 51. However, municipal liability is most tenuous when a claim turns on the failure to train. *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell")). To satisfy the statute, a municipality's failure to train its employees must amount to " 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

There is no basis for municipal liability alleged in the Complaint. Plaintiff essentially complains of a single incident, during which an officer or officers employed by the Watertown Police Department did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Defendant WPD.

**\*5** As a result, I recommend that, to the extent Plaintiff's claims against Defendant WPD are construed as against the City of Watertown, they be dismissed at this time. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at *5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

### C. Defendant Samaritan Hospital

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or

a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Private parties are generally not state actors, and are therefore not usually liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.") (internal quotation marks and citation omitted).

"For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Caballero v. Shayna*, 18-CV-1627, 2019 WL 2491717, at *3 (E.D.N.Y. June 14, 2019) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Caballero*, 2019 WL 2491717, at *3 (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

Plaintiff is suing Samaritan Hospital, a private medical institution.[6] The Complaint alleges no facts suggesting that the hospital is under any of the aforementioned exceptions, or describing how Defendant Samaritan Hospital's actions are otherwise "fairly attributable to the state." Because Plaintiff has failed to plausibly allege that Defendant Samaritan Hospital acted under color of state law, the Complaint fails to state any claims for relief under § 1983. *See White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals ... named as defendants in [plaintiff's] complaint, are generally not proper § 1983 defendants because they do not act under color of state law."). As a result, I recommend that the district court dismiss Plaintiff's claims alleged pursuant to § 1983. *Guillory v. Benedict*, 21-CV-0073, 2021 WL 707076, at *2 (N.D.N.Y. Feb. 4, 2021) (Baxter, M.J.) (recommending dismissal of the plaintiff's § 1983 claims against private medical institution St. Joseph's Hospital), *report and recommendation adopted by*, 2021 WL 706644 (N.D.N.Y. Feb. 23, 2021) (Sharpe, J.); *see Guillory v. Crouse Hosp.*, 21-CV-1177, 2021 WL 5605260, at *2 (N.D.N.Y. Nov.

2, 2021) (Baxter, M.J.) (citing *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014); *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010); *Doe v. Rosenberg*, 996 F. Supp. 343, 352 (S.D.N.Y. 1998), *aff'd*, 166 F.3d 507 (2d Cir. 1999)) ("it remains well settled in this Circuit that a private hospital, and its employees, are not deemed state actors solely because the state has granted them authority to practice medicine within its borders."), *report and recommendation adopted by*, 2021 WL 5585926 (N.D.N.Y. Nov. 30, 2021) (Hurd, J.).

## V. OPPORTUNITY TO AMEND

 **\*6** Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [7]

Here, I find that leave to replead would be futile with respect to Plaintiff's claims against Defendants The People of the State of New York and Watertown District Attorney's Office. [8]

Although I have serious doubts about whether Plaintiff can replead to assert an actionable claim against Defendants WPD and Samaritan Hospital, given that this is the Court's first review of Plaintiff's pleading, out of an abundance of caution, I recommend that he be permitted to replead the Complaint with respect to those claims.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are

insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at \*7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

 **\*7** **ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 2 at 3) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 2 at 3) to the Financial Deputy of the Clerk's office; and it is further

**ORDERED** that the Clerk of the Court add "Watertown District Attorney's Office, Kristyna S. Mills" as a defendant in this action; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS** the Complaint (Dkt. No. 1) **WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD** to the extent that it asserted claims against Defendants The People of the State of New York

and Watertown District Attorney's office, and **WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD** to the extent that it asserted claims against Defendants WPD and Samaritan Hospital; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [9]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [10] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2023 WL 8827185

## Footnotes

1   The Clerk of the Court is directed to add Watertown District Attorney's Office, Kristyna S. Mills to the docket as a defendant in this action. (Dkt. No. 1 at 2.)

2   The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

3   Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

4   To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

5   The Court presumes that Plaintiff intended to assert claims against the Jefferson County District Attorney's Office. Watertown, New York is located within Jefferson County and the current District Attorney of Jefferson County is Kristyna S. Mills.

6   "Samaritan Medical Center (Watertown, New York) is a 290-bed not-for-profit community medical center, offering a full spectrum of inpatient and outpatient health services." Samaritan Health, https://samaritanhealth.com/ (last visited December 20, 2023).

7   *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)— that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

8    The undersigned notes that a dismissal based on the doctrine of sovereign immunity, is consequently a dismissal for lack of subject matter jurisdiction. *Crumble v. United States*, 23-CV-4427, 2023 WL 5102907, at *7 (S.D.N.Y. Aug. 7, 2023); *Nguyen v. Kijakazi*, 20-CV-0607, 2022 WL 542265, at *8 (E.D.N.Y. Feb. 23, 2022). Moreover, the Second Circuit has directed that dismissals for lack of subject matter jurisdiction are to be made without prejudice. *Abadi v. City of New York*, 22-CV-1560, 2023 WL 3295949, at *3 n.3 (2d Cir. May 8, 2023) (summary order) (citing *Katz v. Donna Karan Co.,* 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction.")) ("Because the Court lacks subject matter jurisdiction ... the amended complaint should be dismissed *without* prejudice.") (emphasis in original). Notwithstanding, the undersigned recommends dismissal with prejudice and without leave to amend because any amendment or attempt to bring these claims against Defendants The People of the State of New York and Watertown District Attorney's Office, would be futile. *Drawhorne,* 2023 WL 8188396, at *3 (recommending that the plaintiff's "Section 1983 claims against The People of the State of New York be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A.").

9    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir. 2009) (per curiam).

10    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                       © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 125512
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mark A. ROARK, Plaintiff,

v.

The People of the State of
NEW YORK et al., Defendants.

5:23-CV-1237
|
Signed January 11, 2024

**Attorneys and Law Firms**

MARK A. ROARK, Plaintiff, Pro Se, 23-R-2152, Ulster
Correctional Facility, P.O. Box 800, Berme Road, Napanoch,
NY 12458.

**ORDER ON REPORT & RECOMMENDATION**

DAVID N. HURD, United States District Judge

**\*1** On September 29, 2023, *pro se* plaintiff Mark A.
Roark ("plaintiff"), who is currently incarcerated at Ulster
Correctional Facility, initially filed this civil action in the U.S.
District Court for the Western District of New York. Dkt.
No. 1. Along with his complaint, plaintiff sought leave to
proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.
But the case was transferred to this judicial district because it
involved events that occurred in Watertown, New York, which
is located in Jefferson County. Dkt. Nos. 3, 4.

On December 21, 2023, U.S. Magistrate Judge Miroslav
Lovric granted plaintiff's IFP Application and advised
by Report & Recommendation ("R&R") that plaintiff's
complaint be dismissed with leave to replead some claims but
not others. Dkt. No. 5. As Judge Lovric explained, plaintiff's
claims for money damages against the State of New York
or the Watertown District Attorney's Office (or one of its
named employee for actions taken in the course of her official
duties) were barred by Eleventh Amendment immunity. *Id.*
So Judge Lovric recommended that those claims be dismissed
for lack of subject matter jurisdiction. *Id.* But Judge Lovric

concluded that plaintiff might be able to plead one or more
actionable claims for relief against defendant Watertown
Police Department and/or defendant Samaritan Hospital. *Id.*

Plaintiff has not filed objections, and the time period in which
to do so has expired. *See* Dkt. No. 5. Upon review for clear
error, the R&R is accepted and will be adopted in all respects.
*See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 5) is
ACCEPTED;

2. Plaintiff's complaint (Dkt. No. 1) is DISMISSED;

3. Plaintiff's claims against defendants The People of the State
of New York and Watertown District Attorney's Office are
DISMISSED without prejudice but without leave to amend
for lack of subject matter jurisdiction;

4. Plaintiff's claims against defendants Watertown Police
Department and Samaritan Hospital are DISMISSED with
leave to amend;

5. Plaintiff shall have THIRTY DAYS in which to submit an
amended complaint in accordance with the instructions set
forth in Judge Lovric's R&R;

6. If plaintiff timely files an amended complaint, this matter
shall be referred to Judge Lovric for further review or other
action as appropriate; and

7. If plaintiff does not timely file an amended complaint, the
Clerk of the Court is directed to close this matter without
further Order of the Court.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 125512

---

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 92 of 166

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

2019 WL 981850
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,

v.

SYRACUSE POLICE
DEPARTMENT, et al., Defendants.

Civil Action No. 5:18-CV-1471 (GTS/DEP)
|
Signed 01/07/2019

**Attorneys and Law Firms**

FOR PLAINTIFF: Jeramie White, Pro se, 18-B-0311, Cayuga
Correctional Facility, P.O. Box 1186, Moravia, NY 13118.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

 **\*1** This is a civil rights action brought by *pro se* plaintiff
Jeramie White, a New York State prison inmate, pursuant to
42 U.S.C. § 1983, against the Syracuse Police Department
("SPD") and five of its officers. In his complaint, plaintiff
alleges that defendants violated his constitutional rights
during the course of his arrest on February 13, 2017. Plaintiff's
complaint and accompanying application for leave to proceed
*in forma pauperis* ("IFP") have been referred to me for
review. Based upon my consideration of those materials, I will
(1) grant plaintiff's amended IFP application, (2) recommend
dismissal of his claim against the SPD with leave to replead,
and (3) recommend that his complaint otherwise be accepted
for filing.

I. BACKGROUND
Plaintiff commenced this action on or about December 20,
2018. Dkt. No. 1. According to plaintiff, he and two friends
were on their way to play indoor basketball when their vehicle
was pulled over for a traffic infraction. *Id.* at 4; Dkt. No. 1-1 at
4. Plaintiff alleges that after the stop, defendant William Kittle
forcibly removed White from the vehicle and that Kittle, in
addition to defendants Abraham Mamoun and Shawn Hauck,
proceeded to use excessive force against him during the
course of his arrest. Dkt. No. 1 at 4-5, 6-7; *see also* Dkt. No.
1-1 at 4, 8. Plaintiff further alleges that defendants Altimonda

and Fiorini were present and had an obligation to intervene
and prevent the unlawful use of force, but failed to do so. *Id.*
at 5, 7.

Plaintiff was ultimately arrested and charged with resisting
arrest, in violation of N.Y. Penal Law § 205.30, and
second-degree obstruction of governmental administration, in
violation of N.Y. Penal Law § 195.05. Dkt. No. 1-1 at 4. As
relief, plaintiff seeks compensatory and punitive damages in
the amount of $1,000,000. Dkt. No. 1 at 8.

A. Plaintiff's Amended IFP Application [1]
When a civil action is commenced in a federal district court,
the statutory filing fee, currently set at $400, must ordinarily
be paid. 28 U.S.C. § 1914(a). A court is authorized, however,
to permit a litigant to proceed IFP if it determines that he
is unable to pay the required filing fee. 28 U.S.C. § 1915(a)
(1). [2] Because I conclude that plaintiff meets the requirements
for IFP status, his amended application for leave to proceed
without prepayment of fees is granted. [3]

B. Sufficiency of Plaintiff's Complaint

1. Governing Legal Standard

 **\*2** Because I have found that plaintiff meets the financial
criteria for commencing this case IFP, I must next consider
the sufficiency of the claims set forth in his complaint in light
of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when
a plaintiff seeks to proceed IFP, "the court shall dismiss the
case at any time if the court determines that ... the action ...
(i) is frivolous or malicious; (ii) fails to state a claim on
which relief may be granted; or (iii) seeks monetary relief
against a defendant who is immune from such relief." 28
U.S.C. § 1915(e)(2)(B). Similarly, 28 U.S.C. § 1915A(b)
directs a court to review any "complaint in a civil action in
which a prisoner seeks redress from a governmental entity
or officer or employee of a governmental entity," and to
"identify cognizable claims or dismiss the complaint, or any
portion of the complaint, if the complaint ... is frivolous,
malicious, or fails to state a claim upon which relief may be
granted; or ... seeks monetary relief from a defendant who is
immune from such relief." 28 U.S.C. § 1915A(b); *see also*
*Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("We have
found both sections [1915 and 1915A] applicable to prisoner
proceedings *in forma pauperis*.").

Case 3:23-cv-01337-AMN-ML    Document 7    Filed 04/19/24    Page 93 of 166

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

### 2. Analysis of Plaintiff's Claims

**\*3** Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located. *See Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (citing *Orraca v. City of N.Y.*, 879 F. Supp. 148 (S.D.N.Y. 1995) ); *Turczyn ex rel. McGregor v. City of Utica*, No. 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *see also Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department."). Although I would ordinarily recommend that, for the sake of judicial efficiency, the court substitute the City of Syracuse in place of the SPD, plaintiff's complaint contains no factual allegations that would support a *Monell* claim against the City of Syracuse. Accordingly, I recommend dismissal of plaintiff's claims asserted against the SPD.

With respect to his remaining claims, although plaintiff makes passing reference to his rights arising under the Eighth and Fourth Amendments, *see* Dkt. No. 1 at 6, it is clear from the factual allegations that he is asserting claims for excessive force and the failure to intervene arising under the Fourth Amendment. *See generally* Dkt. No. 1; *see also Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) ("Arrestees may invoke the Fourth Amendment's prohibition against 'unreasonable' seizures."). In light of the court's obligation to liberally construe a *pro se* litigant's pleadings, I find that plaintiff's complaint should be accepted for filing and the

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 94 of 166

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

individual officer defendants should be required to respond in accordance with the local rules of practice for this court and the Federal Rules of Civil Procedure. [4]

### C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, while I recommend dismissal of plaintiff's claim against the SPD, plaintiff could potentially amend his complaint to assert a cognizable cause of action against a defendant, such as the City of Syracuse, which is amenable to suit. Accordingly, I recommend that plaintiff be granted leave to amend his complaint. If plaintiff chooses to file an amended complaint, he must clearly and concisely set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted) ).

## II. SUMMARY, ORDER, AND RECOMMENDATION

**\*4** Having reviewed plaintiff's amended application for leave to proceed in this action IFP, I conclude that he has met the applicable requirements for leave to proceed without prepayment of fees, and will therefore grant his application. Turning to the merits of his complaint, to the extent that it names five police officers and alleges a violation of 42 U.S.C. § 1983, I conclude that those claims are not subject to dismissal at this procedural juncture. I recommend a finding, however, that plaintiff's claim against the SPD is legally deficient and subject to dismissal, but that plaintiff should be afforded an opportunity to amend with respect to that claim. Accordingly, it is hereby

ORDERED that plaintiff's amended application for leave to proceed in this action without prepayment of fees (Dkt. No. 6) is GRANTED; and it is further

ORDERED that plaintiff's original application for leave to proceed in this action without prepayment of fees (Dkt. No. 2) is DENIED as moot; and it is further

RECOMMENDED that plaintiff's complaint (Dkt. No. 1) be accepted for filing with respect to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini; and it is further

RECOMMENDED that plaintiff's remaining cause of action against the Syracuse Police Department be otherwise DISMISSED with leave to replead within thirty days of the issuance of an order adopting this recommendation; and it is further

RECOMMENDED that, in the event plaintiff does not choose to file an amended complaint and the above recommendations are adopted, the case should move forward with respect to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [5] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 95 of 166

**All Citations**

Not Reported in Fed. Supp., 2019 WL 981850

## Footnotes

1    Plaintiff filed both an original and amended motion to proceed in this action IFP. Dkt. Nos. 2, 6. While the two motions contain slightly different information concerning plaintiff's financial status, only the amended motion contains the required certification from an official at the correctional facility in which plaintiff is confined. *Compare* Dkt. No. 3 *with* Dkt. No. 7. Accordingly, plaintiff's original IFP application is denied as incomplete.

2    The total cost for filing a civil action in this court is $400.00, consisting of the civil filing fee of $350.00, *see* 28 U.S.C. § 1914(a), and an administrative fee of $50.00. Although an inmate granted IFP status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. *See* 28 U.S.C. § 1915(b)(3).

3    Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

4    The court expresses no opinion concerning whether plaintiff's claims can survive a properly filed motion to dismiss or motion for summary judgment, or whether he may prevail at trial.

5    If you are proceeding *pro se* and are served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01337-AMN-ML  Document 7  Filed 04/19/24  Page 96 of 166

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

2014 WL 6685476
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kylie Ann TURCZYN, Deceased, by and through
Barbara McGREGOR, as Administratrix of
the Estate of Kylie Ann Turczyn, Plaintiff,
v.
CITY OF UTICA et al., Defendants.

No. 6:13–cv–1357 (GLS/ATB).
|
Signed Nov. 26, 2014.

**Attorneys and Law Firms**

Office of Frank Policelli, Frank Policelli, Esq., of Counsel, Utica, NY, for the Plaintiff.

City of Utica—Corporation Counsel, Mark C. Curley, Esq., Merima Smajic, Esq., Zachary C. Oren, Esq., of Counsel, Utica, NY, for the Defendants.

*MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

**I. Introduction**

**\*1** Plaintiff Kylie Ann Turczyn, deceased, by and through Barbara McGregor, as administratrix of the estate of Kylie Ann Turczyn, commenced this action against defendants City of Utica, City of Utica Police Dept., and Elizabeth Shanley alleging substantive due process claims pursuant to 42 U.S.C. § 1983 and separate state law causes of action. (Am.Compl., Dkt. No. 12.) Pending is defendants' motion to dismiss for failure to state a claim. (Dkt. No. 19.) For the reasons that follow, the motion is granted in part and denied in part.

**II. Background**

**A. Facts** [1]

Shanley, an Oneida County domestic violence investigator, was at all relevant times assigned by the Police Department to accomplish the goals of reducing "occurrence[s] of domestic violence by increasing reporting and by identifying and tracking repeat victims and/or offenders," and "increas[ing] victims' access to supportive services by encouraging [them] to report their abuse, thereby increasing arrest rates for domestic offenders." (Am.Compl.¶ 10.) On June 22, 2012, Thomas Anderson, Turczyn's former boyfriend and the father of her daughter, broke into Turczyn's home armed with a 9 mm rifle. (*Id.* ¶ 11) Anderson repeatedly shot Turczyn, taking her life in view of their four-year-old daughter, G.T. (*Id.*) Anderson then dispatched himself. (*Id.*)

In the twelve months preceding this horrific event, Turczyn made between five and ten complaints to Utica police officers, "including informing them of a specific threat by Anderson to kill her." (*Id.* ¶ 12.) Turczyn specifically told Shanley "that Anderson was armed and had threatened to kill her." (*Id.* ¶ 12(d).) Despite their knowledge of domestic violence between Turczyn and Anderson, neither Shanley, New York State Police, nor Utica Police took any steps to arrest Anderson, investigate Turczyn's complaints, or follow-up with Anderson "as is the policy and protocol of the domestic violence unit." (*Id.* ¶ 14.)

On June 18, 2012, Shanley told Turczyn to seek an order of protection, which she attempted to do, but was told by an unknown person at the Oneida County Family Court to return the following day because the court was " 'too busy.' " (*Id.* ¶¶ 15–16.) The following day, Turczyn left a voice message for Shanley, explaining that she was unable to obtain an order of protection and that Anderson had a gun and planned to kill her that week. (*Id.* ¶¶ 16–18.) Despite her knowledge, "Shanley took no action." (*Id.* ¶ 17.) Shanley also mistakenly believed that Turczyn's issues with Anderson were outside of the purview of Utica Police and should, instead, be dealt with by New York State Police; however, "she did not inform any other police agency or take any action herself." (*Id.* ¶¶ 18, 19, 20.)

**B. Procedural History**

Turczyn commenced this action by filing a complaint on October 31, 2013. (Dkt. No. 1.) Defendants thereafter moved to dismiss. (Dkt. No. 10.) In response, Turczyn filed an amended complaint as of right, which is now the operative pleading. (*See generally* Am. Compl.) In her amended complaint, Turczyn alleges the following causes of action: (1) a denial of substantive due process rights under the Fifth and Fourteenth Amendments due to deliberate indifference; (2) a *Monell* [2] claim against the City; (3) negligence; (4)

Case 3:23-cv-01337-AMN-ML    Document 7    Filed 04/19/24    Page 97 of 166

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

a "derivative action" on behalf of G.T.; and (5) negligent infliction of emotional distress. (*Id.* ¶¶ 37–74.) Defendants now move to dismiss the amended pleading pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 19.)

### III. *Standard of Review*

**\*2** The standard of review under Fed.R.Civ.P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP,* 701 F.Supp.2d 215, 218 (N.D.N.Y.2010).

### IV. *Discussion*

**A. *Preliminary Matters***
At the outset, it is noted that some of Turczyn's claims are deemed abandoned by her failure to oppose their dismissal. *See Barmore v. Aidala,* 419 F.Supp.2d 193, 201–02 (N.D.N.Y.2005) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim, and, in the Northern District of New York, is deemed consent to granting that portion of the motion." (internal citations omitted)); *Hanig v. Yorktown Cent. Sch. Dist.,* 384 F.Supp.2d 710, 723 (S.D.N.Y.2005) ("[B]ecause [the] plaintiff did not address [the] defendant's motion to dismiss with regard to [a particular] claim, it [wa]s deemed abandoned and ... dismissed."). In particular, Turczyn squarely opposed dismissal of her substantive due process claim as against Shanley, (Dkt. No. 20 at 8–12), and scarcely, but sufficiently to save the claim from dismissal for abandonment, offered reasons why her substantive due process claim as against the City should survive defendants' motion, (*id.* at 5–7). Aside from the substantive due process claim, Turczyn failed to offer any opposition to defendants' motion, which also sought dismissal of her pendant causes of action. (Dkt. No. 19, Attach. 6 at 31–40 & n. 15.) Accordingly, Turczyn's pendant state law claims, (Am.Compl.¶¶ 59–74), are dismissed.

Additionally, it is clear that the Police Department must be dismissed as urged by defendants, (Dkt. No. 19, Attach. 6 at 2 n. 2), because "a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence." *Varela v. City of Troy,* No. 1:10–cv–1390, 2014 WL 2176148, at *6 (N.D.N.Y. May 22, 2014) (internal

quotation marks omitted). As such, all claims as against the Police Department are dismissed.

The court also notes that both parties have submitted certain evidence that is outside of the pleadings (Dkt. No. 19, Attachs. 3, 4; Dkt. No. 20, Attachs. 1, 2.) Beginning with defendants, they submitted a January 2, 2013 stipulation of discontinuance, which, on its face, purports to memorialize McGregor's agreement to withdraw the notice of claim filed on behalf of Turczyn and to discontinue with prejudice, (Dkt. No. 19, Attach.3), and a December 28, 2012 letter, which appears to memorialize a conversation regarding the discontinuation of legal action and execution of a stipulation, (Dkt. No. 19, Attach.4). Relying on a single out-of-Circuit decision, *see Raines v. Haverford Coll.,* 849 F.Supp. 1009, 1010 (E.D.Pa.1994), which does not appear directly to support their position nor does it give this court confidence that the kinds of documents at issue here were contemplated by that decision, defendants assert that the documents may be considered on their motion to dismiss as "part of the record of this case." (Dkt. No. 19, Attach. 6 at 25 n. 11.) Turczyn argues that defendants' reliance on the stipulation is inappropriate at this juncture, yet she offers the affidavit of McGregor, submitted to dispute the validity of the stipulation, (Dkt. No. 20, Attach.1), without any explanation as to why the court should or may consider it. (Dkt. No. 20 at 12–13.)

**\*3** The court has excluded from its consideration of this motion to dismiss the exhibits offered by defendants as well as the McGregor affidavit. *See* Fed.R.Civ.P. 12(d). The existence of some document or documents that may extinguish a plaintiff's claims, such as a release or stipulation of discontinuance, is an affirmative defense, *see Beede v. Stiefel Labs., Inc.,* No. 1:13–cv–120, 2014 WL 896725, at *3 (N.D.N.Y. Mar.6, 2014), and " '[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) ... if the defense appears on the face of the complaint,' " *Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.,* 620 F.3d 137, 145 (2d Cir.2010) (quoting *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998)).

Here, the stipulation defense is not apparent from the face of the amended complaint. Moreover, the court refuses to consider the documents in question as part of the record of this case, a proposition for which no in-Circuit authority has been offered nor has any been discovered by this court. As such, the documents offered by defendants, (Dkt. No. 19, Attachs.3, 4), are not properly before the court, and their argument that Turczyn's claims must be dismissed because of

Case 3:23-cv-01337-AMN-ML    Document 7    Filed 04/19/24    Page 98 of 166

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

those documents is rejected. McGregor's affidavit, (Dkt. No. 20, Attach.1), which was also improvidently submitted for consideration, is likewise excluded. The court now turns to the merits of defendants' arguments regarding the substantive due process and *Monell* claims.

### B. *Rule 8*

First, defendants argue that Turczyn's § 1983 due process claim is subject to dismissal under the Rule 8 plausibility analysis—specifically because of Turczyn's failure to allege facts supportive of a sufficient nexus between Shanley's omissions and Turczyn's death. (Dkt. No. 19, Attach. 6 at 23–24.) The court disagrees. The amended complaint plausibly alleges a causal connection between the conduct of defendants—their alleged conscience-shocking failure to protect Turczyn, (Am.Compl.¶ 49)—and her injuries, *i.e.,* the allegations plausibly suggest that defendants' acts were a substantial factor in bringing about Turczyn's injuries. *See Gierlinger v. Gleason,* 160 F.3d 858, 872 (2d Cir.1998) ("[I]n all § 1983 cases[ ] the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."). Accordingly, this argument is rejected.

### C. *Rule 12(b)(6)*

Defendants argue that Turczyn has failed to state a substantive due process claim as against Shanley or the City. (Dkt. No. 19, Attach. 6 at 220, 26–31.) Defendants contend that Turczyn alleges only passive conduct on the part of Shanley that does not give rise to a substantive due process violation. (*Id.* at 10–12.) More generally, defendants assert that Turczyn has failed to plead facts to show "implicit prior assurances through repeated sustained inaction," and that, even if she did, the state action alleged does not rise to the level of conscience-shocking behavior. (*Id.* at 15–20.) Alternatively, defendants argue that Shanley is entitled to qualified immunity. (*Id.* at 20–23.) With respect to the City, defendants contend that Turczyn has failed to allege facts that support a claim of municipal liability. (*Id.* at 26–31.) For reasons explained below, defendants' motion is denied with respect to Turczyn's substantive due process claim against Shanley, but granted with respect to her *Monell* claim against the City.

  **\*4**  Only one relevant exception to the general rule that no substantive due process claim lies for a state's failure to protect an individual from private violence, *see DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), potentially applies in this case. That exception imposes liability for failure to

protect where state actors in some way affirmatively assist "in creating or increasing the danger to the victim." *Okin v. Vill. of Cornwall–On–Hudson Police Dep't,* 577 F.3d 415, 428 (2d Cir.2009) (internal quotation marks and citation omitted); *see Pena v. DePrisco,* 432 F.3d 98, 110 (2d Cir.2005). "[R]epeated, sustained inaction by government officials, in the face of potential acts of violence, might constitute 'prior assurances,' rising to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement." *Okin,* 577 F.3d at 428 (quoting *Dwares v. City of N.Y.,* 985 F.2d 94, 99 (2d Cir.1993)). Moreover, when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct" "even though none of the defendants [is] alleged to have communicated the approval explicitly." *Id.* at 428–29 (quoting *Pena,* 432 F.3d at 111)). In a nutshell, "[t]he affirmative conduct of a government official may give rise to an actionable due process violation if it communicates, explicitly or implicitly, official sanction of private violence." *Id.* at 429.

A successful substantive due process claim also requires that the plaintiff show "that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Id.* at 431 (quoting *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). A hierarchy of intent provides guidance on the likelihood that a particular harm rises to the necessary level. Intentionally inflicted harms are most likely to meet the standard, while reckless and negligent inflictions of harm are each less likely, in graduated downward steps, to show conscience-shocking state action. *Id.* As for recklessly inflicted injuries, " '[d]eliberate indifference that shocks in one environment may not be so patently egregious in another.' " *Id.* (quoting *Lewis,* 523 U.S. at 850). Accordingly, the inquiry is highly fact specific.

Unlike *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005), or *Neal v. Lee County,* Civil Action No. 1:08CV262, 2010 WL 582437 (N.D.Miss. Feb.12, 2010)—cases in which police had limited interaction with either the victim or killer prior to the victim's demise, and upon which defendants rely for dismissal of the claim against Shanley, (Dkt. No. 19, Attach. 6 at 3–5, 7–8)—the allegations here go substantially farther. Turczyn alleges several occasions [3] when Shanley knew of

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 99 of 166

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

Anderson's threatening acts and did nothing, which arguably communicated to him prior assurances that there would be no penalty to pay for his conduct. (Am.Compl.¶¶ 12–13.) "This is so even though none of the defendants are alleged to have communicated the approval explicitly." *Pena,* 432 F.3d at 111. *Okin* has specifically recognized the liability that may arise under these circumstances. *See* 577 F.3d at 428–29 (explaining that liability under § 1983 attaches when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others" (quoting *Pena,* 432 F.3d at 111)).

 **\*5** The amended complaint also pleads facts that demonstrate, at this juncture, egregious behavior that shocks the contemporary conscience. As in *Okin,* the allegations here tend to show that Shanley, who was tasked with accomplishing certain goals related to curbing domestic violence, was deliberately indifferent as to whether or not Anderson would make good on his multiple threats against Turczyn's life over a twelve-month-period. (Am.Compl.¶ ¶ 10, 12.) These allegations sufficiently support that Shanley's affirmative conduct was the product of deliberate indifference that shocks the conscience, and would provide a reasonable jury with a valid basis to so find. *See Conradt v. NBC Universal, Inc.,* 536 F.Supp.2d 380, 394–95 (S.D.N.Y.2008).

Finally, Shanley is not entitled to qualified immunity at this juncture. Her argument on this issue is two-fold. First, Shanley asserts that no constitutional violation occurred, and, second, she claims that, even if a constitutional violation occurred, the right was not clearly established. (Dkt. No. 19, Attach. 6 at 20–23.) The first prong of the argument is easily swept aside by reference to the preceding paragraphs that explain that the amended complaint alleges a cognizable substantive due process violation. As for whether or not the right was clearly established, which is a prerequisite to qualified immunity, *see Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), this question has been resolved by the Second Circuit. On the issue, the court has explained that it is "clearly established," under the state-created danger theory, "that police officers are prohibited from affirmatively contributing to the vulnerability of a known victim by engaging in conduct, whether explicit or implicit, that encourages *intentional* violence against the victim, and as that is the substantive due process violation alleged here, qualified immunity does not apply." *Okin,* 577 F.3d at 434. Accordingly, Shanley is not entitled to qualified immunity at this time.

As for the City, defendants assert that Turczyn has failed to plead a *Monell* claim because the amended complaint merely alleges legal conclusions. (Dkt. No. 19, Attach. 6 at 26–31.) With respect to Turczyn's allegation that the City failed to properly train or supervise its employees, defendants contend that the amended complaint is too conclusory, but that, even if adequately pleaded, Turczyn's municipal liability claim must nonetheless fail because she has not alleged deliberate indifference. (*Id.* at 29–31.)

It is well settled that "the inadequacy of police training may serve as the basis for § 1983 liability ... where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Oh. v. Harris,* 489 U.S. 378, 380, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The deliberate indifference standard is "stringent" and requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* ——U.S. ——, ——, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (internal quotation marks and citation omitted). A showing of deliberate indifference requires that: (1) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of N.Y.,* 974 F.2d 293, 297–98 (2d Cir.1992) (quoting *City of Canton,* 489 U.S. at 390 n. 10).

 **\*6** Here, because Turczyn has failed to adequately plead that the City's failure to train and supervise amounted to deliberate indifference, she has failed to state a claim of municipal liability. The amended complaint uses the label "deliberate indifference" in reference to Turczyn's municipal liability claim and generically references the City's failure to properly train and supervise, but it fails to allege facts that support either conclusory notion. (Am.Compl.¶¶ 45, 52.) Turczyn's pleading failure mandates dismissal of her *Monell* claim against the City. *See Gauthier v. Kirkpatrick,* Civil Action No. 2:13–cv–187, 2013 WL 6407716, at *10 (D.Vt. Dec.9, 2013) (dismissing failure to train *Monell* claim because the plaintiff failed to plead facts that supported the deliberate difference elements); *Santos v. New York City,* 847 F.Supp.2d 573, 577 (S.D.N.Y.2012); *see also Worrell v. City of N.Y.,* No. 12–CV–6151, 2014 WL 1224257, at *13 (E.D.N.Y. Mar. 24, 2014).

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 100 of 166

## V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 19) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** with respect to all claims alleged as against the City of Utica Police Dept. and the Clerk is directed to terminate the City of Utica Police Dept. from this action; and

**GRANTED** with respect to Turczyn's *Monell* claim against the City (Am.Compl.¶ ¶ 51–58), which is hereby **DISMISSED WITHOUT PREJUDICE,** and the Clerk is directed to terminate the City of Utica from this action; and

**GRANTED** with respect to all of Turczyn's pendant state law claims, (Am.Compl.¶ ¶ 59–74), which are hereby **DISMISSED;** and **DENIED** in all other respects; and it is further

**ORDERED** that the sole remaining defendant, Shanley, shall file an appropriate responsive pleading within the time allotted by the rules; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Andrew T. Baxter in order to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 6685476

## Footnotes

1    The facts are presented in the light most favorable to plaintiff.

2    *See Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

3    In fact, Turczyn claims that she lodged five to ten complaints—of which Shanley was aware—with the Utica Police within the twelve months preceding the murder. (Am.Compl.¶¶ 12, 13.) So many occurrences may amount to "repeated [and] sustained inaction ... in the face of potential acts of violence." *Okin,* 577 F.3d at 428.

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 101 of 166

2019 WL 974824
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,
v.
SYRACUSE POLICE DEPARTMENT; Abraham
Mamoun, Syracuse Police Dept.; William Kittle,
Syracuse Police Dept.; Shawn Hauck, Syracuse
Police Dept.; Altimonda, Syracuse Police Dept.;
and Fiorini, Syracuse Police Dept., Defendants.

5:18-CV-1471 (GTS/DEP)
|
Signed 02/28/2019

**Attorneys and Law Firms**

JERAMIE WHITE, 18-B-0311, Plaintiff, Pro Se, Cayuga
Correctional Facility, P.O. Box 1186, Moravia, New York
13118.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Jeramie White ("Plaintiff") against the
Syracuse Police Department and five of its employees
("Defendants"), is United States Magistrate Judge David
E. Peebles' Report-Recommendation recommending that (1)
Plaintiff's Complaint be accepted for filing by the Court
with respect to Plaintiff's Fourth Amendment cause of action
against Defendants Mamoun, Kittle, Hauck, Altimonda and
Fiorini, and (2) Plaintiff's remaining cause of action against
the Syracuse Police Department be dismissed with leave to
replead within thirty days of the issuance of an Order adopting
the Report-Recommendation. (Dkt. No. 9.) Plaintiff did not
submit an objection to the Report-Recommendation, and the
deadline by which to do so has expired. (*See generally* Docket
Sheet.) [1]

Based upon a review of this matter, the Court can find
no clear error in the Report-Recommendation: [2] Magistrate
Judge Peebles employed the proper standards, accurately
recited the facts, and reasonably applied the law to those
facts. As a result, the Court accepts and adopts the Report-
Recommendation for the reasons stated therein; Plaintiff's
Complaint is accepted for filing with respect to his Fourth
Amendment cause of action against Defendants Mamoun,
Kittle, Hauck, Altimonda and Fiorini; and Plaintiff's
remaining cause of action against the Syracuse Police
Department is dismissed with leave to replead within thirty
days of the issuance of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Peebles' Report-
Recommendation (Dkt. No. 9) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint is accepted for filing
with respect to Plaintiff's Fourth Amendment cause of action
against Defendants Mamoun, Kittle, Hauck, Altimonda and
Fiorini; and it is further

**\*2 ORDERED** that Plaintiff's remaining cause of action
against the Syracuse Police Department is **DISMISSED with
leave to replead within THIRTY (30) DAYS** of the issuance
of this Decision and Order.

**ORDERED** that, in the event Plaintiff files an Amended
Complaint within the above-referenced thirty-day period, it
shall be referred to Magistrate Judge Peebles for review; and
it is further

**ORDERED** that, in the event Plaintiff does not file an
Amended Complaint within the above-referenced thirty-
day period, this action shall move forward with respect to
his Fourth Amendment cause of action against Defendants
Mamoun, Kittle, Hauck, Altimonda and Fiorini, and the Clerk
of the Court is directed to issue summonses and USM-285
forms at that time for service by the U.S. Marshal Service.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 974824

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01337-AMN-ML    Document 7    Filed 04/19/24    Page 102 of 166

## Footnotes

1    The Court notes that, on January 11, 2019, Plaintiff filed a letter from the City of Syracuse Citizen Review Board dated December 31, 2018, outlining its findings with respect to this matter. (Dkt. No. 10.) In its letter, the Citizen Review Board upheld Plaintiff's claim for excessive force against "Det. One," recommended a written reprimand against that individual, and absolved "Det. Two," "Sgt. One," and "Lt. One" from wrongdoing regarding the use of excessive force. (*Id.*) The Court does not liberally construe this letter as any sort of Objection to the Report-Recommendation.

2    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 103 of 166

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

2019 WL 5002215

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Laytonia FLAGG, Plaintiff,

v.

NYS DIVISION OF PAROLE; Mark Saben,
Parole Officer; Syracuse Police Dept.; Detective
William Summers, ID#409; D.P. Proud, ID#
0140; Richard Curran, ID# 0066; William
J. Fitzpatrick, Onondaga County, District
Attorney; and Sean Chase, D.A., Defendants.

5:19-CV-886 (TJM/ATB)
|
Signed 08/15/2019

**Attorneys and Law Firms**

LAYTONIA FLAGG, Plaintiff pro se

## ORDER and REPORT-RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge

 *1  The Clerk has sent me an amended [1] civil rights complaint filed by pro se plaintiff Laytonia Flagg. (Dkt. No. 3). Plaintiff Flagg has also filed an application to proceed in forma pauperis ("IFP"). (Dkt. No. 4).

### I. IFP Application

A review of plaintiff's IFP application shows that she declares she is unable to pay the filing fee. (Dkt. No. 4). The court finds that plaintiff meets the financial criteria for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. Neitzke, 490 U.S. at 327; Harkins v. Eldridge, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp., 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

### II. Complaint

Plaintiff states that she is the mother of Mario Leslie, who at the time of the incidents described in the complaint, was on parole. (Amended Complaint ("AC") at 1). [2] On August 8, 2016, defendant New York State Parole Officer ("PO") Mark Saben went to Mr. Leslie's home at 514 Marcellus Street in Syracuse, New York, to conduct a "standard home visit." [3] (Id.) Mr. Leslie lived at the Marcellus Street address with his girlfriend, Tamacha Rodriguez. (Id.) Plaintiff claims that Ms. Rodriguez answered the door for PO Saben, and that Mr. Leslie was "summoned" from his bedroom to speak with defendant Saben. (Id.) After some discussion, PO Saben was walking toward the front door, when he spotted some glassine packets "known to contain heroin." (Id.) Upon discovering the glassine packets, defendant Saben informed Mr. Leslie that he was going to conduct a search of the entire residence according to the conditions of his parole release. (Id.)

 *2  Plaintiff states that, as a result of the subsequent search, the officer discovered a safe, containing a loaded firearm and $31,925 in United States currency. Defendant Saben also discovered a key chain on which were a set

of keys that were identified as keys to plaintiff's residence. Plaintiff claims that "[a]t this point Sr. P.O. Rigby called the Syracuse Police Department."[4] (AC at 2). Plaintiff claims that defendant Rigby spoke to Sergeant A. Llukaci, a detective with the Syracuse Police Department, and Sergeant Llukaci told defendants Detectives William Summers and D.P. Proud to go to the Marcellus Street address. Plaintiff states that upon his arrival, defendant Proud stated that he spoke to Ms. Rodriguez, who told defendant Proud that Mr. Leslie kept his money at his mother's apartment "although there is no affidavit on file to attest to that assertion by the [sic] Det. Proud."

Defendant Summers obtained a warrant for the search of plaintiff's home at 112 Fordham Rd. in Syracuse, New York. (AC Ex. CM/ECF p.16-17). Plaintiff claims that she was not home when the "Syracuse Police" and defendant Saben arrived at her home to execute the search warrant.[5] (AC at 2). The officers entered with the key that was found at Mr. Leslie's Marcellus Street home.[6] (Id.) Plaintiff arrived shortly thereafter, but was denied entrance to her home while the search was being executed. (Id.) Plaintiff states that the officers searched plaintiff's apartment and recovered $40,000.00 in cash from a safe that was located in plaintiff's bedroom closet. Plaintiff alleges that the officers confiscated the money.

Plaintiff claims that the officers did not have probable cause to obtain the warrant to search her home because there was no proof that Ms. Rodriguez ever made the statement that Mr. Leslie kept his money at his mother's house, and thus, the warrant was obtained improperly. Plaintiff claims that her Fourth Amendment rights were violated as the result of the search of her apartment. Plaintiff then claims that after the seizure of her $40,000.00, she informed defendant Assistant District Attorney ("ADA") Sean Chase that the money did not belong to Mr. Leslie, and that the money was plaintiff's savings which she would be using to purchase a new home. (AC at 5). Plaintiff claims that ADA Chase told her that his "office would return the illegally seized money." (Id.)

Plaintiff states that, shortly after the incident, she also filed a "complaint" form to complain about the police "conduct in Plaintiff's home," and to request the "immediate return of the Plaintiff's money." (Id.) Plaintiff states that the District Attorney's Office responded to the "property release" request only after plaintiff obtained the intervention of "a 3[rd] party (Feldman, Kramer & Monaco, P.C.)" (Id.) Plaintiff claims that

the property release form showed that the plaintiff's "legally possessed currency was improperly forfeited along with the monies ($31,925.00) seized at 514 Marcellus St." (AC at 6).

Plaintiff claims that ADA Chase told plaintiff on three separate occasions that her money was going to be returned, but that this was a "stalling tactic" by the District Attorney's Office. ADA Chase told plaintiff that he was waiting to hear from Mr. Leslie's attorney "in hopes of persuading [Mr. Leslie] to sign a forfeiture document that later became clear to the Plaintiff that the forfeiture included what was seized at both residences...." (AC at 6). The forfeiture document states that Mr. Leslie stipulated to the forfeiture of $67,269.00, and that he was not aware of any other person who claimed to be the owner of the property.[7] (AC at 6). Plaintiff alleges that the $40,000.00 was not Mr. Leslie's to forfeit. Plaintiff also alleges that the amount on the stipulation of forfeiture that Mr. Leslie signed does not account for the entire amount seized, even though plaintiff was not given any of her money back. Plaintiff claims that the actual amount seized, including her $40,000.00 was $71,925.00, and that there is $4,656.00 missing from the total. (Id.) Plaintiff also claims that the individuals who seized her money did not have the "warrant in hand" and never gave her a receipt for the money that they took. (AC at 7). Plaintiff states that the money taken from her home was not specifically mentioned in any of the paperwork that was subsequently provided to plaintiff as the result of her inquiries. (AC at 8).

 **\*3** Plaintiff states that she spoke to then-Chief of the Syracuse Police, Frank Fowler, who told plaintiff that her concerns would be "thoroughly investigated," but then did not provide plaintiff a report of the investigation and told plaintiff to file a Freedom of Information request if she wished to see the report. (Id.) Plaintiff has attached correspondence that she received from former Chief Fowler, stating that the report had been forwarded to him and that plaintiff could "be assured that [Fowler would] take the proper administrative action in this case." (AC Ex. CM/ECF p.19).

Although the AC contains a "Second Cause of Action," plaintiff essentially repeats that her Fourth Amendment rights were violated by the defendants' actions in conjunction with the search of her home and the seizure of her money. (AC at 8-9). Plaintiff states that she has not been afforded any documentation that would establish probable cause to search her home. (AC at 9). Plaintiff states that there is no connection between her and Mr. Leslie's "illegal activities," and there was nothing "illegal" found in plaintiff's apartment. (Id.) In

applying a very liberal reading of the AC,[8] the court could interpret plaintiff's second cause of action as a Fourteenth Amendment Due Process claim, asserting that the defendants deprived her of her money without due process of law when they did not return the money after she made various inquiries and did not allow her to challenge the ownership of the money after her son signed the waiver and stipulation.

As stated above, the plaintiff has attached various documents as exhibits to the AC, including (1) the search warrant issued by City Court Judge Kate Rosenthal for plaintiff's apartment at 112 Fordham Rd. (AC Ex. CM/ECF pp.16-17); (2) Plaintiff's Civilian Complaint Report (AC Ex. CM/ECF p.18); a letter to plaintiff from former Chief Fowler (AC Ex. CM/ECF p.19); a letter to plaintiff from David L. Chaplin, II, Esq. on behalf of the Citizen Review Board dated December 2, 2016 (AC Ex. CM/ECF p. 20); a letter to plaintiff from Kimberly M. Osbeck, a paralegal for the Onondaga County District Attorney's Office, dated March 6, 2018 (AC Ex. CM/ECF p. 21); a letter to plaintiff from the Public Integrity Bureau of the New York State Attorney General's Office (AC Ex. CM/ECF p. 22); an "Application for Release of Property," signed by plaintiff on November 2, 2017, together with the unsigned refusal to release the property because the "money [was] forfeited during [a] criminal prosecution." (AC Ex. CM/ECF pp.23-24); the "Waiver and Stipulation," signed by Mr. Leslie on February 28, 2017, relinquishing any rights to the seized money (AC Ex. CM/ECF pp.25-26); "CNYLEADS Narrative Supplement[s]" numbers 1-3, including an "offense page" and a "property supplement," detailing all the property taken from the Marcellus St. address. (AC Ex. CM/ECF pp.27-32).

Plaintiff seeks the return of the $40,000.00 that she claims was taken from her in August of 2016, compensatory damages for the "Syracuse Police Department trashing Plaintiff's two bedrooms at 112 Fordham Rd.," damages for "five hours" worth of lost income[9] on the day of the search, unspecified lost income for the day that she had to appear in court,[10] and "punitive" damages for emotional pain and suffering, including the damages for the delay in purchasing her dream home. (*Id.*)

### III. Eleventh Amendment/New York State Division of Parole

#### A. Legal Standards

**\*4** The Eleventh Amendment provides that states have immunity against suits in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). An action against state officers in their official capacities, or an action against an agency of the state, is tantamount to an action against the state. *Yorktown Medical Laboratory v. Perales*, 948 F.2d 84, 87 (2d Cir. 1991) (official capacity actions); *Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25, 28 n.1 (2d Cir. 1991) (agencies of the state).

#### B. Application

In this case, in addition to the individual parole officers who were allegedly responsible for obtaining the warrant to search her apartment, plaintiff has named the "N.Y.S. Division of Parole." (AC at 1). The Eleventh Amendment prevents plaintiff from suing the N.Y.S. Division of Parole. Thus, to the extent that plaintiff seeks to sue the agency separately from the individual officers, the AC may be dismissed with prejudice, but as further discussed below, plaintiff may sue Mark Saben, one of the individuals who allegedly participated in obtaining the warrant for her home.[11]

### IV. Syracuse Police Department/Municipal Liability

#### A. Legal Standards

Under New York law, departments, like the Syracuse Police Department that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality, and may not sue or be sued. *Hayes v. County of Sullivan*, Nos. 07-CV-667; 09-CV-2071, 2012 WL 1129373, at *24 (S.D.N.Y. March 30, 2012) (citing inter alia *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)).

#### B. Application

To the extent that plaintiff is suing the Syracuse Police Department as an entity separate from the individual police officers who were allegedly involved in obtaining the warrant for her apartment, plaintiff may not do so. Unlike the State of New York itself, against which a suit for damages would be barred by the Eleventh Amendment, the City of Syracuse could be named instead of the Syracuse Police Department. However, the municipality itself may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. Only when the municipality, through the execution of its policies, actually deprives an

individual of his constitutional rights, is it liable for the injury. *Id.* at 694. To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).

**\*5** As it is written, the AC makes no claims that would allow the plaintiff to name the City of Syracuse as a defendant in this action. Plaintiff essentially complains of a single incident, during which the officers did not act properly in obtaining a warrant for her home and did not act properly in executing the warrant in her case. There is no indication that plaintiff can assert a policy or custom which would support municipal liability based on these facts. While plaintiff may not sue the Syracuse Police Department in any event, and while the court will not sua sponte replace the Syracuse Police Department with the City of Syracuse, the court does not rule out that, upon proper pleading, plaintiff could amend her AC to assert such a claim against the City of Syracuse.

However, plaintiff is warned that any such facts must plausibly suggest her claim, and that simply making a conclusory allegation of a "policy or custom" is insufficient to assert municipal liability. *Sulaymu Bey v. City of New York*, No. 17-CV-3563. 2019 WL 1434597, at \*10 (E.D.N.Y. Mar. 29, 2019); *Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 277 (W.D.N.Y. 2014) (conclusory allegations which merely recite the elements for stating a *Monell* claim are insufficient to state a claim for municipal liability) (citing inter alia *Genovese v. Town of Southhampton*, 92 F. Supp. 2d 8, 25 (E.D.N.Y. 2013)). A single incident, particularly if it involved individuals below the policy-making, level is insufficient to state a *Monell* claim. *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998). As discussed below, plaintiff may proceed against the individual officers who she claims violated her constitutional rights: Detective Summers, D.P. Proud; and Richard Curran.

## V. <u>Prosecutorial Immunity/Personal Involvement</u>

### A. Legal Standards

#### 1. Prosecutorial Immunity

Prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County*

*of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

### 2. Personal Involvement

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.* *See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**\*6** Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*.

*Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.' " *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

### B. Application

Plaintiff has named the Onondaga County District Attorney, William J. Fitzpatrick, together with one of his Assistant District Attorneys, Sean Chase. (AC ¶ 3(c)). Plaintiff claims that she spoke to ADA Chase "right after the seizure," she explained to him that the money did not belong to her son, the money was hers, and she "produced tax returns" for the last five consecutive years in an effort to show that she "legally possessed the money." (AC at 5). She claims that "[k]nowing this," ADA Chase told plaintiff that his office would return the illegally seized money. (*Id.*) Plaintiff claims that notwithstanding ADA Chase's statement, he did not return the money, and allegedly "stalled" plaintiff until her son signed the waiver of forfeiture document, which included the total amount of money that was seized from both residences. (AC at 6). The initiation of civil asset forfeiture proceedings is a prosecutorial function that has been afforded absolute immunity. *See Byrne v. City of New York*, 736 Fed. App'x 263, 266 (2d Cir. 2018) (Second Circuit precedent affords absolute immunity to government attorneys who initiate civil suits) (quoting *Spear v. Town of W. Hartford*, 954 F.2d 63, 66 (2d Cir. 1992); *Mangiafico v. Blumenthal*, 471 F.3d 391, 395 (2d Cir. 2006)).

ADA Chase was allegedly handling the forfeiture proceeding, and even though he did not have to initiate court proceedings because Mr. Leslie signed the stipulation and waiver, the document stated that "I have concluded that the District Attorney would likely establish that the above-mentioned property is subject to forfeiture pursuant to Article 13-A [of the NY Civil Practice Law and Rules] and the District Attorney would likely prevail in such a forfeiture action." [12] (AC Ex. CM/ECF p.25). This document took the place of an in-court forfeiture proceeding, which would have been held pursuant to N.Y. Civ. Prac. L. & R. § 1311 (Forfeiture Actions). Thus, ADA Chase is entitled to absolute immunity with respect to his conduct relative to the forfeiture of the

money seized, even if plaintiff claimed that some of the money belonged to her. [13] This is true whether ADA Chase's conduct was proper or improper, and whether or not he was mistaken in obtaining Mr. Leslie's waiver and stipulation of forfeiture. Thus, to the extent that plaintiff raises due process violations with respect to her interest in the funds, they must be dismissed as against ADA Chase.

**\*7** Plaintiff has not asserted any facts against defendant Fitzpatrick. [14] He does not appear to have been involved in any way in obtaining the search warrant for plaintiff's apartment, in executing the search warrant for plaintiff's apartment, or in the forfeiture proceedings with respect to the money seized. Thus, any claims against him individually would fail for lack of personal involvement. If he had been personally involved in the forfeiture, he, like ADA Chase, would be entitled to absolute prosecutorial immunity. [15] Thus, plaintiff's amended complaint may be dismissed with prejudice as against defendants ADA Chase and DA Fitzpatrick.

## VI. Search and Seizure

### A. Legal Standards

"It is well-settled that in cases raising claims under the Fourth Amendment of unauthorized execution of a search warrant '[t]he validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to disclose, to the issuing Magistrate.' " *Arroyo v. City of Buffalo*, No. 15-CV-753, 2018 WL 4376798, at *3 (W.D.N.Y. Sept. 13, 2018) (quoting *Velardi v. Walsh*, 40 F.3d 569, 575 n. 2 (2d Cir. 1994) (internal quotation marks omitted)). A warrant is not invalid for section 1983 purposes if it is " 'based on seemingly reliable information which is later found to be erroneous.' " *Id.* (quoting *Lewis v. City of Mt. Vernon, N.Y.*, 984 F. Supp. 748, 756 (S.D.N.Y. 1997)).

### B. Application

Although the court has concerns about the merits of this action, at this stage of the proceedings, the court finds that any Fourth Amendment claims that plaintiff may have against defendants Saben, Summers, Proud, and Curran may survive initial review. [16] Plaintiff seems to claim that the warrant for her home was based on false information given the court, which plaintiff claims was the only basis for the warrant. While it may be that a close review of the documents provided with the amended complaint, together with any other evidence

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 108 of 166

or argument by defendants in a properly supported dispositive motion, may show otherwise, the court is not currently in a position to make factual or other determinations regarding the validity of the warrant or any other claims that plaintiff may have regarding the search of her home.

**\*8** The court also notes that because of the waiver and stipulation, signed by Mr. Leslie, there was no formal forfeiture proceeding in New York State Court as provided in N.Y. Civ. Prac. L. & R. § 1311. Thus, it is unclear how the plaintiff could have challenged the forfeiture.[17] The court also makes no findings regarding the validity of any defenses that the defendants may assert regarding the incident in question.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 4) is **GRANTED**, and it is

**RECOMMENDED**, that the amended complaint (Dkt. No. 3) be **DISMISSED IN ITS ENTIRETY** as against defendants **N.Y.S. DIVISION OF PAROLE; SYRACUSE POLICE DEPARTMENT; WILLIAM J. FITZPATRICK; AND SEAN CHASE**, and it is

**RECOMMENDED**, that to the extent that the AC may be read as naming **SGT. LLUKACI or PO RIGBY**, the AC may be dismissed **WITHOUT PREJUDICE** for failure to state a claim, and it is

**RECOMMENDED**, that if the District Court adopts this Recommendation, the case be returned to me for further proceedings, including an order serving the remaining defendants: **SABEN, SUMMERS, PROUD, and CURRAN**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

### All Citations

Not Reported in Fed. Supp., 2019 WL 5002215

---

## Footnotes

1   When plaintiff filed her original complaint, the case was administratively closed due to plaintiff's failure to comply with the filing fee requirement. (Dkt. No. 2). Prior to re-filing her motion to proceed IFP, (Dkt. No. 4), plaintiff also filed an amended complaint, which the court will review as the operative pleading. The case was re-opened on August 1, 2019. (Dkt. No. 6).

2   Plaintiff numbered the pages of the "Fact" section of the amended complaint at the bottom of the page. The court will cite to the page numbers contained on the actual document. Plaintiff has attached a series of documents as exhibits to the amended complaint which she did not number. The court will cite to the plaintiff's exhibits ("AC Ex.") with the page number as assigned by the court's electronic filing system ("CM/ECF").

3   Plaintiff was not present for any of the incidents that she describes in her complaint until she arrived at her house during the subsequent search of her property. Plaintiff appears to be taking her recitation of the background facts from the police reports and other documents that she has attached to her amended complaint. (AC Ex. CM/ECF pp. 16-32). The court is stating the facts as plaintiff has described them in the amended complaint.

4   This is the first time that another parole officer was mentioned in plaintiff's statement of facts. The court will assume that defendant Rigby was at the residence from the beginning, but it is not completely clear from the papers.

5   Plaintiff does not allege that PO Rigby participated in the search of her apartment.

6   Plaintiff states that the officers were in possession of the door key "prior to their actual possession of the warrant for 112 Fordham Rd." (AC at 2).

7   Plaintiff has attached a copy of Mr. Leslie's "Waiver and Stipulation." (AC Ex. CM/ECF p.25-26). Plaintiff claims that this document was obtained after she asked for the return of the money several times from the District Attorney's Office, the Citizen Review Board, and the Syracuse Police Department. (AC at 7). When she failed to get a "truthful" response, she contacted Feldman, Kramer & Monaco, P.C. (*Id.*) The document was sent to the attorneys' office after the firm wrote a letter of inquiry. (*Id.*)

8   Plaintiff is pro se, and the court must interpret plaintiff's complaint liberally. *Sealed Plaintiff v. Sealed Defendants*, 537 F.3d 185, 191 (2d Cir. 2008). The court considers all possible grounds for relief that plaintiff could be raising. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

9   Plaintiff states that she works from home, and could not work for the time that the officers were searching her apartment. (AC at 10).

10   Apparently, on the day that the officers searched plaintiff's apartment, they found a "weed roach" and gave plaintiff an appearance ticket, which was later dismissed after plaintiff appeared in court. (AC at 10). Plaintiff seeks lost income for the time that it took to appear in court. (*Id.*)

11   It is unclear whether plaintiff meant to name PO Rigby as a defendant herein. He is mentioned briefly in the body of the complaint and was apparently present during the Marcellus St. search, but is not listed in the caption of the complaint, and plaintiff submitted no proposed summons for PO Rigby. In addition, it does not appear from the facts as stated by plaintiff that PO Rigby was involved in obtaining the search warrant for plaintiff's apartment, nor is it even apparent that he was present during the search of plaintiff's apartment. Thus, plaintiff does not state any claims against PO Rigby, and to the extent that she meant to name him as a defendant, the AC should be dismissed as against him.

12   Article 13-a is entitled "Proceeds of a Crime -Forfeiture." N.Y. Civ. Prac. L. & R. Art. 13-a

13   Although not relevant to the court's decision because it is based on absolute immunity of the prosecutor, regardless of whether Mr. Leslie's assertions in the document were correct, the court notes that plaintiff's statement herein is contrary to her son's **sworn** assertion in the document. Plaintiff states that ADA Chase told plaintiff that they were waiting to hear from Mr. Leslie's attorney regarding whether he was going to sign the forfeiture document. (AC at 6). Plaintiff claims that her son signed the document "under duress." Plaintiff cannot assert any claims regarding her son, and in any event, her son was, by her own statement, represented by counsel during the matter.

14   Plaintiff requests only damages, including a return of the $40,000.00 as relief in this action. She does not seem to be asking for any form of injunctive relief. Even though plaintiff asks for a "return" of money, the Eleventh Amendment does not "recognize a distinction 'between monetary damages and money in which plaintiff has a property interest.' " *Local 851 of Internat'l Broth. of Teamsters v. Thyssen Haniel Logistics, Inc.*, 90 F. Supp. 2d 237, 249-50 (E.D.N.Y. 2000) (quoting *Yorktown Medical Lab., Inc. v. Perales*, 949 F.2d 84, 87-88 (2d Cir. 1991)). The District Attorney could have been the proper party in a declaratory judgment under

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 110 of 166

New York State law under N.Y. Civ. Prac. L & R. 1327 (Proceedings to Determine Adverse Claims), which plaintiff could have filed within six months of the stipulation, signed by Mr. Leslie.

15    To the extent that the complaint could be interpreted as suing either ADA Chase or DA Fitzpatrick in their "official capacities," the Eleventh Amendment would bar any such suit. *See Blessinger v. City of New York*, No. 17-CV-108, 2017 WL 3841873, at *1-2 (S.D.N.Y. Sept. 1, 2017) (prosecutors are entitled to Eleventh Amendment immunity when they are acting in their prosecutorial capacity because they are acting as state officials rather than city or county employees) (citing *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 157 (S.D.N.Y. 2007) and *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) (when prosecuting a criminal matter, a district attorney in New York State represents the State not the County)).

16    Although plaintiff has included a proposed summons for Sgt. Llukaci, this individual is not listed in the caption of the AC, nor is he included in the section of the form-AC which lists the individual Syracuse Police Officers. (AC ¶ 3(c)) for whom she has included identification numbers. In any event, plaintiff's only allegations against Sgt. Llukaci are that he sent defendants Proud and Summers to Mr. Leslie's Marcellus St. home after the parole officers found contraband therein. Plaintiff does not allege that he was personally involved in any of the conduct that she claims violated her constitutional rights. He was not at either residence and was not involved in obtaining the allegedly invalid warrant. Thus, to the extent that plaintiff is trying to sue Sgt. Llukaci, the AC may be dismissed as against this defendant.

17    The court does note that section 1311(7) provides that an innocent owner may challenge the forfeiture and regain the forfeited property if the owner never received notice of the forfeiture. In addition, section 1327 provides for an "interested person" to bring a proceeding to determine adverse claims, even after the forfeiture action was settled by stipulation. *See Tupi Cambios, S.A. v. Morganthau*, 48 A.D.2d 278 (1st Dep't 2008). In *Tupi Cambios*, the District Attorney was the proper "defendant" in New York State Court.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01337-AMN-ML Document 7 Filed 04/19/24 Page 111 of 166

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

2019 WL 5002215
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Laytonia FLAGG, Plaintiff,

v.

NYS DIVISION OF PAROLE; Mark Saben,
Parole Officer; Syracuse Police Dept.; Detective
William Summers, ID#409; D.P. Proud, ID#
0140; Richard Curran, ID# 0066; William
J. Fitzpatrick, Onondaga County, District
Attorney; and Sean Chase, D.A., Defendants.

5:19-CV-886 (TJM/ATB)
|
Signed 08/15/2019

**Attorneys and Law Firms**

LAYTONIA FLAGG, Plaintiff pro se

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

*1 The Clerk has sent me an amended [1] civil rights complaint filed by pro se plaintiff Laytonia Flagg. (Dkt. No. 3). Plaintiff Flagg has also filed an application to proceed in forma pauperis ("IFP"). (Dkt. No. 4).

**I. IFP Application**

A review of plaintiff's IFP application shows that she declares she is unable to pay the filing fee. (Dkt. No. 4). The court finds that plaintiff meets the financial criteria for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. Neitzke, 490 U.S. at 327; Harkins v. Eldridge, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp., 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II. Complaint**

Plaintiff states that she is the mother of Mario Leslie, who at the time of the incidents described in the complaint, was on parole. (Amended Complaint ("AC") at 1). [2] On August 8, 2016, defendant New York State Parole Officer ("PO") Mark Saben went to Mr. Leslie's home at 514 Marcellus Street in Syracuse, New York, to conduct a "standard home visit." [3] (Id.) Mr. Leslie lived at the Marcellus Street address with his girlfriend, Tamacha Rodriguez. (Id.) Plaintiff claims that Ms. Rodriguez answered the door for PO Saben, and that Mr. Leslie was "summoned" from his bedroom to speak with defendant Saben. (Id.) After some discussion, PO Saben was walking toward the front door, when he spotted some glassine packets "known to contain heroin." (Id.) Upon discovering the glassine packets, defendant Saben informed Mr. Leslie that he was going to conduct a search of the entire residence according to the conditions of his parole release. (Id.)

*2 Plaintiff states that, as a result of the subsequent search, the officer discovered a safe, containing a loaded firearm and $31,925 in United States currency. Defendant Saben also discovered a key chain on which were a set

Case 3:23-cv-01337-AMN-ML Document 7 Filed 04/19/24 Page 112 of 166

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

of keys that were identified as keys to plaintiff's residence. Plaintiff claims that "[a]t this point Sr. P.O. Rigby called the Syracuse Police Department."[4] (AC at 2). Plaintiff claims that defendant Rigby spoke to Sergeant A. Llukaci, a detective with the Syracuse Police Department, and Sergeant Llukaci told defendants Detectives William Summers and D.P. Proud to go to the Marcellus Street address. Plaintiff states that upon his arrival, defendant Proud stated that he spoke to Ms. Rodriguez, who told defendant Proud that Mr. Leslie kept his money at his mother's apartment "although there is no affidavit on file to attest to that assertion by the [sic] Det. Proud."

Defendant Summers obtained a warrant for the search of plaintiff's home at 112 Fordham Rd. in Syracuse, New York. (AC Ex. CM/ECF p.16-17). Plaintiff claims that she was not home when the "Syracuse Police" and defendant Saben arrived at her home to execute the search warrant.[5] (AC at 2). The officers entered with the key that was found at Mr. Leslie's Marcellus Street home.[6] (Id.) Plaintiff arrived shortly thereafter, but was denied entrance to her home while the search was being executed. (Id.) Plaintiff states that the officers searched plaintiff's apartment and recovered $40,000.00 in cash from a safe that was located in plaintiff's bedroom closet. Plaintiff alleges that the officers confiscated the money.

Plaintiff claims that the officers did not have probable cause to obtain the warrant to search her home because there was no proof that Ms. Rodriguez ever made the statement that Mr. Leslie kept his money at his mother's house, and thus, the warrant was obtained improperly. Plaintiff claims that her Fourth Amendment rights were violated as the result of the search of her apartment. Plaintiff then claims that after the seizure of her $40,000.00, she informed defendant Assistant District Attorney ("ADA") Sean Chase that the money did not belong to Mr. Leslie, and that the money was plaintiff's savings which she would be using to purchase a new home. (AC at 5). Plaintiff claims that ADA Chase told her that his "office would return the illegally seized money." (Id.)

Plaintiff states that, shortly after the incident, she also filed a "complaint" form to complain about the police "conduct in Plaintiff's home," and to request the "immediate return of the Plaintiff's money." (Id.) Plaintiff states that the District Attorney's Office responded to the "property release" request only after plaintiff obtained the intervention of "a 3[rd] party (Feldman, Kramer & Monaco, P.C.)" (Id.) Plaintiff claims that

the property release form showed that the plaintiff's "legally possessed currency was improperly forfeited along with the monies ($31,925.00) seized at 514 Marcellus St." (AC at 6).

Plaintiff claims that ADA Chase told plaintiff on three separate occasions that her money was going to be returned, but that this was a "stalling tactic" by the District Attorney's Office. ADA Chase told plaintiff that he was waiting to hear from Mr. Leslie's attorney "in hopes of persuading [Mr. Leslie] to sign a forfeiture document that later became clear to the Plaintiff that the forfeiture included what was seized at both residences...." (AC at 6). The forfeiture document states that Mr. Leslie stipulated to the forfeiture of $67,269.00, and that he was not aware of any other person who claimed to be the owner of the property.[7] (AC at 6). Plaintiff alleges that the $40,000.00 was not Mr. Leslie's to forfeit. Plaintiff also alleges that the amount on the stipulation of forfeiture that Mr. Leslie signed does not account for the entire amount seized, even though plaintiff was not given any of her money back. Plaintiff claims that the actual amount seized, including her $40,000.00 was $71,925.00, and that there is $4,656.00 missing from the total. (Id.) Plaintiff also claims that the individuals who seized her money did not have the "warrant in hand" and never gave her a receipt for the money that they took. (AC at 7). Plaintiff states that the money taken from her home was not specifically mentioned in any of the paperwork that was subsequently provided to plaintiff as the result of her inquiries. (AC at 8).

**\*3** Plaintiff states that she spoke to then-Chief of the Syracuse Police, Frank Fowler, who told plaintiff that her concerns would be "thoroughly investigated," but then did not provide plaintiff a report of the investigation and told plaintiff to file a Freedom of Information request if she wished to see the report. (Id.) Plaintiff has attached correspondence that she received from former Chief Fowler, stating that the report had been forwarded to him and that plaintiff could "be assured that [Fowler would] take the proper administrative action in this case." (AC Ex. CM/ECF p.19).

Although the AC contains a "Second Cause of Action," plaintiff essentially repeats that her Fourth Amendment rights were violated by the defendants' actions in conjunction with the search of her home and the seizure of her money. (AC at 8-9). Plaintiff states that she has not been afforded any documentation that would establish probable cause to search her home. (AC at 9). Plaintiff states that there is no connection between her and Mr. Leslie's "illegal activities," and there was nothing "illegal" found in plaintiff's apartment. (Id.) In

applying a very liberal reading of the AC, [8] the court could interpret plaintiff's second cause of action as a Fourteenth Amendment Due Process claim, asserting that the defendants deprived her of her money without due process of law when they did not return the money after she made various inquiries and did not allow her to challenge the ownership of the money after her son signed the waiver and stipulation.

As stated above, the plaintiff has attached various documents as exhibits to the AC, including (1) the search warrant issued by City Court Judge Kate Rosenthal for plaintiff's apartment at 112 Fordham Rd. (AC Ex. CM/ECF pp.16-17); (2) Plaintiff's Civilian Complaint Report (AC Ex. CM/ECF p.18); a letter to plaintiff from former Chief Fowler (AC Ex. CM/ECF p.19); a letter to plaintiff from David L. Chaplin, II, Esq. on behalf of the Citizen Review Board dated December 2, 2016 (AC Ex. CM/ECF p. 20); a letter to plaintiff from Kimberly M. Osbeck, a paralegal for the Onondaga County District Attorney's Office, dated March 6, 2018 (AC Ex. CM/ECF p. 21); a letter to plaintiff from the Public Integrity Bureau of the New York State Attorney General's Office (AC Ex. CM/ECF p. 22); an "Application for Release of Property," signed by plaintiff on November 2, 2017, together with the unsigned refusal to release the property because the "money [was] forfeited during [a] criminal prosecution." (AC Ex. CM/ECF pp.23-24); the "Waiver and Stipulation," signed by Mr. Leslie on February 28, 2017, relinquishing any rights to the seized money (AC Ex. CM/ECF pp.25-26); "CNYLEADS Narrative Supplement[s]" numbers 1-3, including an "offense page" and a "property supplement," detailing all the property taken from the Marcellus St. address. (AC Ex. CM/ECF pp.27-32).

Plaintiff seeks the return of the $40,000.00 that she claims was taken from her in August of 2016, compensatory damages for the "Syracuse Police Department trashing Plaintiff's two bedrooms at 112 Fordham Rd.," damages for "five hours" worth of lost income [9] on the day of the search, unspecified lost income for the day that she had to appear in court, [10] and "punitive" damages for emotional pain and suffering, including the damages for the delay in purchasing her dream home. (*Id.*)

## III. Eleventh Amendment/New York State Division of Parole

### A. Legal Standards

**\*4** The Eleventh Amendment provides that states have immunity against suits in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). An action against state officers in their official capacities, or an action against an agency of the state, is tantamount to an action against the state. *Yorktown Medical Laboratory v. Perales*, 948 F.2d 84, 87 (2d Cir. 1991) (official capacity actions); *Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25, 28 n.1 (2d Cir. 1991) (agencies of the state).

### B. Application

In this case, in addition to the individual parole officers who were allegedly responsible for obtaining the warrant to search her apartment, plaintiff has named the "N.Y.S. Division of Parole." (AC at 1). The Eleventh Amendment prevents plaintiff from suing the N.Y.S. Division of Parole. Thus, to the extent that plaintiff seeks to sue the agency separately from the individual officers, the AC may be dismissed with prejudice, but as further discussed below, plaintiff may sue Mark Saben, one of the individuals who allegedly participated in obtaining the warrant for her home. [11]

## IV. Syracuse Police Department/Municipal Liability

### A. Legal Standards

Under New York law, departments, like the Syracuse Police Department that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality, and may not sue or be sued. *Hayes v. County of Sullivan*, Nos. 07-CV-667; 09-CV-2071, 2012 WL 1129373, at *24 (S.D.N.Y. March 30, 2012) (citing inter alia *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)).

### B. Application

To the extent that plaintiff is suing the Syracuse Police Department as an entity separate from the individual police officers who were allegedly involved in obtaining the warrant for her apartment, plaintiff may not do so. Unlike the State of New York itself, against which a suit for damages would be barred by the Eleventh Amendment, the City of Syracuse could be named instead of the Syracuse Police Department. However, the municipality itself may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. Only when the municipality, through the execution of its policies, actually deprives an

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01337-AMN-ML    Document 7    Filed 04/19/24    Page 114 of 166

individual of his constitutional rights, is it liable for the injury. *Id.* at 694. To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).

**\*5** As it is written, the AC makes no claims that would allow the plaintiff to name the City of Syracuse as a defendant in this action. Plaintiff essentially complains of a single incident, during which the officers did not act properly in obtaining a warrant for her home and did not act properly in executing the warrant in her case. There is no indication that plaintiff can assert a policy or custom which would support municipal liability based on these facts. While plaintiff may not sue the Syracuse Police Department in any event, and while the court will not sua sponte replace the Syracuse Police Department with the City of Syracuse, the court does not rule out that, upon proper pleading, plaintiff could amend her AC to assert such a claim against the City of Syracuse.

However, plaintiff is warned that any such facts must plausibly suggest her claim, and that simply making a conclusory allegation of a "policy or custom" is insufficient to assert municipal liability. *Sulaymu Bey v. City of New York*, No. 17-CV-3563. 2019 WL 1434597, at \*10 (E.D.N.Y. Mar. 29, 2019); *Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 277 (W.D.N.Y. 2014) (conclusory allegations which merely recite the elements for stating a *Monell* claim are insufficient to state a claim for municipal liability) (citing inter alia *Genovese v. Town of Southhampton*, 92 F. Supp. 2d 8, 25 (E.D.N.Y. 2013)). A single incident, particularly if it involved individuals below the policy-making, level is insufficient to state a *Monell* claim. *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998). As discussed below, plaintiff may proceed against the individual officers who she claims violated her constitutional rights: Detective Summers, D.P. Proud; and Richard Curran.

## V. <u>Prosecutorial Immunity/Personal Involvement</u>

### A. Legal Standards

#### 1. Prosecutorial Immunity

Prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County*

*of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

### 2. Personal Involvement

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**\*6** Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*.

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 115 of 166

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

*Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.' " *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

### B. Application

Plaintiff has named the Onondaga County District Attorney, William J. Fitzpatrick, together with one of his Assistant District Attorneys, Sean Chase. (AC ¶ 3(c)). Plaintiff claims that she spoke to ADA Chase "right after the seizure," she explained to him that the money did not belong to her son, the money was hers, and she "produced tax returns" for the last five consecutive years in an effort to show that she "legally possessed the money." (AC at 5). She claims that "[k]nowing this," ADA Chase told plaintiff that his office would return the illegally seized money. (*Id.*) Plaintiff claims that notwithstanding ADA Chase's statement, he did not return the money, and allegedly "stalled" plaintiff until her son signed the waiver of forfeiture document, which included the total amount of money that was seized from both residences. (AC at 6). The initiation of civil asset forfeiture proceedings is a prosecutorial function that has been afforded absolute immunity. *See Byrne v. City of New York*, 736 Fed. App'x 263, 266 (2d Cir. 2018) (Second Circuit precedent affords absolute immunity to government attorneys who initiate civil suits) (quoting *Spear v. Town of W. Hartford*, 954 F.2d 63, 66 (2d Cir. 1992); *Mangiafico v. Blumenthal*, 471 F.3d 391, 395 (2d Cir. 2006)).

ADA Chase was allegedly handling the forfeiture proceeding, and even though he did not have to initiate court proceedings because Mr. Leslie signed the stipulation and waiver, the document stated that "I have concluded that the District Attorney would likely establish that the above-mentioned property is subject to forfeiture pursuant to Article 13-A [of the NY Civil Practice Law and Rules] and the District Attorney would likely prevail in such a forfeiture action." [12] (AC Ex. CM/ECF p.25). This document took the place of an in-court forfeiture proceeding, which would have been held pursuant to N.Y. Civ. Prac. L. & R. § 1311 (Forfeiture Actions). Thus, ADA Chase is entitled to absolute immunity with respect to his conduct relative to the forfeiture of the

money seized, even if plaintiff claimed that some of the money belonged to her. [13] This is true whether ADA Chase's conduct was proper or improper, and whether or not he was mistaken in obtaining Mr. Leslie's waiver and stipulation of forfeiture. Thus, to the extent that plaintiff raises due process violations with respect to her interest in the funds, they must be dismissed as against ADA Chase.

**\*7** Plaintiff has not asserted any facts against defendant Fitzpatrick. [14] He does not appear to have been involved in any way in obtaining the search warrant for plaintiff's apartment, in executing the search warrant for plaintiff's apartment, or in the forfeiture proceedings with respect to the money seized. Thus, any claims against him individually would fail for lack of personal involvement. If he had been personally involved in the forfeiture, he, like ADA Chase, would be entitled to absolute prosecutorial immunity. [15] Thus, plaintiff's amended complaint may be dismissed with prejudice as against defendants ADA Chase and DA Fitzpatrick.

### VI. Search and Seizure

#### A. Legal Standards

"It is well-settled that in cases raising claims under the Fourth Amendment of unauthorized execution of a search warrant '[t]he validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to disclose, to the issuing Magistrate.' " *Arroyo v. City of Buffalo*, No. 15-CV-753, 2018 WL 4376798, at *3 (W.D.N.Y. Sept. 13, 2018) (quoting *Velardi v. Walsh*, 40 F.3d 569, 575 n. 2 (2d Cir. 1994) (internal quotation marks omitted)). A warrant is not invalid for section 1983 purposes if it is " 'based on seemingly reliable information which is later found to be erroneous.' " *Id.* (quoting *Lewis v. City of Mt. Vernon, N.Y.*, 984 F. Supp. 748, 756 (S.D.N.Y. 1997)).

#### B. Application

Although the court has concerns about the merits of this action, at this stage of the proceedings, the court finds that any Fourth Amendment claims that plaintiff may have against defendants Saben, Summers, Proud, and Curran may survive initial review. [16] Plaintiff seems to claim that the warrant for her home was based on false information given the court, which plaintiff claims was the only basis for the warrant. While it may be that a close review of the documents provided with the amended complaint, together with any other evidence

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 116 of 166

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

or argument by defendants in a properly supported dispositive motion, may show otherwise, the court is not currently in a position to make factual or other determinations regarding the validity of the warrant or any other claims that plaintiff may have regarding the search of her home.

**\*8** The court also notes that because of the waiver and stipulation, signed by Mr. Leslie, there was no formal forfeiture proceeding in New York State Court as provided in N.Y. Civ. Prac. L. & R. § 1311. Thus, it is unclear how the plaintiff could have challenged the forfeiture. [17] The court also makes no findings regarding the validity of any defenses that the defendants may assert regarding the incident in question.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 4) is **GRANTED**, and it is

**RECOMMENDED**, that the amended complaint (Dkt. No. 3) be **DISMISSED IN ITS ENTIRETY** as against defendants **N.Y.S. DIVISION OF PAROLE; SYRACUSE POLICE DEPARTMENT; WILLIAM J. FITZPATRICK; AND SEAN CHASE**, and it is

**RECOMMENDED**, that to the extent that the AC may be read as naming **SGT. LLUKACI or PO RIGBY**, the AC may be dismissed **WITHOUT PREJUDICE** for failure to state a claim, and it is

**RECOMMENDED**, that if the District Court adopts this Recommendation, the case be returned to me for further proceedings, including an order serving the remaining defendants: **SABEN, SUMMERS, PROUD, and CURRAN**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5002215

## Footnotes

1    When plaintiff filed her original complaint, the case was administratively closed due to plaintiff's failure to comply with the filing fee requirement. (Dkt. No. 2). Prior to re-filing her motion to proceed IFP, (Dkt. No. 4), plaintiff also filed an amended complaint, which the court will review as the operative pleading. The case was re-opened on August 1, 2019. (Dkt. No. 6).

2    Plaintiff numbered the pages of the "Fact" section of the amended complaint at the bottom of the page. The court will cite to the page numbers contained on the actual document. Plaintiff has attached a series of documents as exhibits to the amended complaint which she did not number. The court will cite to the plaintiff's exhibits ("AC Ex.") with the page number as assigned by the court's electronic filing system ("CM/ECF").

3    Plaintiff was not present for any of the incidents that she describes in her complaint until she arrived at her house during the subsequent search of her property. Plaintiff appears to be taking her recitation of the background facts from the police reports and other documents that she has attached to her amended complaint. (AC Ex. CM/ECF pp. 16-32). The court is stating the facts as plaintiff has described them in the amended complaint.

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 117 of 166

4     This is the first time that another parole officer was mentioned in plaintiff's statement of facts. The court will assume that defendant Rigby was at the residence from the beginning, but it is not completely clear from the papers.

5     Plaintiff does not allege that PO Rigby participated in the search of her apartment.

6     Plaintiff states that the officers were in possession of the door key "prior to their actual possession of the warrant for 112 Fordham Rd." (AC at 2).

7     Plaintiff has attached a copy of Mr. Leslie's "Waiver and Stipulation." (AC Ex. CM/ECF p.25-26). Plaintiff claims that this document was obtained after she asked for the return of the money several times from the District Attorney's Office, the Citizen Review Board, and the Syracuse Police Department. (AC at 7). When she failed to get a "truthful" response, she contacted Feldman, Kramer & Monaco, P.C. (*Id.*) The document was sent to the attorneys' office after the firm wrote a letter of inquiry. (*Id.*)

8     Plaintiff is pro se, and the court must interpret plaintiff's complaint liberally. *Sealed Plaintiff v. Sealed Defendants*, 537 F.3d 185, 191 (2d Cir. 2008). The court considers all possible grounds for relief that plaintiff could be raising. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

9     Plaintiff states that she works from home, and could not work for the time that the officers were searching her apartment. (AC at 10).

10    Apparently, on the day that the officers searched plaintiff's apartment, they found a "weed roach" and gave plaintiff an appearance ticket, which was later dismissed after plaintiff appeared in court. (AC at 10). Plaintiff seeks lost income for the time that it took to appear in court. (*Id.*)

11    It is unclear whether plaintiff meant to name PO Rigby as a defendant herein. He is mentioned briefly in the body of the complaint and was apparently present during the Marcellus St. search, but is not listed in the caption of the complaint, and plaintiff submitted no proposed summons for PO Rigby. In addition, it does not appear from the facts as stated by plaintiff that PO Rigby was involved in obtaining the search warrant for plaintiff's apartment, nor is it even apparent that he was present during the search of plaintiff's apartment. Thus, plaintiff does not state any claims against PO Rigby, and to the extent that she meant to name him as a defendant, the AC should be dismissed as against him.

12    Article 13-a is entitled "Proceeds of a Crime -Forfeiture." N.Y. Civ. Prac. L. & R. Art. 13-a

13    Although not relevant to the court's decision because it is based on absolute immunity of the prosecutor, regardless of whether Mr. Leslie's assertions in the document were correct, the court notes that plaintiff's statement herein is contrary to her son's **sworn** assertion in the document. Plaintiff states that ADA Chase told plaintiff that they were waiting to hear from Mr. Leslie's attorney regarding whether he was going to sign the forfeiture document. (AC at 6). Plaintiff claims that her son signed the document "under duress." Plaintiff cannot assert any claims regarding her son, and in any event, her son was, by her own statement, represented by counsel during the matter.

14    Plaintiff requests only damages, including a return of the $40,000.00 as relief in this action. She does not seem to be asking for any form of injunctive relief. Even though plaintiff asks for a "return" of money, the Eleventh Amendment does not "recognize a distinction 'between monetary damages and money in which plaintiff has a property interest.' " *Local 851 of Internat'l Broth. of Teamsters v. Thyssen Haniel Logistics, Inc.*, 90 F. Supp. 2d 237, 249-50 (E.D.N.Y. 2000) (quoting *Yorktown Medical Lab., Inc. v. Perales*, 949 F.2d 84, 87-88 (2d Cir. 1991)). The District Attorney could have been the proper party in a declaratory judgment under

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 118 of 166

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

New York State law under N.Y. Civ. Prac. L & R. 1327 (Proceedings to Determine Adverse Claims), which plaintiff could have filed within six months of the stipulation, signed by Mr. Leslie.

15    To the extent that the complaint could be interpreted as suing either ADA Chase or DA Fitzpatrick in their "official capacities," the Eleventh Amendment would bar any such suit. *See Blessinger v. City of New York,* No. 17-CV-108, 2017 WL 3841873, at *1-2 (S.D.N.Y. Sept. 1, 2017) (prosecutors are entitled to Eleventh Amendment immunity when they are acting in their prosecutorial capacity because they are acting as state officials rather than city or county employees) (citing *Peterson v. Tomaselli,* 469 F. Supp. 2d 146, 157 (S.D.N.Y. 2007) and *Baez v. Hennessy,* 853 F.2d 73, 77 (2d Cir. 1988) (when prosecuting a criminal matter, a district attorney in New York State represents the State not the County)).

16    Although plaintiff has included a proposed summons for Sgt. Llukaci, this individual is not listed in the caption of the AC, nor is he included in the section of the form-AC which lists the individual Syracuse Police Officers. (AC ¶ 3(c)) for whom she has included identification numbers. In any event, plaintiff's only allegations against Sgt. Llukaci are that he sent defendants Proud and Summers to Mr. Leslie's Marcellus St. home after the parole officers found contraband therein. Plaintiff does not allege that he was personally involved in any of the conduct that she claims violated her constitutional rights. He was not at either residence and was not involved in obtaining the allegedly invalid warrant. Thus, to the extent that plaintiff is trying to sue Sgt. Llukaci, the AC may be dismissed as against this defendant.

17    The court does note that section 1311(7) provides that an innocent owner may challenge the forfeiture and regain the forfeited property if the owner never received notice of the forfeiture. In addition, section 1327 provides for an "interested person" to bring a proceeding to determine adverse claims, even after the forfeiture action was settled by stipulation. *See Tupi Cambios, S.A. v. Morganthau,* 48 A.D.2d 278 (1st Dep't 2008). In *Tupi Cambios,* the District Attorney was the proper "defendant" in New York State Court.

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 119 of 166

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

2019 WL 4963112
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Laytonia FLAGG, Plaintiff,

v.

NYS DIVISION OF PAROLE; Mark Saben,
Parole Officer; Syracuse Police Dept.; Detective
William Summers, ID#409; D.P. Proud, ID#
0140; Richard Curran, ID# 0066; William
J. Fitzpatrick, Onondaga County, District
Attorney; and Sean Chase, D.A., Defendants.

5:19-CV-886
|
Signed 10/08/2019

**Attorneys and Law Firms**

Laytonia Flagg, Syracuse, NY, pro se.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior United States District Judge

**I. INTRODUCTION**

 **\*1**  This pro se action brought pursuant to 42 U.S.C. § 1983
was referred to the Hon. Andrew T. Baxter, United States
Magistrate Judge, for a Report and Recommendation pursuant
to 28 U.S.C. § 636(b) and Local Rule 72.3(c). In his Order
and Report-Recommendation dated August 15, 2019 (Dkt.
No. 7), Magistrate Judge Baxter grants Plaintiff's application
to proceed in forma pauperis, and examines the sufficiency of
the allegations set forth in the Amended Complaint ("AC") in
light of 28 U.S.C. § 1915. He recommends that the AC (Dkt.
No. 3) be dismissed in its entirety as against defendants N.Y.S.
Division of Parole, Syracuse Police Department, William J.
Fitzpatrick, and Sean Chase; that to the extent that the AC
may be read as naming Sgt. Llukaci or PO Rigby, the AC be

dismissed without prejudice for failure to state a claim; and
that if the Court adopts these recommendations that the case
be returned to him for further proceedings, including an order
serving the remaining defendants Saben, Summers, Proud,
and Curran. No objections to the Report-Recommendation
have been filed, and the time to do so has expired.

**II. DISCUSSION**
After examining the record, this Court has determined that the
Order and Report-Recommendation is not subject to attack
for plain error or manifest injustice.

**III. CONCLUSION**
Accordingly, the Court **ACCEPTS and ADOPTS** the
recommendations in the Order and Report-Recommendation
(Dkt. No. 7) for the reasons stated therein. Therefore, it is
hereby

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 3)
is **DISMISSED IN ITS ENTIRETY** as against defendants
N.Y.S. DIVISION OF PAROLE, SYRACUSE POLICE
DEPARTMENT, WILLIAM J. FITZPATRICK, and SEAN
CHASE, and it is further

**ORDERED** that to the extent the Amended Complaint may
be read as naming SGT. LLUKACI or PO RIGBY, it is
**DISMISSED WITHOUT PREJUDICE** for failure to state
a claim, and it is further

**ORDERED** that the case be returned to Magistrate Judge
Baxter for further proceedings, including an order serving the
remaining defendants: SABEN, SUMMERS, PROUD, and
CURRAN.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4963112

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 6586364
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Michael WINTERS, Plaintiff,

v.

The State of NEW YORK; Governor
Andrew Cuomo, Defendants.

20-CV-8128 (LLS)
|
Signed 11/09/2020

**Attorneys and Law Firms**

Michael Winters, Peekskill, NY, pro se.

ORDER TO AMEND

LOUIS L. STANTON, United States District Judge:

*1 Plaintiff, appearing *pro se*, brings this action under 42 U.S.C. § 1983, alleging that Defendants violated his federal constitutional rights. He also seeks to bring criminal charges against Defendants under 18 U.S.C. §§ 241, 242. By order dated October 14, 2020, the Court granted Plaintiff's request to proceed without prepayment of fees, and is, *in forma pauperis* ("IFP"). For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within sixty days of the date of this order.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)

(internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

**BACKGROUND**

The following allegations are taken from the complaint. On October 8, 2019, Yorktown Police Officers "surrounded" and "raided" Plaintiff's grandmother's house, where Plaintiff was staying at the time. (ECF No. 2, at 5.) The officers were enforcing an "Extreme Risk Protection Order"[1] ("ERPO") that was issued for Plaintiff "based on an affidavit that was self-notarized by two of [Plaintiff's] cousins," who are attorneys.[2] (*Id.*) The affidavits "contained a completely fabricated story" which was "nothing short of libel" and "conspiracy." (*Id.*) Several pages of the affidavits were "clearly ghostwritten" by Plaintiff's cousins and were not written by "the other people who signed them." (*Id.*) A search warrant was "somehow granted" and the police confiscated "prop guns and air rifles and only one actual firearm." (*Id.*) Plaintiff maintains that the affidavit "had no evidence of an imminent threat, unless having to explain the US Constitution to a lawyer ([his] cousin Christen) in a text message counts as one." (*Id.*)

*2 Plaintiff states that he was never charged with a crime, detained in jail, or interrogated. "Nothing was properly investigated and there was no trial before [his] Constitutional

**Winters v. New York, Not Reported in Fed. Supp. (2020)**

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 121 of 166

Rights were violated and suspended and [he] was essentially made a victim of armed robbery by the State." (*Id.*)

Plaintiff asserts that by signing the ERPO law, Governor Cuomo "knowingly and willingly" deprived New Yorkers of their constitutional rights and "facilitated the use of tyrannical force by the State to ensure such deprivation." (*Id.* at 6.) The law "allows for the circumvention, misuse, and abuse of the judicial system" in a way that "will surely disproportionately affect other minorities and the poor." [3] (*Id.*) Plaintiff further argues that the ERPO law does not require "hard evidence," but rather "allows for hearsay, conjecture, and complete, malicious lies." (*Id.*) And, "[l]ike many other gun laws, this one blatantly defies federal laws and tries to supersede them," which is unconstitutional. (*Id.*)

Plaintiff alleges that execution of the ERPO caused him extreme emotional distress and anxiety that led to stomach problems and put him "into a situation where [he] wound up in a car crash in the snow on [his] way to file a previous damages claim and totaled the vehicle." (*Id.*)

He seeks repeal of the ERPO law, "immediate return" of his "property," criminal charges against his cousins and Governor Cuomo, and $17.88 million in money damages. (*Id.*)

## DISCUSSION

### A. Criminal claims
The Court must dismiss Plaintiff's claims arising under 18 U.S.C. §§ 241, 242, which are federal criminal statutes. Plaintiff cannot initiate the arrest and prosecution of an individual in this Court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Nor can Plaintiff direct prosecuting attorneys to initiate a criminal proceeding against Defendant, because prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, the Court dismisses any claims Plaintiff may be asserting in which he seeks criminal charges for failure to state a claim. *See* 28 U.S.C § 1915(e)(2)(B)(ii).

### B. Section § 1983 claims against the State of New York and Governor Cuomo

Because Plaintiff alleges that Defendants have violated his federal constitutional rights, the Court construes his remaining claims as arising under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

The Court must dismiss Plaintiff's § 1983 claims against the State of New York and Governor Cuomo because these claims are barred by the doctrine of Eleventh Amendment immunity. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). This immunity shields States from claims for money damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366.

**\*3** New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Plaintiff's § 1983 claims against the State of New York and Governor Cuomo are therefore barred by the Eleventh Amendment and are dismissed.

### C. Fourth Amendment claims
The Court construes Plaintiff's allegations that police officers raided his home and confiscated his property as arising under the Fourth Amendment. The Fourth Amendment protects the rights of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable," *Payton v. New York*, 445 U.S. 573, 586 (1980) (internal citation omitted), but searches and seizures conducted "pursuant to a warrant issued by a neutral magistrate [are] presumed reasonable because such warrants may issue only upon a showing of probable cause," *Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007); *see also Messerschmidt v.*

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 122 of 166

Winters v. New York, Not Reported in Fed. Supp. (2020)

*Millender*, 565 U.S. 535, 546 (2012) ("Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner[.]");*Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) ("[T]he issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause."). A plaintiff may overcome this presumption if he can "show that the affiant knowingly and deliberately, or with a reckless disregard of the truth, made false statements or material omissions in his application for a warrant, and that such statements or omissions were necessary to the finding of probable cause." *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994).

Here, Plaintiff states that the police had a warrant, but he alleges that the warrant was obtained based on false statements. Beyond conclusory assertions, however, Plaintiff does not allege any facts suggesting that information contained in the affidavits or other underlying documents was false or that the warrant was based on such false information. Plaintiff does not plausibly plead facts to overcome the presumption that the officers' search of her residence and seizure of property pursuant to the search warrant was reasonable. Moreover, Plaintiff fails to name as a defendant any individual state actor who was personally involved in any alleged violation of this rights under the Fourth Amendment.

In any amended complaint, Plaintiff must provide the names of the individual officers involved in the search and seizure and allege facts suggesting that the officers' reliance on the warrant was not reasonable because it was facially invalid, or it was procured through fraud or other misrepresentations. Unsupported assertions that the police officers "illegally" or "unlawfully" searched Plaintiff's residence and seized property are not sufficient to state a claim.

### D. Deprivation of property

**\*4** Plaintiff also seeks the return of property confiscated by the police. A claim for deprivation of property is not cognizable in federal court if the state courts provide a remedy for the deprivation of that property.[4] *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988) (citations omitted). New York provides such an adequate post-deprivation remedy. *Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983). Because Plaintiff does not

allege facts suggesting that his remedy under state law is in any way inadequate or inappropriate, *see Butler v. Castro*, 896 F.2d 698, 700-04 (2d Cir. 1990), his claim with respect to the seized property must be dismissed.

### E. Second Amendment claim

The Court construes Plaintiff's allegations as asserting a claim that the ERPO violates his right to bear arms under the Second Amendment. The Court further construes his request for "repeal" of the ERPO as seeking prospective injunctive relief under the *Ex Parte Young* exception to sovereign immunity. 209 U.S. 123 (1908).

In analyzing challenges under the Second Amendment, courts in the Second Circuit engage in a two-step inquiry. First, the court must consider "whether the restriction burdens conduct protected by the Second Amendment." *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 254 (2d Cir. 2015) ("NYRP"). Second, if the challenged restriction does burden Second Amendment rights, the court "must determine and apply the appropriate level of scrutiny." *Id.*

The Second Amendment protects "only the sorts of weapons that are (1) in common use and (2) typically possessed by law-abiding citizens for lawful purposes." *Id.* at 254-55 (internal quotation marks and citations omitted). In determining the level of scrutiny that applies, courts look to two factors: (1) "how close the law comes to the core of the Second Amendment Right and (2) the severity of the law's burden on the right." (*Id.* at 258) (internal quotation marks and citations omitted); "[H]eightened scrutiny is triggered *only* by those restrictions that ... operate as a substantial burden on the ability of law-abiding citizens to possess and use a firearm for ... lawful purposes." *Id.* at 259 (internal quotation marks and citations omitted, second ellipses in original); *see Abekassis v. New York City, New York*, ECF 1:19-CV-8004, 20, 2020 WL 4570594, at \*9 (S.D.N.Y. Aug. 7, 2020) (holding that good moral character factors in the New York State gun licensing scheme "do not implicate the Second Amendment's core, because they deny such possession only to persons who are found not to be "law-abiding and responsible") (appeal filed Sept. 8, 2020).

If the court determines that heightened scrutiny is appropriate in a Second Amendment case, intermediate scrutiny applies and the key question is whether the challenged statute is "substantially related to the achievement of an important governmental interest." *Id.* at 261 (internal quotation marks and citations omitted). It is generally beyond question that

**Winters v. New York, Not Reported in Fed. Supp. (2020)**

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 123 of 166

states have "substantial, indeed compelling, governmental interests in public safety and crime prevention." *Id.* (internal quotation marks and citation omitted).

**\*5** Should Plaintiff wish to pursue a constitutional challenge to the ERPO under the Second Amendment, he must reallege his claims in any amended complaint and name as defendants the state official or officials who he seeks to enjoin from violating his Second Amendment rights.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid § 1983 claim, the Court grants Plaintiff 60 days' leave to amend his complaint to detail his claims.

First, Plaintiff must name as the defendants in the caption [5] and in the statement of claim those individuals who were allegedly involved in the deprivation of his federal rights. If Plaintiff does not know the name of a defendant, he may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint. [6] The naming of John Doe defendants, however, does *not* toll the three-year statute of limitations period governing this action and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" defendants and amending his complaint to include the identity of any "John Doe" defendants before the statute of limitations period expires. Should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure. In the statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. Plaintiff is also directed to provide the addresses

for any named defendants. To the greatest extent possible, Plaintiff's amended complaint must:

**a)** give the names and titles of all relevant persons;

**b)** describe all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

**c)** give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

**d)** give the location where each relevant event occurred;

**e)** describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

**f)** state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

**\*6** Essentially, the body of Plaintiff's amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief.

**Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.**

## CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket.

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 20-CV-8128 (LLS). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 124 of 166

Winters v. New York, Not Reported in Fed. Supp. (2020)

SO ORDERED.

Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
_____     ____ Civ. _____ ( ____ )
_____

*(In the space above enter the full name(s) of the plaintiff(s).)*       **AMENDED**
                                                                          **COMPLAINT**
                  -against-

_____       Jury Trial:  ☐ Yes    ☐ No
_____                        *(check one)*
_____
_____
_____
_____
_____
_____

*(In the space above enter the full name(s) of the defendant(s). If you
cannot fit the names of all of the defendants in the space provided,
please write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The names
listed in the above caption must be identical to those contained in
Part I. Addresses should not be included here.)*

**I.      Parties in this complaint:**

A.     List your name, address and telephone number. If you are presently in custody, include your
       identification number and the name and address of your current place of confinement. Do the same
       for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff      Name _____
               Street Address _____
               County, City _____
               State & Zip Code _____
               Telephone Number _____

B.     List all defendants. You should state the full name of the defendant, even if that defendant is a
       government agency, an organization, a corporation, or an individual. Include the address where
       each defendant may be served. Make sure that the defendant(s) listed below are identical to those
       contained in the above caption. Attach additional sheets of paper as necessary.

*Rev. 12/2009*                                    1

Defendant No. 1        Name _____
                       Street Address _____
                       County, City _____
                       State & Zip Code _____
                       Telephone Number _____

Defendant No. 2        Name _____
                       Street Address _____
                       County, City _____
                       State & Zip Code _____
                       Telephone Number _____

Defendant No. 3        Name _____
                       Street Address _____
                       County, City _____
                       State & Zip Code _____
                       Telephone Number _____

Defendant No. 4        Name _____
                       Street Address _____
                       County, City _____
                       State & Zip Code _____
                       Telephone Number _____

**II.     Basis for Jurisdiction:**

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court:
cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28
U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal
question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another
state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.     What is the basis for federal court jurisdiction? *(check all that apply)*

       ☐ Federal Questions                    ☐ Diversity of Citizenship

B.     If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right
       is at issue? _____
       _____
       _____

C.     If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?
       Plaintiff(s) state(s) of citizenship _____
       Defendant(s) state(s) of citizenship _____

*Rev. 12/2009*                                    2

**III.    Statement of Claim:**

State as briefly as possible the *facts* of your case. Describe how each of the defendants named in the
caption of this complaint is involved in this action, along with the dates and locations of all relevant events.
You may wish to include further details such as the names of other persons involved in the events giving
rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims,
number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.     Where did the events giving rise to your claim(s) occur? _____

B.     What date and approximate time did the events giving rise to your claim(s) occur? _____
       _____

C.     Facts: _____

| What happened to you? | _____ |
| --- | --- |
| | _____ |
| | _____ |
| Who did what? | _____ |
| | _____ |
| | _____ |
| Was anyone else involved? | _____ |
| | _____ |
| Who else saw what happened? | _____ |
| | _____ |

**IV.     Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical
treatment, if any, you required and received. _____
_____
_____
_____
_____

*Rev. 12/2009*                                    3

Winters v. New York, Not Reported in Fed. Supp. (2020)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 125 of 166

**V.    Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation. _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

I declare under penalty of perjury that the foregoing is true and correct.

Signed this ___ day of _____, 20___.

      Signature of Plaintiff _____

      Mailing Address _____

                    _____

      Telephone Number _____

      Fax Number *(if you have one)* _____

Note:    All plaintiffs named in the caption of the complaint must date and sign the complaint.  Prisoners must also provide their inmate numbers, present place of confinement, and address.

For Prisoners:

I declare under penalty of perjury that on this _____ day of _____, 20___, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

      Signature of Plaintiff _____

      Inmate Number _____

*Rev. 12/2009*          4

**All Citations**

Not Reported in Fed. Supp., 2020 WL 6586364

---

## Footnotes

1    An ERPO is a "court-issued order of protection prohibiting a person from purchasing, possessing or attempting to purchase or possess a firearm, rifle or shotgun." N.Y. C.P.L.R. § 6340(1).

2    Plaintiff further alleges that his cousins had the police visit the house twice the week before the raid and then twice the week after the raid. Plaintiff alleges that "nothing was confiscated" and asserts that this "constitutes harassment." (*Id.*)

3    Plaintiff fails to allege any facts suggesting that the law was enforced against him on the basis of his race or any other protected characteristic.

4    A deprivation of property without due process claim under the Fourteenth Amendment is distinct from the unlawful seizure of property claim under the Fourth Amendment claim discussed above. The Fourth Amendment deals with the seizure of the property itself, rather than the defendants' later refusal to return the property, which would fall under Fourteenth Amendment. *See Fox v. Van Oosterum*, 176 F.3d 342, 350-51 (2d Cir. 1999) (citing *Soldal v. Cook County, Ill.*, 506 U.S. 56, 70 (1992)).

5    The caption is located on the front page of the complaint. Each individual defendant must be named in the caption. Plaintiff may attach additional pages if there is not enough space to list all of the defendants in the caption. If Plaintiff needs to attach an additional page to list all defendants, he should write "see attached list"

**Winters v. New York, Not Reported in Fed. Supp. (2020)**

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 126 of 166

on the first page of the Amended Complaint. Any defendants named in the caption must also be discussed in Plaintiff's statement of claim.

6      For example, a defendant may be identified as: "Yorktown Police Officer John Doe #1, searched Plaintiff's home at 3 p.m. on November 4, 2020."

---

**End of Document**                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 127 of 166

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the
additional allegations fail to cure the deficiency which

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01337-AMN-ML  Document 7  Filed 04/19/24  Page 128 of 166

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo*

determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 130 of 166

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 131 of 166

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

**B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.**

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

**C. Motion to Dismiss by Herman, Stewart and Stanford.**

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that

defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

**D. Plaintiff's "John Doe" Claims.**

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

**E. Discovery Motions.**

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 132 of 166

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1        I note, however, that the report-recommendation would survive even *de novo* review.

---

**End of Document**                                     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 133 of 166

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

## Attorneys and Law Firms

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

## DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the
additional allegations fail to cure the deficiency which

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo*

determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01337-AMN-ML    Document 7    Filed 04/19/24    Page 135 of 166

no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 137 of 166

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

**B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.**

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

**C. Motion to Dismiss by Herman, Stewart and Stanford.**

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that

defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

**D. Plaintiff's "John Doe" Claims.**

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

**E. Discovery Motions.**

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 138 of 166

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

---

**End of Document**                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 139 of 166

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

1995 WL 316935
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Mina POURZANDVAKIL, Plaintiff,

v.

Hubert HUMPHRY, Judisicial Systeam of The State of
Minnesota and Olmested County Court Systeam, and
State of Minnesota, Saint Peter State Hospital, Doctor
Gammel Stephelton, et el Erickson, North West Bank
and Trust, Olmested County Social Service, J.C. Penny
Insurnce, Metmore Finicial, Traveler Insurnce, Comecial
Union Insurnce, Hirman Insurnce, Amrican State
Insurnce, Farmers Insurnce, C. O Brown Insurnce, Msi
Insurnce, Steven Youngquist, Kent Chirstain, Micheal
Benson, United Airline, Kowate Airline, Fordmotor
Cridite, First Bank Rochester, George Restwich,
British Airways, Western Union, Prudenial Insurnce,
T.C.F. Bank, Judge Sandy Kieth, Judge Niergari,
Olmestead County Judgering, Judge Mores, Judge
Jacobson, Judge Challien, Judge Collin, Judge Thomase,
Judge Buttler, Judge Morke, Judge Moweer, Sera
Clayton, Susan Mudhaul, Ray Schmite, Defendants. [1]

Civ. A. No. 94-CV-1594.
|
May 23, 1995.

**Attorneys and Law Firms**

Hubert H. Humphrey, III, Atty. Gen. of the State of Minn.,
St. Paul, MN, Jerome L. Getz, Asst. Atty. Gen., of counsel,
for Hubert H. Humphry, III, Judicial System of the State
of Minnesota, St. Peter Regional Treatment Center, Gerald
Gammell, MD, William Erickson, MD, Thomas Stapleton,
MD, the Honorable James L. Mork, Chief Judge Anne
Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge
Dennis Challeen, and Judge Lawrence Collins.

Condon & Forsyth, P.C., New York City, Stephen J. Fearon,
Michael J. Holland, of counsel, for British Airways, P.L.C.
and Kuwait Airways Corp.

Dunlap & Seeger, P.C., Rochester, MN, Gregory J. Griffiths,
of counsel, for Olmsted County, Raymond Schmitz, Susan
Mundahl, Norwest Bank Minnesota, N.A. (the Northwest
Bank & Trust), C.O. Brown Agency, Inc.

Arthur, Chapman, McDonough, Kettering & Smetak, P.A.,
Minneapolis, MN, Eugene C. Shermoen, Jr., of counsel, for
J.C. Penney Ins. Co. and Metropolitan Ins. Co.

Shapiro & Kreisman, Rochester, NY, John A. DiCaro, of
counsel, for Metmor Financial, Inc.

Costello, Cooney & Fearon, Syracuse, Paul G. Ferrara, Robert
J. Smith, of counsel, for Travelers Ins. Companies; Hirman
Ins.; Commercial Union Ins. Companies.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, Thomas
N. Kaufmann, of counsel, for American States Ins. Co. and
Prudential Ins. Co.

Steven C. Youngquist, Rochester, MN, pro se.

Thomas J. Maroney, U. S. Atty., Syracuse, NY, William F.
Larkin, Asst. U. S. Atty., of counsel, for Michael Benson,
Postmaster N. D. of New York.

George F. Restovich & Associates, Rochester, MN, George F.
Restovich, of counsel, for George F. Restovich.

Conboy, McKay, Bachman & Kendall, L.L.P., Watertown, NY,
George K. Myrus, of counsel, for Western Union.

Richard Maki, Rochester, MN, pro se.

**MEMORANDUM-DECISION AND ORDER**

POOLER, District Judge.

**INTRODUCTION**

**\*1** In the four and one-half months since she filed this
action, plaintiff Mina Pourzandvakil has filed three amended
complaints and ten motions. She also has sought and received
entry of default against ten defendants, none of whom she
properly served. She twice has sought and been denied
temporary restraining orders. She has included in her action
defendants with no apparent connection to this forum, that
were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of
defendants have filed a total of twelve motions, some seeking
vacation of the defaults entered against them, some seeking
dismissal and others seeking both. We grant defendants'
motions insofar as they seek vacation of the clerk's entries of
default and dismissal of the complaint. We vacate *sua sponte*

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 140 of 166

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

BACKGROUND

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

**\*2** The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*)[2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper[3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

Case 3:23-cv-01337-AMN-ML Document 7 Filed 04/19/24 Page 141 of 166

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or Rule 12 of the Federal Rules of Civil Procedure. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

**\*3** Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

ANALYSIS

The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. Fed. R. Civ. P. 4(e)(2). Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. Fed. R. Civ. P. 4(e)(1). Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. Fed. R. Civ. P. 4(h)(1) and 4(e)(1). Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See* N.Y. Civ. Prac. L. & R. §§ 308, 311 (McKinney Supp. 1995); N.Y. Bus. Corp. Law § 306 (McKinney Supp. 1995); Minn. Stat. § 543.08 (1995); Minn. R. 4.03 (1995). Finally, service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. Fed. R. Civ. P. 4(j)(2). Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist, to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 142 of 166

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

II. The Jurisdictional Arguments

 **4** In addition to raising various other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

A. Personal Jurisdiction

Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to Rule 14 or Rule 19 of the Federal Rules of Civil Procedure and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. Fed. R. Civ. P. 4(k). Defendants

are not subject to federal interpleader jurisdiction and they were not joined pursuant to Rule 14 or Rule 19. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to Rule 4(k). *See* N.Y. Civ. Prac. L. & R. § 302 (McKinney Supp. 1995). This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id.* §302(a). The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of Section 302(a). Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by Fed. R. Civ. P. 8(a)(1). Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff was a party. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983). These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

 **5** The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 143 of 166

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. 28 U.S.C. § 1332. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under 28 U.S.C. § 1367(a). Section 1367(a) requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

### C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

**\*6** 28 U.S.C. § 1391(a). Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Id.* § 1391(b). The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* § 1406(a). Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. The purpose of the court's

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 144 of 166

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that it was an improper exercise of discretion to dismiss rather than transfer when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ. No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

### III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b) (6). [7] We already have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the Rule 12(b)(6) issue only on ASI's motion. *See Bell v. Hood,* 327 U.S. 678, 682-83 (1946) (subject matter jurisdiction); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir. 1963) (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

 **\*7** Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved

in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr,* 810 F.2d at 363.

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 145 of 166

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to amend her pleading and plaintiff still was not able to offer specifics. [9] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White,* 886 F. 2d 721, 724 (4th Cir. 1989)). We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

**\*8** We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under 28 U.S.C. §1915(d), holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. The Supreme Court explicitly has acknowledged a district court's power under Section 1915(d) to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id.* at 329 n.8. The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter,* 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd* 41 F.3d 1500 (2d Cir. 1994); *cf. Pillay v. I.N.S.,* 45 F.3d 14, 17 (2d Cir. 1995) (*per curiam*) (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler,* 151 F.R.D. at 540.

IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture,* 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991). Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id.* at 694 (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief, however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id.* at 695.

CONCLUSION

**\*9** All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188-9 (5th Cir. 1986) (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co.,* 377 F.2d 194, 199 n.3 (2d Cir. 1967) (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 875 (3d Cir.) *cert. denied,* 322 U.S. 740(1944) (dismissal for lack of personal jurisdiction is not a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 316935

## Footnotes

1   Names in the caption are spelled to reflect plaintiff's complaint.

2   Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

3   Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

4   The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against non-moving defendants for failure to state a claim on which relief can be granted.

5   The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

6   We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. 28 U.S.C. § 1332(a). However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id.* § 1332(a)(2). Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of 28 U.S.C. § 1603. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See* 28 U.S.C. § 1330. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under Section 1332. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line,* 877 F.2d 1508, 1511-1512 (11th Cir. 1989), *cert. denied,* 115 S.Ct. 1362 (1995) (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under 28 U.S.C. § 1332.

**Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)**

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 147 of 166

7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

8    Former Supreme Court Justice Harry A. Blackmun.

9    We note also that plaintiff has not requested leave to amend in this action.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 8827185

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Mark A. ROARK, Plaintiff,

v.

The People of the State of NEW YORK;

Watertown Police Dep't; Samaritan Hosp.;

and the Watertown District Attorney's

Office, Kristyna S. Mills, [1] Defendants.

5:23-CV-1237 (DNH/ML)

|

Signed December 21, 2023

**Attorneys and Law Firms**

MARK A. ROARK, Plaintiff, Pro Se, Ulster Correctional Facility, Post Office Box 800, Berme Road, Napanoch, New York 12458.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

 **\*1** The Clerk has sent a *pro se* complaint in the above captioned action together with an application to proceed *in forma pauperis* and inmate authorization filed by Mark A. Roark ("Plaintiff") to the Court for review. (Dkt. Nos. 1, 2.) For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application and recommend that Plaintiff's Complaint be dismissed in its entirety. (Dkt. Nos. 1, 2.)

## I. BACKGROUND

Construed as liberally [2] as possible, Plaintiff's Complaint appears to allege that his civil rights were violated by Defendants The People of the State of New York, Watertown Police Department ("WPD"), Samaritan Hospital, and the Watertown District Attorney's Office (collectively "Defendants"). (*See generally* Dkt. No 1.) More specifically, the Complaint alleges that on an unspecified date, time, and year, he was walking around an unspecified town where he was "pulled to the side of the road" by officers employed by Defendant WPD and asked why he was J-walking. (Dkt. No. 1 at 5, 7.) The Complaint alleges that, despite not being "put through any test," the officers insisted that Plaintiff was under the influence of a substance, placed handcuffs on him, and

transported him to the WPD headquarters. (Dkt. No 1 at 5, 7.) The Complaint alleges that while at WPD headquarters, "6 John Doe's came in and assaulted [Plaintiff] while being fully [restrained]." (Dkt. No. 1 at 5.)

The Complaint alleges that after Plaintiff was assaulted, he was taken to Defendant Samaritan Hospital, where he was admitted for medical care. (Dkt. No. 1 at 5.)

The Complaint alleges that Defendant Watertown District Attorney's Office "never spoke to [Plaintiff] nor read [him his] rights" but that he sat in jail for ten days before being transported by the New York State Police to the Clinton County Jail for a probation violation. (Dkt. No. 1 at 6.) The Complaint alleges that no new charges were filed against Plaintiff, he did not plead guilty, and did not appear before a judge. (*Id.*)

Notwithstanding these allegations, the Complaint also alleges that on an unspecified date and at an unspecified time, Plaintiff was "brought in[ ]front of a [j]udge and ... charged [with] orderly misconduct." (Dkt. No. 1 at 8.)

Plaintiff alleges that as a result of the incidents alleged in the Complaint, he has lost his dog, his belongings, and his freedom. (Dkt. No. 1 at 8.)

Based on these factual allegations, Plaintiff appears to assert the following nine claims: (1) a claim of false arrest against Defendant WPD in violation of the Fourth Amendment and 42 U.S.C. § 1983; (2) a claim of excessive force against Defendant WPD in violation of the Fourth Amendment and 42 U.S.C. § 1983; (3) a claim of failure to protect against Defendant WPD in violation of the Fourth Amendment and 42 U.S.C. and § 1983; (4) a claim that his right to equal protection of the law was violated by Defendant WPD pursuant to Fourteenth Amendment and 42 U.S.C. § 1983; (5) a claim that Defendant Watertown District Attorney's Office denied his right of access to the courts pursuant to First Amendment and 42 U.S.C. § 1983; (6) claim of false arrest against Defendant Watertown District Attorney's Office in violation of the Fourth Amendment and 42 U.S.C. § 1983; (7) a claim that Defendant Watertown District Attorney's Office violated his right to freedom of speech pursuant to the First Amendment and 42 U.S.C. § 1983; (8) a claim that Defendant Watertown District Attorney's Office violated his due process rights pursuant to Fourteenth Amendment and 42 U.S.C. § 1983; and (9) a claim that Defendant Watertown District Attorney's Office violated his right to counsel pursuant to the

Sixth Amendment and 42 U.S.C. § 1983. (Dkt. No. 1 at 5-7.) As relief, Plaintiff seeks $5,000,000.00 in damages and would like to "fully charge the officers from [his] assault." (Dkt. No. 1 at 5.)

**\*2** Plaintiff also filed a motion for leave to proceed *in forma pauperis.* (Dkt. No. 2.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein,* 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). [3] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash,* 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that Plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility (Dkt. No. 2 at 2), and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization required in the Northern District. (Dkt. No. 2 at 3.)

Accordingly, Plaintiff's application to proceed with this action IFP is granted. (Dkt. No. 2.)

## III. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

Having found that Plaintiff met the financial criteria for commencing this action *in forma pauperis,* the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that— ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also* 28 U.S.C. 1915A(a) ("The court shall review ... as soon as practicable ... a complaint in a civil action in which a prisoner seeks redress from a

governmental entity or officer or employee of a governmental entity."). [4]

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano,* 75 F.R.D. 497, 498 (D.D.C. 1977)).

**\*3** A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007), *rev'd on other grounds,* 682 F. App'x 30. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown,* 335 F. App'x 102, 104 (2d Cir. 2009).

"[E]xtreme caution should be exercised in ordering sua sponte dismissal of a ... complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir. 1983). The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee).

"Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. Defendants The People of the State of New York and Watertown District Attorney's Office [5]

To the extent Plaintiff seeks money damages against Defendants The People of the State of New York and Watertown District Attorney's Office, those claims are barred by the Eleventh Amendment. *Drawhorne v. Aloise*, 23-CV-1278, 2023 WL 8188396, at *3 (N.D.N.Y. Nov. 27, 2023) (Dancks, M.J.) (citing *Best v. Brown*, 19-CV-3724, 2019 WL 3067118, at *2 (E.D.N.Y. July 12, 2019) (dismissing the plaintiff's claim against the Office of the Queens County District Attorney as barred by the Eleventh Amendment); *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity."); *Rich v. New York*, 21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); *Gentry v. New York*, 21-CV-0319, 2021 WL 3037709, at *6 (N.D.N.Y. June 14, 2021) (Lovric, M.J.) (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities—which were effectively claims against the State of New York— as barred by the Eleventh Amendment) *adopted by*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021) (Suddaby, C.J.)).

Therefore, the undersigned recommends Plaintiff's Section 1983 claims against Defendants The People of the State of New York and Watertown District Attorney's Office be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A. *Drawhorne*, 2023 WL 8188396, at *3.

### B. Defendant Watertown Police Department

**\*4** "Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")), *report and recommendation adopted by*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.). Thus, Defendant WPD is not a proper party which would be amenable to suit.

To the extent that Plaintiff's claims are liberally construed as against the City of Watertown, I recommend that they be dismissed.

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so

widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees. *Connick*, 563 U.S. at 51. However, municipal liability is most tenuous when a claim turns on the failure to train. *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell")). To satisfy the statute, a municipality's failure to train its employees must amount to " 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

There is no basis for municipal liability alleged in the Complaint. Plaintiff essentially complains of a single incident, during which an officer or officers employed by the Watertown Police Department did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Defendant WPD.

**\*5** As a result, I recommend that, to the extent Plaintiff's claims against Defendant WPD are construed as against the City of Watertown, they be dismissed at this time. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at *5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

### C. Defendant Samaritan Hospital
A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or

a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Private parties are generally not state actors, and are therefore not usually liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.") (internal quotation marks and citation omitted).

"For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Caballero v. Shayna*, 18-CV-1627, 2019 WL 2491717, at *3 (E.D.N.Y. June 14, 2019) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Caballero*, 2019 WL 2491717, at *3 (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

Plaintiff is suing Samaritan Hospital, a private medical institution.[6] The Complaint alleges no facts suggesting that the hospital is under any of the aforementioned exceptions, or describing how Defendant Samaritan Hospital's actions are otherwise "fairly attributable to the state." Because Plaintiff has failed to plausibly allege that Defendant Samaritan Hospital acted under color of state law, the Complaint fails to state any claims for relief under § 1983. *See White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals ... named as defendants in [plaintiff's] complaint, are generally not proper § 1983 defendants because they do not act under color of state law."). As a result, I recommend that the district court dismiss Plaintiff's claims alleged pursuant to § 1983. *Guillory v. Benedict*, 21-CV-0073, 2021 WL 707076, at *2 (N.D.N.Y. Feb. 4, 2021) (Baxter, M.J.) (recommending dismissal of the plaintiff's § 1983 claims against private medical institution St. Joseph's Hospital), *report and recommendation adopted by*, 2021 WL 706644 (N.D.N.Y. Feb. 23, 2021) (Sharpe, J.); *see Guillory v. Crouse Hosp.*, 21-CV-1177, 2021 WL 5605260, at *2 (N.D.N.Y. Nov.

2, 2021) (Baxter, M.J.) (citing *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014); *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010); *Doe v. Rosenberg*, 996 F. Supp. 343, 352 (S.D.N.Y. 1998), *aff'd*, 166 F.3d 507 (2d Cir. 1999)) ("it remains well settled in this Circuit that a private hospital, and its employees, are not deemed state actors solely because the state has granted them authority to practice medicine within its borders."), *report and recommendation adopted by*, 2021 WL 5585926 (N.D.N.Y. Nov. 30, 2021) (Hurd, J.).

## V. OPPORTUNITY TO AMEND

**\*6** Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [7]

Here, I find that leave to replead would be futile with respect to Plaintiff's claims against Defendants The People of the State of New York and Watertown District Attorney's Office. [8]

Although I have serious doubts about whether Plaintiff can replead to assert an actionable claim against Defendants WPD and Samaritan Hospital, given that this is the Court's first review of Plaintiff's pleading, out of an abundance of caution, I recommend that he be permitted to replead the Complaint with respect to those claims.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are

insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at \*7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**\*7** **ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 2 at 3) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 2 at 3) to the Financial Deputy of the Clerk's office; and it is further

**ORDERED** that the Clerk of the Court add "Watertown District Attorney's Office, Kristyna S. Mills" as a defendant in this action; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS** the Complaint (Dkt. No. 1) **WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD** to the extent that it asserted claims against Defendants The People of the State of New York

and Watertown District Attorney's office, and **WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD** to the extent that it asserted claims against Defendants WPD and Samaritan Hospital; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [9]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [10] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2023 WL 8827185

## Footnotes

1   The Clerk of the Court is directed to add Watertown District Attorney's Office, Kristyna S. Mills to the docket as a defendant in this action. (Dkt. No. 1 at 2.)

2   The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

3   Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

4   To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

5   The Court presumes that Plaintiff intended to assert claims against the Jefferson County District Attorney's Office. Watertown, New York is located within Jefferson County and the current District Attorney of Jefferson County is Kristyna S. Mills.

6   "Samaritan Medical Center (Watertown, New York) is a 290-bed not-for-profit community medical center, offering a full spectrum of inpatient and outpatient health services." Samaritan Health, https://samaritanhealth.com/ (last visited December 20, 2023).

7   *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

8       The undersigned notes that a dismissal based on the doctrine of sovereign immunity, is consequently a dismissal for lack of subject matter jurisdiction. *Crumble v. United States*, 23-CV-4427, 2023 WL 5102907, at *7 (S.D.N.Y. Aug. 7, 2023); *Nguyen v. Kijakazi*, 20-CV-0607, 2022 WL 542265, at *8 (E.D.N.Y. Feb. 23, 2022). Moreover, the Second Circuit has directed that dismissals for lack of subject matter jurisdiction are to be made without prejudice. *Abadi v. City of New York*, 22-CV-1560, 2023 WL 3295949, at *3 n.3 (2d Cir. May 8, 2023) (summary order) (citing *Katz v. Donna Karan Co.,* 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction.")) ("Because the Court lacks subject matter jurisdiction ... the amended complaint should be dismissed *without* prejudice.") (emphasis in original). Notwithstanding, the undersigned recommends dismissal with prejudice and without leave to amend because any amendment or attempt to bring these claims against Defendants The People of the State of New York and Watertown District Attorney's Office, would be futile. *Drawhorne,* 2023 WL 8188396, at *3 (recommending that the plaintiff's "Section 1983 claims against The People of the State of New York be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A.").

9       The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir. 2009) (per curiam).

10      If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**End of Document**                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 707076
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Patrick GUILLORY, Plaintiff,

v.

Brian BENEDICT and St. Joseph's Hospital, Defendants.

5:21-CV-073 (GLS/ATB)

|

Signed 02/04/2021

**Attorneys and Law Firms**

PATRICK GUILLORY, Plaintiff, pro se.

### ORDER and REPORT-RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, filed by plaintiff Patrick Guillory. (Dkt. No. 1) ("Compl."). Plaintiff has also moved to proceed in forma pauperis (Dkt. No. 2), and for court appointed counsel (Dkt. No. 3).

### I. IFP Application

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses

of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

### II. Complaint

Plaintiff alleges that on January 20, 2021 at approximately 12:15 a.m., he entered "defendant's establishment" to drop of his girlfriend's cell phone and charger. (Compl. at 2). When he attempted to exit the hospital lobby, plaintiff was "attacked by security staff ... and suffered right hand, right elbow, and back injuries." (*Id.*). Plaintiff asserts that he was attacked in retaliation for previously filing a lawsuit against defendant Brian Benedict, Chief of Security at defendant St. Joseph's Hospital ("SJH")[1]. Specifically, plaintiff alleges that three weeks before January 20, 2021 he filed a complaint against Benedict in small claims court because, on a prior occasion, "[Benedict's] officers used excessive force against [him]." (*Id.*). Plaintiff states that SJH surveillance video from January 20, 2021 shows that unidentified security personnel were "ordered by defendant Brian Benedict to beat [plaintiff] for filing a lawsuit against [him]." (*Id.*).

**\*2** Plaintiff's complaint states separate causes of action for retaliation and excessive use of force under § 1983. Plaintiff has simultaneously submitted a form complaint pursuant to Title VII of the Civil Rights Act of 1964, alleging the same causes of action. (*Id.* at 8-12).

### III. Section 1983

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 156 of 166

Guillory v. Benedict, Not Reported in Fed. Supp. (2021)

### A. Legal Standards

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988). Private parties are generally not state actors, and are therefore not usually liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); see also *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties....") (internal quotation marks and citation omitted).

For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: "(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the state 'has been delegated a public function by the [s]tate,' ('the public function test')." *Caballero v. Shayna*, No. 18-CV-1627, 2019 WL 2491771, at *3 (E.D.N.Y. June 14, 2019) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

### B. Application

Plaintiff is suing SJH, a private medical institution.[2] He alleges no facts suggesting that the hospital is a state actor under any of the aforementioned exceptions, or describing how SJH's actions are otherwise "fairly attributable" to the state." Likewise, SJH employee Benedict is also a private actor. Because plaintiff has failed to plausibly allege that either named defendant acted under color of state law, the complaint fails to state any claims for relief under § 1983. *See White v. St. Joseph's Hosp.*, 369 Fed. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals ... named as defendants in [plaintiff's] complaint,

are generally not proper § 1983 defendants because they do not act under color of state law."). Accordingly, the district court should dismiss plaintiff's retaliation and excessive force claims alleged pursuant to § 1983.

## IV. **Title VII**

**\*3** Plaintiff has also filed a form Title VII complaint with the court, but does not appear to allege employment discrimination.[3] Rather, plaintiff claims that he was assaulted by the security staff at SJH on January 20, 2021, in retaliation for filing a lawsuit against defendant Benedict alleging a prior incident during which plaintiff was the victim of excessive force at SJH.

### A. Legal Standards

Title VII of the Civil Rights Act of 1964 includes an anti-retaliation provision, making it unlawful "for an employer to discriminate against any of his employees ... because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "This anti-retaliation provision is intended to further the goals of the anti-discrimination provision 'by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of [Title VII's] basic guarantees.' " *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). In order to present a prima facie case of retaliation under Title VII, a plaintiff must adduce "evidence sufficient to permit a rational trier of fact to find (1) that [ ] he engaged in protected participation or opposition under Title VII, (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action." *Cifra v. General Electric Co.*, 252 F.3d 205, 216 (2d Cir. 2001).

### B. Application

Plaintiff fails to assert any facts even suggesting that he enjoyed an employment relationship with SJH,[4] potential or realized–an essential element of any Title VII claim. The complaint also makes clear that plaintiff's alleged "protected activity" did not involve the assertion of any right under Title VII. Plaintiff's prior lawsuit against defendant Benedict was based on allegations of excessive force while he was visiting the hospital. As plaintiff does not plausibly state a cause of

Case 3:23-cv-01337-AMN-ML    Document 7    Filed 04/19/24    Page 157 of 166

Guillory v. Benedict, Not Reported in Fed. Supp. (2021)

action, for retaliation or any other Title VII violation, this claim should be dismissed.

## V. **Subject Matter Jurisdiction - Diversity Jurisdiction**

### A. Legal Standard

Federal courts exercise limited jurisdiction pursuant to *Article III of the Constitution*. A court may exert subject matter jurisdiction over claims in which: (1) there is a federal question in that a colorable claim arises under the Constitution, laws or treaties of the United States, and/or if (2) there is complete diversity of citizenship between each plaintiff and all defendants and a minimum of $75,000 in controversy. *28 U.S.C. §§ 1331, 1332*. In the absence of a basis for exercising jurisdiction, the case must be dismissed. See *Fed. R. Civ. P. 12(h)(3)*.

### B. Application

**\*4** As previously discussed, the court recommends dismissing the federal claims raised in the complaint, namely plaintiff's alleged § 1983 and Title VII causes of action. To the extent that plaintiff's complaint attempts to allege claims outside the court's federal question jurisdiction, diversity jurisdiction would be required. [5] However, the complaint clearly articulates that the parties are not diverse: plaintiff concedes that plaintiff and both defendants "reside" in New York State. (Compl. at 1; Dkt. No. 1-1 at 1). He makes no further allegations regarding citizenship. Accordingly, plaintiff has failed to invoke this court's diversity jurisdiction. See *Herrick Co., Inc. v. SCS Commc'n, Inc.*, 251 F.3d 315, 322-23 (2d Cir. 2001) (The party seeking to invoke the court's jurisdiction bears the burden of "demonstrating that the grounds for diversity exist and that diversity is complete.") (citations omitted). Because plaintiff has failed to state any claims for relief invoking either the court's federal question jurisdiction or diversity jurisdiction, dismissal is warranted for lack of subject matter jurisdiction.

## VI. **Opportunity to Amend**

### A. Legal Standards

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with

plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

The court is recommending dismissal of this action for, among other things, lack of subject matter jurisdiction. Thus, any dismissal must be without prejudice. *Hollander v. Garrett*, 710 F. App'x 35, 36 (2d Cir. 2018). This court has serious doubts about whether plaintiff can amend to assert any form of federal jurisdiction over the situation that plaintiff describes in his complaint. As there appears no basis for plaintiff to raise his claims against SJH and Benedict in federal court, the court should not allow plaintiff to amend, notwithstanding a dismissal without prejudice. Because lack of subject matter jurisdiction is a substantive defect, *Deul v. Dalton*, No. 1:11-CV-0637(GTS/RFT), 2012 WL 235523, at *8 n.19 (N.D.N.Y. Jan. 25, 2012), the court recommends dismissal without leave to amend.

## VII. **Motion for Counsel**

### A. Legal Standards

Plaintiffs bringing civil actions have no constitutional right to the appointment of counsel. *See, e.g., United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981). However, pursuant to *28 U.S.C. § 1915(e)*, the court may request an attorney to represent an indigent party. *28 U.S.C. § 1915(e)(1)* (authorizing the court to "request an attorney to represent any person unable to afford counsel."). Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [The Court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case,

Guillory v. Benedict, Not Reported in Fed. Supp. (2021)

Case 3:23-cv-01337-AMN-ML    Document 7    Filed 04/19/24    Page 158 of 166

the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

**\*5** *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)) (internal quotation marks omitted). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge*, 802 F.2d at 621). The Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

### B. Application

Given the court's recommendation that the complaint be dismissed for failure to state a viable federal claim or otherwise establish subject matter jurisdiction, plaintiff has failed to satisfy the threshold requirement of "substance" and his request for counsel should thus be denied. However, even if plaintiff's complaint survived the court's initial review, plaintiff's motion for court appointed counsel is still subject to dismissal based on its prematurity and plaintiff's failure to satisfy the *Hodge* factors in any meaningful way. For example, plaintiff states in his motion that he will "go pro se if needed," and concedes he can "do discovery by [him]self." (Dkt. No. 3 at 1). Plaintiff has otherwise presented no "special reason" why appointment of counsel would be

more likely to lead to a just determination at this time. Accordingly, plaintiff's motion for appointment of counsel is alternatively denied as premature.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**ORDERED,** that plaintiff's motion for court appointed counsel (Dkt. No. 3) is **DENIED**, and it is

**RECOMMENDED**, that this action be **DISMISSED WITHOUT PREJUDICE**, but without the opportunity for amendment, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

### All Citations

Not Reported in Fed. Supp., 2021 WL 707076

---

### Footnotes

1    The entity which plaintiff refers to as "St. Joseph's Hospital," is also known as "St. Joseph's Health." *See* https://www.sjhsyr.org/.

2    "St. Joseph's Health is a regional non-profit health care system based in Syracuse, New York." https://www.sjhsyr.org/about-us.

3    Plaintiff wrote "N/A" with respect to whether his action involved "employment discrimination based on race, color, religion, sex or national origin." Title VII. (Compl. at 9, ¶ 4).

4    As to plaintiff's claim against defendant Benedict, Title VII does not allow for individual liability. *See Berger v. New York State Office for People with Developmental Disabilities*, No. 6:16-CV-1277 (LEK/ATB), 2019 WL 4805389, at *2-3 (N.D.N.Y. Sept. 30, 2019) (dismissing Title VII claims, including retaliation claims, against individual defendants in their individual and official capacities).

5    This is assuming that plaintiff has stated some sort of legal basis for his non-federal claims. Here, plaintiff appears to have plead only federal claims and statutes in his complaint, presenting another reason for the court to dismiss for lack of subject matter jurisdiction.

---

End of Document
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

Guillory v. Benedict, Not Reported in Fed. Supp. (2021)

Case 3:23-cv-01337-AMN-ML    Document 7    Filed 04/19/24    Page 160 of 166

2021 WL 706644
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Patrick GUILLORY, Plaintiff,

v.

Brian BENEDICT et al., Defendants.

5:21-cv-73 (GLS/ATB)
|
Signed 02/23/2021

**Attorneys and Law Firms**

FOR THE PLAINTIFF: PATRICK GUILLORY, Pro Se, 753 James Street, Apt. #1129, Syracuse, NY 13203.

**ORDER**

Gary L. Sharpe, Senior District Judge

 **\*1**  The above-captioned matter comes to this court following an Order and Report-Recommendation (R&R) by Magistrate Judge Andrew T. Baxter duly filed February 4, 2021. (Dkt. No. 6.) Following fourteen days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

No objections having been filed, and the court having reviewed the R&R for clear error, it is hereby

**ORDERED** that the Report-Recommendation and Order (Dkt. No. 6) is **ADOPTED** in its entirety; and it is further

**ORDERED** that the complaint (Dkt. No. 1) is **DISMISSED** without prejudice; and it is further

**ORDERED** that the Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Order to plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 706644

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01337-AMN-ML  Document 7  Filed 04/19/24  Page 161 of 166

Guillory v. Crouse Hospital, Not Reported in Fed. Supp. (2021)

2021 WL 5605260
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Patrick GUILLORY, Plaintiff,

v.

CROUSE HOSPITAL, et al., Defendants.

5:21-CV-1177 (DNH/ATB)
|
Signed 11/02/2021

**Attorneys and Law Firms**

PATRICK GUILLORY, Plaintiff, pro se

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

 **\*1**  The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983, filed by plaintiff Patrick Guillory. (Dkt. No. 1) ("Compl."). Plaintiff has also moved to proceed in forma pauperis. (Dkt. No. 3).

## I. IFP Application

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 3). After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. Neitzke, 490 U.S. at 327; Harkins v. Eldridge, 505

F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp., 550 U.S. at 555).

## II. Complaint

Plaintiff states that he filed a "complaint" against defendants Nursing Supervisor and Charge Nurse, employees of defendant Crouse Hospital, on October 18, 2021. (Compl. at 6). The complaint concerned plaintiff's opinion that the defendants were not "providing safe discharge plans." (Id.). Plaintiff then states that on October 27, 2021, he entered Crouse Hospital at 2:30 p.m. to visit his "soon to be wife." (Id.). With him, plaintiff brought "a framed poster of Tu-pac and some sliced cheese[.]" (Id.). He told the Nursing Supervisor and Charge Nurse that he "want[ed] to make sure she can[ ] have the poster." (Id.). Plaintiff alleges that he proceeded to his girlfriend's room and "clipped" and "filed" her nails. (Id.). After approximately thirteen minutes, defendant Crouse Security Staff "rolled up on [plaintiff] two deep ... asserting that [he] had to leave." (Id.). Plaintiff alleges that he responded by stating he did not do anything wrong, and "call the police ... I'm not going nowhere [sic]." (Id.). Plaintiff states that he and his girlfriend were eventually surrounded by seven Crouse Security Staff officers. (Id.). Plaintiff states that he recognized one of the officers as a "brother from [plaintiff's] hood." (Id.). That officer allegedly asked plaintiff to "come on man just go ... I know there is no reason but we have to listen to the nurses." (Id.). Plaintiff responded by asking why they were "kicking [him] out for nothing in the middle of ... doing [his] baby [sic] nails." (Id.) Plaintiff states that he "complied with their racist demands." (Id.) Plaintiff alleges that as he was escorted out, a different Crouse Security Staff officer stated, "Dez niggas." (Id.)

Guillory v. Crouse Hospital, Not Reported in Fed. Supp. (2021)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 162 of 166

**\*2** Plaintiff claims that the defendants are "deemed New York actors" by virtue of their certification by the State of New York. (*Id.*). He alleges that the defendants retaliated against him for "protected conduct ... i.e. [his] ... constitutional right to file a complaint." (*Id.*). He demands $500,000 in emotional damages, $600,000 in punitive damages, and more to be determined at trial. (*Id.* at 7).

### III. Section 1983

#### A. Legal Standards

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988). Private parties are generally not state actors, and are therefore not usually liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); see also *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties....") (internal quotation marks and citation omitted).

For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: "(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Caballero v. Shayna*, No. 18-CV-1627, 2019 WL 2491717, at \*3 (E.D.N.Y. June 14, 2019) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

#### B. Application

Plaintiff is suing Crouse Hospital, a private medical institution, and its employees. Plaintiff has filed a considerable number of pro se complaints in this District over the past twelve months, and this is neither his first nor second attempt to sue a private actor under § 1983. *See Guillory v. Benedict*, No. 5:21-CV-073 (GLS/ATB), 2021 WL 707076, at \*2 (N.D.N.Y. Feb. 4, 2021), *report and recommendation adopted*, 2021 WL 706644 (N.D.N.Y. Feb. 23, 2021) (dismissing § 1983 claim against private hospital); *Guillory v. Bishop Nursing Home*, No. 5:21-CV-410 (MAD/ATB), 2021 WL 1535474, at \*2 (N.D.N.Y. Apr. 19, 2021), *report and recommendation adopted*, 2021 WL 2431259 (N.D.N.Y. June 15, 2021) (dismissing § 1983 claim against privately owned, for-profit care facility).

In an effort to adequately plead state action in this case, plaintiff alleges that the named defendants should be deemed state actors because they are "certified by the State of New York," presumably as licensed health care providers.[1] Plaintiff's argument is unavailing, as it remains well settled in this Circuit that a private hospital, and its employees, are not deemed state actors solely because the state has granted them the authority to practice medicine within its borders. *See McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (no state action where state endowed private healthcare facility with the authority to treat patients); *White v. St. Joseph's Hosp.*, 369 Fed. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals ... named as defendants in [plaintiff's] complaint, are generally not proper § 1983 defendants because they do not act under color of state law."); *Doe v. Rosenberg*, 996 F. Supp. 343, 352 (S.D.N.Y. 1998), *aff'd*, 166 F.3d 507 (2d Cir. 1999) (where state merely licensed private physicians and hospitals to treat patients, but in no way influenced the decisions, its relationship with the hospital defendant was insufficient to pass the close nexus/joint action test). Plaintiff has alleged no other basis upon which this court should find that the defendants are state actors. Accordingly, the district court should dismiss plaintiff's retaliation claim alleged pursuant to § 1983.

### IV. Opportunity to Amend

#### A. Legal Standards

**\*3** Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131

**Guillory v. Crouse Hospital, Not Reported in Fed. Supp. (2021)**

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 163 of 166

(2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

The court is recommending dismissal of this action for, among other things, lack of subject matter jurisdiction. Thus, any dismissal must be without prejudice. *Hollander v. Garrett*, 710 F. App'x 35, 36 (2d Cir. 2018). As there appears no basis for plaintiff to raise his claims against Crouse Hospital and its employees in federal court, the court should not allow plaintiff to amend, notwithstanding a dismissal without prejudice. Because lack of subject matter jurisdiction is a substantive defect, *Deul v. Dalton*, No. 1:11-CV-0637(GTS/RFT), 2012 WL 235523, at *8 n.19 (N.D.N.Y. Jan. 25, 2012), the court recommends dismissal without leave to amend.

### V. Bar Order

#### A. Legal Standard[2]

Courts have always recognized that they may resort to restrictive measures when responding to vexatious litigants. *In re Martin-Trigona*, 9 F.3d 226, 228-29 (2d Cir. 1993) (noting that the Supreme Court and other Circuits have imposed restrictive measures). The Court has the obligation to protect the public and the efficient administration of justice from individuals who have a history of vexatious and harassing litigation because it imposes needless expense on the parties and an unnecessary burden on the court. *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000). In this context, courts have accepted the need for permanent injunctions as a result of extraordinary patterns of vexatious, harassing, and baffling litigation practices. *In re Aarismaa*, 233 B.R. 233, 247 (N.D.N.Y. 1999); *Toro v. Depository Trust Co.*, No. 97 Civ. 5383, 1997 WL 752729, at *4 (S.D.N.Y. Dec. 4, 1997) (identifying the All Writs Act as a legal basis to impose sanctions and enjoin a plaintiff who abuses the judicial process).

Under the All Writs Act, 28 U.S.C. § 1651, a court may sanction a vexatious litigant who abuses the judicial process by enjoining him from pursuing future litigation without leave of the court. *Malley v. New York City Bd. of Educ.*, 112 F.3d 69, 69-70 (2d Cir. 1997); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 250 (2d Cir. 2004). An enjoinder may be permanent or may impose the less drastic remedy of a "leave to file" requirement. *In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994)

(noting the court's ability to levy a leave to file requirement); *Raffee v. John Doe*, 619 F. Supp. 891 (S.D.N.Y. 1985) (granting a permanent injunction restraining the plaintiff from filing any further actions); *In re Aarismaa*, 233 B.R. at 247 (observing that such "restrictive measure[s] have included foreclosing the filings of pleadings in a particular case or requiring that leave of court first be sought").

Before regulating a truculent and persistent litigant by restricting future access to the court, a court should consider

> **\*4** (1) the litigant's history of the litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, and in particular whether the litigant has a good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Toro v. Depository Trust Co.*, 1997 WL 752729, at *4 (citing *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).

#### B. Application

Plaintiff has displayed a perpetual abuse of the judicial process in this District. As to the first relevant factor, plaintiff has filed ten complaints in the Northern District over the past ten months. Several of the complaints, like the one currently pending before this court, have been rejected at the initial review stage for lack of jurisdiction.[3] The larger portion of plaintiff's recent, frivolous filings were disposed of after plaintiff sought voluntary dismissal of these claims.[4] Notably, plaintiff sought dismissal while his claims were actively pending before the court for some capacity of review. Plaintiff has one other matter currently pending in the Northern District, in which he was afforded an extension of time to amend his complaint and correct the deficiencies therein. *See Guillory v. Upstate University Police,* No. 5:21-CV-1117 (GLS/ATB) (Dkt. No. 4). Across the board,

Guillory v. Crouse Hospital, Not Reported in Fed. Supp. (2021)

Case 3:23-cv-01337-AMN-ML    Document 7    Filed 04/19/24    Page 164 of 166

plaintiff's filings are replete with vulgarities and unnecessary expletives; they have also become increasingly hostile and disrespectful toward the court. [5] Plaintiff's aggressive and threatening conduct has compelled another judge in this District to permanently recuse herself from his lawsuits.

Second, plaintiff cannot possibly have an objective good-faith expectation of prevailing in his lawsuits. Take, for example, the case presently pending on initial review. This court has repeatedly explained to plaintiff that his unremitting claims against various private entities fail to state a claim under § 1983. Nevertheless, plaintiff persists. It has become clear that plaintiff perceives this court as a venue to air his grievances against all who have wronged him, regardless of whether the alleged injustices actually state a claim for which relief may be granted in federal court. On one occasion, plaintiff admitted that he was seeking dismissal of his frivolous action because, among other reasons, he wrote the complaint while intoxicated. *Guillory v. McMahon*, 5:21-CV-912 (TJM/ML) (Dkt. No. 4).

 **\*5**  Third, although plaintiff is a pro se litigant, he has extensive litigation experience in the Northern District of New York that extends back to 2013. Fourth, plaintiff has posed an unnecessary burden on the court because "every paper [he has] filed with the Clerk of this Court, no matter how repetitious or frivolous, [has] require[d] some portion of the institution's limited resources." *In re McDonald*, 489 U.S. 180, 184 (1989). Arguably more frustrating, and burdensome, than plaintiff's frivolous complaints are his post-filing acknowledgments of his meritless claims, *after* the court has invested its time and resources into deciphering the basis of his filings and commenced drafting an opinion.

Fifth, "in light of plaintiff's litigation history, it does not appear that any other sanction, short of an injunction, will be adequate to protect the court from plaintiff's insatiable appetite for continued litigation." *Smith v. Jackson*, No. 5:21-CV-0005 (MAD/ML), 2021 WL 3518327, at *6 (N.D.N.Y. Jan. 11, 2021), *report and recommendation adopted*, 2021 WL 2775003 (N.D.N.Y. July 2, 2021) (citing *Ulysses I & Co., Inc. v. Feldstein*, No. 01-CV-3102, 2002 WL 1813851 (S.D.N.Y. Aug. 8, 2002), *aff'd sub nom, Bridgewater Operating Corp. v. Feldstein*, 346 F.3d 27 (2d Cir. 2003)).

Accordingly, pursuant to 28 U.S.C. § 1651(a) and the court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings, I recommend that plaintiff be prohibited from making any future pro se filings in this District without prior leave of the Chief Judge. See *Yefimova v. Trustco Bank*, No. 17-CV-0730 (GTS/DJS), 2017 WL 4216987, at *3-4 (N.D.N.Y. July 31, 2017) (recommending a bar order where the plaintiff was deemed a persistent, frivolous litigator), *report and recommendation adopted*, 2017 WL 4157337 (N.D.N.Y. Sept. 18, 2017).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 3) is **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**RECOMMENDED**, that this action be **DISMISSED WITHOUT PREJUDICE**, but without the opportunity for amendment, and it is

**RECOMMENDED** that this matter be referred to Chief District Judge Glenn T. Suddaby to issue a pre-filing injunction permanently enjoining plaintiff from filing any other pro se cases in this District without leave of the Chief District Judge, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 5605260

Guillory v. Crouse Hospital, Not Reported in Fed. Supp. (2021)

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 165 of 166

## Footnotes

1    It is unclear what state certification plaintiff attributes to the defendant Crouse Security Staff officers.

2    This summary of the applicable law quotes liberally from *Yefimova v. Trustco Bank,* No. 1:17-CV-730 (GTS/ DJS), 2017 WL 4216987, at *3 (N.D.N.Y. July 31, 2017), *report and recommendation adopted,* 2017 WL 4157337 (N.D.N.Y. Sept. 18, 2017).

3    *See Guillory v. Benedict,* 5:21-CV-073 (GLS/ATB), Dkt. Nos. 6, 7; *Guillory v. Bishop Nursing Home,* 5:21-CV-410 (MAD/ATB) (Dkt. Nos. 6, 8).

4    *See Guillory v. Walsh,* 5:21-CV-506 (GTS/ATB) (Dkt. Nos. 4, 6, 7); *Poirier v. Bishop Rehabilitation and Nursing Home,* 5:21-CV-571 (BKS/ATB) (Dkt. Nos. 5, 6); *Guillory v. Boost Mobile,* 5:21-CV-623 (DNH/ML) (Dkt. Nos. 4, 5); *Guillory v. Clark,* 5:21-CV-647 (GTS/ATB) (Dkt. Nos. 4, 5); *Guillory v. Helio Health,* 5:21-CV-693 (GTS/ATB) (Dkt. Nos. 5, 6); *Guillory v. McMahon,* 5:21-CV-912 (TJM/ML) (Dkt. Nos. 4, 5).

5    *See, e.g., Guillory v. McMahon,* 5:21-CV-912 (TJM/ML) (Dkt. No. 1) ("Your Honor, you can run your mouth in your R & R ..."); *Guillory v. Clark,* 5:21-CV-647 (GTS/ATB) (Dkt. No. 1) ("Under penalty of perjury ... figure it out ... if you join the defendants crap ... your [Honor] ... you are just a racist like them ..."); *Guillory v. Helio Health,* 5:21-CV-693 (GTS/ATB) (Dkt. No. 5) ("Upon review of the Second Circuit cases, I guess you was fucking right ... I hope you both make it to the Second Circuit along with your co worker [sic] who slicked [sic] the US [Marshals] on me ... paranoid and shit.").

**End of Document**                                © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01337-AMN-ML   Document 7   Filed 04/19/24   Page 166 of 166

Guillory v. Nursing Supervisor, Not Reported in Fed. Supp. (2021)

2021 WL 5585926
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Patrick GUILLORY, Plaintiff,

v.

NURSING SUPERVISOR et al., Defendants.

5:21-CV-1177
|
Signed 11/30/2021

**Attorneys and Law Firms**

PATRICK GUILLORY, Plaintiff, Pro Se, 50 Caton Drive, Apt. No 54-C, Dewitt, NY 13214.

OF COUNSEL: ADAM P. MASTROLEO, ESQ., BOND SCHOENECK & KING, PLLC, Attorneys for Defendants, One Lincoln Center, Syracuse, NY 13202.

## ORDER ON REPORT & RECOMMENDATION

David N. Hurd, United States District Judge

**\*1** On October 28, 2021, *pro se* plaintiff Patrick Guillory ("plaintiff") filed this action against several hospital employees alleging that they retaliated against him for engaging in certain constitutionally protected conduct. Dkt. No. 1. Plaintiff also sought leave to proceed *in forma pauperis* ("IFP application"). Dkt. No. 3.

On November 2, 2021, U.S. Magistrate Judge Andrew T. Baxter granted plaintiff's IFP application for the limited purpose of filing and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed without prejudice and without leave to amend. Dkt. No. 4. In light of plaintiff's extensive history of filing frivolous complaints in this judicial district, Judge Baxter's R&R further recommended that this matter be referred to Chief District Judge Glenn T. Suddaby for the issuance of a pre-filing injunction. *Id.*

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 4. Upon review for clear error, the R&R will be accepted and adopted in all respects. *See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED WITHOUT LEAVE TO AMEND; and

3. This matter is REFERRED to Chief Judge Suddaby for the issuance of a pre-filing injunction permanently enjoining plaintiff from filing any other *pro se* cases in this District without leave of the Chief District Judge.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 5585926

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.